UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

NANCY OWENS, on behalf of herself
and others similarly situated,

          Plaintiff,

    vs.

STARION ENERGY, INC.,

          Defendant.

3:16-cv-01912-VAB

FEBRUARY 16, 2017

---

## DEFENDANT STARION ENERGY, INC.'S
## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and D. Conn. L. Civ. R. 7, defendant Starion Energy, Inc. ("Defendant" or "Starion") respectfully moves to dismiss Plaintiff's Class Action Complaint (Dkt. 1) for lack of subject matter jurisdiction and failure to state a claim.

## I.    INTRODUCTION

Plaintiff Nancy Owens ("Plaintiff" or "Ms. Owens") filed this putative class action alleging a violation of § 227(c)(5) of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA" or "Act").  Plaintiff alleges "multiple" calls in September 2016 during which time she claims her residential telephone number – in reality a publically available business number – was on the national do-not-call list.  Putting aside the merits of Plaintiff's claims, Plaintiff has not actually suffered any harm that would give her standing and, even if she has standing, the Complaint must be dismissed for failure to state a claim on a number of grounds.

Plaintiff's allegations of harm are vague and conclusory, *de minimis*, and divorced from Defendant's alleged violation of the law.  Furthermore, Plaintiff has failed to allege any concrete injury sufficient to establish Article III standing, and because she cannot connect any such

injuries to Defendant's alleged violations of the TCPA, her claims must be dismissed under Rule 12(b)(1).

Plaintiff's Complaint must also be dismissed under Rule 12(b)(6).  First, Plaintiff's purported residential telephone number is a business number held out to the general public as such (e.g., on business and chamber of commerce and networking websites), and thus it is ineligible for TCPA protection.  Second, Plaintiff's claim of "multiple" calls does not provide sufficient telephone call detail information and thus  fails to provide the requisite fair notice of the alleged TCPA violation under which Plaintiff seeks relief.  Third, Plaintiff fails to allege that she is the residential telephone subscriber of the subject telephone number, which is required for a valid TCPA claim and thus fatal to her Complaint.  Fourth, Plaintiff fails to allege that she is the residential telephone subscriber of the subject telephone number who registered the number on the national do-not-call registry, which is also required for a valid TCPA claim and thus fatal to her Complaint.  Fifth, Plaintiff fails to allege that Defendant "willfully or knowingly" violated the TCPA and thus fails to state a claim for treble damages under the Act.

Defendant also moves to strike Plaintiff's claims for attorneys' fees and costs. The TCPA is not a fee shifting statute and makes no provision for such fees and costs, as recognized by a legion of caselaw, the TCPA itself, and the American Rule.  Defendant also moves to strike any relief requested for a purported violation of TCPA § 227(b)(1) since the Complaint is devoid of any such violation.  Last, Defendant moves to strike Plaintiff's proposed class definition.

## II.   <u>FACTUAL OVERVIEW</u>

Plaintiff alleges that Defendant violated the TCPA by calling, without permission, Plaintiff's home telephone number multiple times in September 2016, despite that number being on the national do-not-call registry.  Complaint (Dkt. 1) ("Compl.") at ¶¶ 11-16.  The TCPA provides a private right of action to any person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations promulgated by the FCC.  47 U.S.C. § 227(c)(5).  The FCC has implemented regulations concerning telephone solicitations under 47 C.F.R. § 64.1200(c).  The applicable regulation provides, among other things, that "[n]o person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government."  47 C.F.R. § 64.1200(c)(2).  Such do-not call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator.  47 C.F.R. § 64.1200(c)(2).

Plaintiff alleges that in September 2016 she received "multiple" telephone calls on her home telephone number (508-429-XXXX) from Defendant promoting its goods and services.  Compl. at ¶¶ 14 and 16.  Plaintiff alleges that she has never removed her residential telephone number from the national do-not-call registry.    Compl. at ¶ 15.  As discussed herein, and putting aside the failure to allege sufficient details regarding the alleged "multiple" calls, Plaintiff's claimed "residential" telephone number is misleading and simply wrong.  That number is, in fact, Plaintiff's publicly available business telephone number at Halo Branded Solutions, Inc. where, according to the company website, Plaintiff works as a Marketing &

Branding Specialist. *See* Exh. A (website for Halo Branded Solutions with Plaintiff's telephone number: 508-429-1725).   A simple internet search shows the subject number as a business telephone number on numerous websites.   *See* Exh. A (Halo Branded Solutions, BNI Massachusetts).

Setting aside the merits of Plaintiff's claim, the TCPA authorizes an entity to bring a private action for violation of the Act and to seek injunctive and monetary relief.   *Id*. at § 227(c)(5).[1]   Monetary relief is set at the "actual monetary loss" or $500 in damages for each violation, whichever is greater.   *Id*.   The TCPA further authorizes treble damages where a defendant's violation was willful or knowing.   *Id*.   Plaintiff does not claim any "actual monetary loss," but alleges generally that the TCPA was enacted in response to nuisance telemarketing practices invading privacy rights.   Compl. at ¶¶ 1, 9.   Plaintiff seeks an injunction enjoining Defendant from telemarketing in violation of the TCPA and a minimum of $500 for each violation (and to have damages trebled for knowing violations as provided by § 227(c)(5) of the Act).   Compl. at ¶ 36 and Relief Sought.   Plaintiff also improperly seeks relief for violations of TCPA § 227(b)(1) regarding calls using an automatic telephone dialing system or an artificial or prerecorded voice (*see* Compl. at Relief Sought, ¶ B), despite the fact that the Complaint is devoid of any allegations concerning § 227(b)(1) or calls under that section.

Plaintiff also seek to certify a class consisting of "all persons within the United States whose phone numbers were registered on the Do-Not-Call Registry, and who, within four years before the filing of the initial Complaint, through the date of class certification, received more

---

[1] Putative TCPA class action lawsuits generally are recognized as attorney-driven affairs.  *See Avio, Inc. v. Alfoccino, Inc.*, 18 F. Supp. 3d 882, 884-86 (E.D. Mich. 2014) (including discussion of how TCPA actions often arise).

than one telemarking call within any twelve-month period from, or on behalf of, Defendant." Compl. at ¶ 22.   Putting aside the merits, class treatment is entirely inappropriate, if not impossible, for this case given the inability to satisfy the Supreme Court's rigorous Rule 23 standard, especially given the many individualized inquiries that would necessarily follow as to, among other things, consent, which would ultimately require thousands of mini-trials and therefore defeat the purpose of a class action.

## III.   LEGAL STANDARD

### A.   Rule 12(b)(1) – *Spokeo* And Requirements For Article III Standing

Article III of the United States Constitution limits the jurisdiction of the judicial branch to cases and controversies and "standing to sue" is "a doctrine rooted in the traditional understanding of a case or controversy . . . and developed in [the] case law to ensure that federal courts do not exceed their authority as it has been traditionally understood."   *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1546-47 (2016).  To establish standing, Plaintiff "must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."   *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 726 (7th Cir. 2016)[2]; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  The injury in fact must be "fairly traceable to the challenged conduct of the defendant" and "likely to be redressed by a favorable judicial decision."   *Spokeo*, 136 S. Ct. at 1547.  More than a "bare procedural violation, divorced from any concrete harm" is required to satisfy Article III's injury-in-fact requirement.  *Id*. at 1549; *Meyers*, 843 F.3d at 727.

"Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person

a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 136 S. Ct. at 1549.  Injury in fact is a constitutional requirement, and "[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Id.* at 1547-48; *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) (Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing."); *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009) (because the injury-in-fact requirement "is a hard floor of Article III jurisdiction," it "cannot be removed by statute.").  Moreover, the Supreme Court has "always insisted on strict compliance with this jurisdictional standing requirement." *Raines*, 521 U.S. at 819.  As the Supreme Court has recently cautioned, "[i]n an era of frequent litigation, class actions, sweeping injunctions with prospective effect, and continuing jurisdiction to enforce judicial remedies, courts must be more careful to insist on the formal rules of standing, not less so." *Ariz. Christian Sch. Tuition Org. v. Winn.*, 563 U.S. 125, 146 (2011).

Plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements and, at the pleading stage, "the plaintiff must 'clearly…allege facts demonstrating' each element." *Spokeo*, 136 S. Ct. at 1547.  Where a plaintiff fails to establish standing, the court lacks jurisdiction and the case must be dismissed. *See generally Meyers*, 843 F.3d at 725-29..

**B.** **Rule 12(b)(6)**

Under Fed. R. Civ. P. 12(b)(6), the Court must determine whether the Plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Under *Twombly*, the Court accepts as true all of the complaint's factual allegations when evaluating a motion to dismiss. *Id.* at 572.  The Court must

---

[2] Unreported decisions herein are appended as Exhibit B.

"draw all reasonable inferences in favor of the non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.,* 517 F.3d 104, 115 (2d Cir. 2008). "When a complaint is based solely on wholly conclusory allegations and provides no factual support for such claims, it is appropriate to grant defendants['] motion to dismiss." *Scott v. Town of Monroe*, 306 F. Supp. 2d 191, 198 (D. Conn. 2004). For a complaint to survive a motion to dismiss, "[a]fter the court strips away conclusory allegations, there must remain sufficient well-pleaded factual allegations to nudge plaintiff's claims across the line from conceivable to plausible." *In re Fosamax Products Liab. Litig.*, 2010 U.S. Dist. LEXIS 37795, at *2-3 (S.D.N.Y. Apr. 9, 2010). In other words "a plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015) (internal quotation marks and citation omitted).

## IV.   ARGUMENT

### A.   Plaintiff Lacks Article III Standing And Must Be Dismissed Under Rule 12(b)(1)

Plaintiff's Complaint must be dismissed because Nancy Owens lacks Article III standing. Ms. Owen's Complaint is devoid of any mention of concrete harm, making vague and conclusory allegations regarding the sort of *de minimis* harm to which recipients of unwanted telemarketing calls might *generally* be exposed. *See* Compl. at ¶¶ 1 and 9 (Congress enacted the TCPA to address nuisance and privacy). Generic and conclusory allegations are not enough to satisfy Article III's standing requirement. Several courts have dismissed TCPA cases under similar circumstances since the Supreme Court's ruling in *Spokeo*.[3]

---

[3] *See* § III.A. above regarding legal standard on Article III standing and overviewing recent *Spokeo* decision.

### 1.      Plaintiff Has Failed to Allege An Injury-In-Fact Sufficient To Confer Article III Standing

Courts across the country have dismissed actions brought for bare statutory violations since the Supreme Court's holding in *Spokeo*, holding that such allegations to not suffice to establish Article III standing.  In *Meyers*, for example, the Seventh Circuit considered *Spokeo's* holdings in the context of an alleged violation of the Fair Credit Reporting Act ("FRCA").  The plaintiff claimed that defendant violated the FRCA when it gave him a receipt showing his credit card's full expiration date, but sought only statutory damages (in addition to class certification).  *Meyers*, 843 F.3d at 725-26.  The Seventh Circuit concluded, in light of *Spokeo* and other precedent, that plaintiff had not suffered any actual harm because he discovered the violation immediately and nobody else ever saw the non-compliant receipt.  *Id*. at 727-29.  Congress had sought to limit FRCA lawsuits to consumers suffering from actual harm, but plaintiff was not such a person and therefore lacked standing.  *Id*.  Plaintiff here has similarly relied on vague, conclusory allegations of statutory violations, with generic assertions of harm related nuisance and privacy.  *See Compl*. at ¶¶ 1 and 9.  Even if sufficiently particular, these alleged damages are so *de minimis* that they cannot rise to the level of a cognizable injury.

The Supreme Court has held that "[t]here is…a *de minimis* level of imposition with which the Constitution is not concerned."  *Ingraham v. Wright*, 430 U.S. 651, 674 (1977); *see also Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 839-40 (9th Cir. 2007) (*de minimis* injury alleged in complaint was "too trifling of an injury to support constitutional standing").  For example, in *Hernandez v. Path, Inc.*, 2012 U.S. Dist. LEXIS 151035, *1-4 (N.D. Cal. Oct. 19, 2012), the plaintiff alleged that a cell phone application he downloaded had caused "diminished mobile device resources" and the loss of "two to three seconds of battery capacity."

The district court found these allegations of diminished resources were so *de minimis* that they could not establish Article III standing.  The same holds true here.  Plaintiff vaguely alleges – at most – nuisance and privacy concerns from Defendant's alleged calls in September 2016 of which she claims she answered just one (1) such call on September 23, 2016 (Compl. at ¶ 16).  Based on Plaintiff's allegations, this amounts to (generously) a couple of minutes of Plaintiff's time, which is so negligible as to be unquantifiable.  Notably, Plaintiff does not actually allege that some other party was attempting to call the number identified in the Complaint during which she could not take such calls.  As held by the U.S. Supreme Court, such "harm" is not  sufficient to invoke the jurisdiction of the federal courts.

Numerous courts have dismissed TCPA lawsuits that rely on similarly conclusory and *de minimis* allegations of harm since *Spokeo*.  *See Romero v. Dep't Stores Nat'l Bank*, 2016 U.S. Dist. LEXIS 110889, at *10 (S.D. Cal. Aug. 5, 2016) (granting motion to dismiss TCPA claims because "Plaintiff has not and cannot demonstrate that any one of Defendants' over 290 alleged violations of the TCPA, considered in isolation, actually caused her a concrete harm"); *Ewing v. SQM US, Inc.*, 2016 U.S. Dist. LEXIS 143272, at *7 (S.D. Cal. Sept. 29, 2016) (dismissing TCPA action with prejudice and rejecting plaintiff's claim that he "'sustained injury when he had to waste time answering and addressing the robo-call,' and that he was injured insofar as the call depleted his phone's battery, requiring him to recharge it."); *Supply Pro Sorbents, LLC v. Ringcentral, Inc.*, 2016 U.S. Dist. LEXIS 140033 (N.D. Cal. Oct. 7, 2016) (dismissing TCPA junk fax claims despite plaintiff's allegations that junk fax recipients lose the use of their fax machines, paper, and ink toner, as well as the loss of time dealing with junk faxes, which interrupt the recipient's privacy); *Smith v. Aitima Med. Equip., Inc.*, 2016 U.S. Dist. LEXIS

113671, at *13 (C.D. Cal. July 29, 2016) (dismissing TCPA action with prejudice because "[a]ny depletion of Plaintiff's battery, or aggravation and nuisance, resulting from only one call, is a *de minimis* injury . . . not sufficient to confer standing."); *Susinno v. Work Out World, Inc.*, No. 15-5881, 2016 U.S. Dist. LEXIS 113664 (D.N.J. 2016), ECF No. 31 (granting motion to dismiss after finding that TCPA plaintiff had not suffered an injury in fact from only one unwanted cell phone call); *Kostmayer Constr., LLC v. Port Pipe & Tube, Inc.*, No. 2:16-cv-01012, 2016 U.S. Dist. LEXIS 145947 (W.D. La. Oct. 19, 2016) (dismissing TCPA claims where plaintiff alleged statutory violation and made only general reference to the harms contemplated by Congress).

This Court should follow suit. Plaintiff's generic allegations regarding the sort of harms that unsolicited telemarketing calls may impose upon their recipients, Compl. at ¶¶ 1 and 9, are insufficient to meet the threshold for jurisdiction in this Court. Because Plaintiff has not alleged a concrete and particularized injury-in-fact, she lacks Article III standing and the case must be dismissed.

### B.   Plaintiff's Complaint Fails To State A Claim Upon Which Relief Can Be Granted And Must Be Dismissed Under Rule 12(b)(6)

#### 1.   Plaintiff's Telephone Number is a Business Number

Plaintiff's Complaint must be dismissed because Plaintiff's telephone number is not a residential number protected by the TCPA. Plaintiff's business number is ineligible for TCPA protection.

In addition to the Complaint itself and any documents incorporated or referenced therein, this "Court may also consider '*matters of which judicial notice may be taken*' and '*documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit*." *Thompson v. Rovella*, 2017 U.S. Dist. LEXIS 20457, at *8 (D. Conn. Feb. 14, 2017)

10

(Bryant, J.) (emphasis added) (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005)); *Samuels v. Air Transp. Local 504*, 992 F. 2d 12, 15 (2d Cir. 1993).  Accordingly, this Court may take judicial notice of numerous websites identifying Plaintiff's business number (508-429-1725) at Halo Branded Solutions, which identify Ms. Owens as a Marketing and Branding Specialist. *See* Exhibit A (screenshots of Halo Branded Solutions and the business telephone number for Ms. Owens).[4]

Plaintiff's business telephone number does not qualify as a residential telephone line under 47 C.F.R. § 64.1200(c)(2), which prohibits a telephone solicitation to "[a] residential telephone subscriber who has registered his or her number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2).  Here, by virtue of advertising the telephone number as a business number, which number is held out to the public by both Plaintiff and Halo Branded Solutions as a business number, Plaintiff cannot claim the protections of the TCPA.  *See Bank v. Independence Energy Group, LLC*, 2014 U.S. Dist. LEXIS 141141 (E.D.N.Y. Oct. 2, 2014) at *7 (denying motion to dismiss, but finding that "if the subscriber holds out . . . a telephone number to the general public as a business line, the line should not be considered 'residential' for the purposes of the TCPA – even if it is registered as 'residential' with the telephone company."); *See Bank v. Independence Energy Group, LLC*, 2015 U.S. Dist. LEXIS 96532 (E.D.N.Y. July 23, 2013) (granting defendant's summary judgment where plaintiff's purported "residential" number was found to be a business number).  As such, and putting aside whether Plaintiff is in

---

[4] The subject business number (508-429-1725) of Halo Branded Solutions is publicly available on the internet with, among others, the MetroWest Chamber of Commerce and with BNI Massachusetts, a global networking referral network.  *See* Exhibit A.

fact the actual subscriber of the issue (discussed below), Plaintiff cannot assert a TCPA violation and her Complaint must be dismissed.

### 2. Plaintiff Fails To Allege Sufficient Call Detail Information

Plaintiff's Complaint must be dismissed since it fails to provide sufficient telephone call information for which Plaintiff seeks relief under the TCPA, including the actual complete telephone number dialed and information concerning the alleged "multiple" calls.  Plaintiff's Complaint is devoid of any such required factual allegations and, in broad, conclusory fashion, alleges only that Plaintiff received "multiple calls" from Starion in September 2016" to "(508) 429-XXXX."  Compl., at ¶¶ 14-15.  Of these purported "multiple" calls, the only specific date referenced is September 23, 2016 when Plaintiff allegedly spoke Defendant's representative. Compl. at ¶ 16.

Plaintiff cannot rely on assertions that merely recite the language of the TCPA.  As recognized by the Supreme Court, a complaint must set forth facts that plausibly demonstrate a claim for relief.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007).  Plausibility means alleging factual content that allows the Court to reasonably infer that the defendant is liable for the misconduct alleged.  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  Merely reciting the elements of a cause of action or supporting claims with conclusory statements, as Plaintiff has done here, is insufficient to state a cause of action.  *Id*.; *see id*. at 663 (requiring that a plaintiff allege more than "threadbare recitals of a cause of action's elements, supported by mere conclusory statements") (citing *Bell,* 550 at 555).

Plaintiff's generic allegation that she was called "multiple" times is insufficient and fails to state a claim, especially since violation of 47 C.F.R. § 64.1200(c)(2) is on a per-call basis. In

*Abbas*, the Court dismissed plaintiff's complaint where plaintiff made specific allegations regarding some text messages, but also made "broad, conclusory allegations regarding the 'numerous' further messages that he allegedly received." *Abbas v. Selling Source, LLC*, 2009 U.S. Dist. LEXIS 116697, *5 (N.D. Ill. Dec. 14, 2009). The Court found that plaintiff's allegations provided no notice to defendant about the subsequent messages plaintiff allegedly received. *Id*. at *5-*6. The court noted that there was no allegation regarding when plaintiff received the later messages, what those messages stated, or from what numbers plaintiff received the later messages. *Id*. at *6. The court went on to state that "[s]ome fair notice to [defendant] is particularly necessary here because [plaintiff] seeks recovery for each violation of the TCPA." *Id*. Thus, the court dismissed the plaintiff's complaint on the grounds that the allegations regarding the subsequent messages received were insufficient to state a cause of action under the TCPA. *Id*.

The same is true here. Plaintiff seeks statutory damages on a per-call basis for "multiple" calls allegedly made by Defendant. *See* Compl., at ¶¶ 16 (In September of 2016 Ms. Owens received multiple calls . . . ."); id. ("There were multiple calls received prior to September 23, 2016."). Plaintiff alleges just one date (September 23, 2016) for such "multiple" calls made but does not allege that multiple calls were made on that one date. Plaintiff's allegations are insufficient and impermissible under the TCPA. *See Abbas*, 2009 U.S. Dist. LEXIS 116697. Defendant is entitled to know what it is being asked to defend against, especially since its defenses depend on Plaintiff's allegations. As in *Abbas*, Plaintiff here seeks to recover for each TCPA violation and, therefore, "some fair notice" to Defendant is "particularly necessary." *Id*. at *6. Among other things, Defendant is entitled to know the number of TCPA violations

alleged by Plaintiff and when those violations occurred so that it has a fair opportunity to investigate the claims.   Where, as here, Plaintiff has failed to provide Defendant with the requisite fair notice, Defendant requests that this Court dismiss Plaintiff's Complaint for failure to state a cause of action under the TCPA.

Moreover, this is a lawsuit about allegedly improper calls to Plaintiff's residential number, yet Plaintiff fails to identify the complete number.   *See* Compl., at ¶14 ("(508) 429-XXXX").   Without knowing Plaintiff's phone number, Defendant is not on adequate notice of Plaintiff's claim and therefore her Complaint must be dismissed.

Courts have dismissed TCPA claims where a plaintiff fails to divulge the phone number at issue.   *Strand v. Corinthian Colls., Inc*., 2014 U.S. Dist. LEXIS 52963, at *1 (W.D.  Mich. April 17, 2014) (dismissing complaint and holding that under the pleading standards of Rule 8, *Iqbal*, and *Twombly*, a plaintiff in a TCPA action must plead her telephone number to state a plausible claim for relief and granting defendant's motion to dismiss); *see also Margulis v. Generation Life Ins. Co*., 91 F. Supp. 3d 1165 (E.D. Mo. 2015) (dismissing complaint because, among other failures, it failed to disclose plaintiff's number).   As the Strand court noted, "[n]otice pleading . . . necessarily requires that the plaintiff plead the telephone number in question to raise a right to relief above the speculative level.   Otherwise, as Defendant argues, [w]ithout the telephone number, TCPA defendants are forced to make educated guesses as to which telephone number belongs to the newly filed plaintiff.   *Strand*, 2014 U.S. Dist. LEXIS 52963, at *9 (second brackets in original) (internal quotation marks omitted) (citing Bell Atl. *Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).   Knowing the actual telephone number at issue is important for Defendant to assess Plaintiff's do-not-call

registry claim. Without the actual subject telephone number, Defendant is not on adequate notice of this claim and cannot reasonably determine whether a violation occurred.

### 3. Plaintiff Fails To Allege That She Is The Residential Telephone Subscriber Of The Subject Telephone Number

The regulation promulgated under the TCPA expressly provides that "[n]o person … shall initiate a telephone solicitation to . . . *[a] residential telephone subscriber* who has registered his or her telephone number on the national do-not-call registry . . . ." 47 C.F.R. ¶ 64.1200(c)(2) (emphasis added). Plaintiff has not pled that she is the "residential telephone subscriber" of the telephone number in question. In fact, public records show otherwise; the subject number is a business telephone number. The Complaint provides an incomplete home telephone number (508-429-XXXX) and a conclusory reference to "her residential telephone number" which is an insufficient pleading as a matter of law. Compl. at ¶¶ 14-15. The FCC regulation, implemented under the TCPA, specifically prohibits telephone solicitation to a "residential telephone subscriber." 47 C.F.R. § 64.1200(c)(2). Even if the foregoing telephone number is a residential number, which is disputed, Plaintiff fails to allege that she is the "subscriber." Plaintiff may well be a "user" of the subject telephone number, but that does not mean she is the "subscriber," and thus the person qualified to assert a TCPA violation.[5] *See* 47 C.F.R. § 64.1200(c)(2) (prohibiting telephone solicitation to a residential telephone subscriber who registered her number on the national do-not-call registry); *Leyse v. Bank of Am.*, 2010 U.S. Dist. LEXIS 58461 (S.D.N.Y. June 14, 2010) (concluding plaintiff had no standing to assert TCPA claim for picking up call intended for plaintiff's roommate who was the telephone subscriber).

---

[5] Plaintiff is also without standing to be a class representative for the putative class.

**4.** **Plaintiff Fails To Allege That She Is The Residential Telephone Subscriber Of The Subject Telephone Number Who Registered That Number On The National Do-No-Call Registry**

The regulation implemented under the TCPA expressly provides that "[n]o person … shall initiate a telephone solicitation to . . . *[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry . . . .*"  47 C.F.R. ¶ 64.1200(c)(2) (emphasis added).  Plaintiff has not pled that she is the subscriber of the subject telephone number and the person, as the subscriber, who registered that number with the national do-not-call registry.  Plaintiff's allegations that "[Defendant] initiated telemarketing calls to a telephone number Ms. Owens had registered on the national Do Not Call Registry" (Compl., at ¶ 2), that "[she] has never removed her residential telephone number from the National Do No Call Registry" (Comp. at ¶ 15), and that "[her] home telephone number, (508) 429-XXX, has been on the National Do Not Call Registry for a number of years prior to receipt of the calls from the Defendant" (Comp. at ¶ 14), fail to allege that the Plaintiff was the "residential telephone subscriber who has registered … her telephone number on the national do-not-call registry . . . ." 47 C.F.R. ¶ 64.1200(c)(2).  Instead, Plaintiff states in conclusory fashion that the subject telephone number has been on the national do-not-call registry and that Plaintiff never removed her (unidentified)[6] number from the Registry.  Even if the subject subject telephone number is registered on the national do-not-call registry, Plaintiff fails to allege that (1) she is the actual subscriber of subject residential telephone number; and (ii) she actually registered, as the

---

[6] Plaintiff's purported residential telephone number is incomplete as she does not identify the complete number (e.g., (508-429-XXXX)).  Moreover, the reference to "her residential telephone number" in the subsequent paragraph does not identify any actual number.  *See* Comp. at ¶¶ 14-15.  The Plaintiff can not ask the Defendant or this Court to infer requisite elements necessary to properly assert a cause of action.   Plaintiff fails to allege a valid TCPA violation as she has failed to allege both that she is the subscriber and the person that registered her residential telephone number with the national do-not-call registry.

subscriber, that number on the national do-not-call registry.  Failure to allege these details, as required for valid claim under the TCPA, is fatal Plaintiff's Complaint.  *See* 47 U.S.C § 227(c)(5); 47 C.F.R. ¶ 64.1200(c)(2).

> **5.**  **Plaintiff Fails To Allege That Defendant "Willfully or Knowingly" Violated the TCPA And Thus Fails To State A Claim for Treble Damages**

Plaintiff has not sufficiently alleged facts to recover treble damages.  Instead, Plaintiff simply states that the "Defendant's violations were negligent and/or knowing."  Compl. at ¶ 36. The bare assertion in Plaintiff's Complaint that Defendant "knowing[ly]" violated the TCPA is a legal conclusion, not an allegation of fact.  *See Lary v. Trinity Physician Fin. & Ins. Serv's*, 780 F.3d 1101, 1107 (N.D. Ala. 2015)) ("the bare assertion in [plaintiff's] complaint that the defendants "willfully" and "knowingly" violated the Act was a legal conclusion, not an allegation of fact that we must accept as true.").[7]

> **C.**  **Plaintiff's Claims For Relief For Attorneys' Fees and Costs And The Alleged Violation of TCPA § 227(b)(1) Must Be Stricken As Plaintiff's Complaint Does Not Assert Any Violation of § 227 And The TCPA Is Not A Fee Shifting Statute**

Plaintiff's Request for Relief seeking attorneys' fee and costs, generally, and specifically, for alleged violations of the § 227(b)(1) of the TCPA, must be stricken since Plaintiff does not allege a single violation of § 227(b) and the TCPA is not a fee shifting statute.  *See* Compl., at p. 7 (Relief Sought), ¶¶ B and D.  Accordingly, Sections B and D of the Relief Sought of Plaintiff's Complaint should be stricken.

---

[7] Incidentally, Plaintiff does not allege that Defendant "willfully" violated the TCPA, though she improperly seeks treble damages for Defendant's alleged "willful and/or knowing violations" of the Act.  *See* Compl., at Relief Sought, p. 7, ¶ B and C.  As discussed below, the request for relief under ¶ B is improper since it seeks relief for alleged violations of the TCPA for use of automated dialing equipment, of which there are not such allegations in the Complaint.

17

Section 227(b) of the TCPA pertains to restrictions on the use of automated dialing equipment, and generally prohibits calls made without the recipient's consent using any automatic telephone dialing system ("ATDS") or artificial or prerecorded voice.  47 U.S.C. § 227(b)(1).  Plaintiff does not allege anything related to an ATDS or automated telephone equipment.  In fact, the only referenced to § 227(b) in the entire Complaint is the single reference contained in the Relief Sought (Compl., at p. 7 at ¶ B). To the extent it is proper, any such claim or relief requested for a violation of TCPA § 227(b)(1) should be denied for failure to state a claim.[8]

Plaintiff also improperly seeks attorneys' fees and costs despite neither the Act itself nor the regulation promulgated thereunder providing for such relief.  The TCPA is a consumer protection statute not a business opportunity by Plaintiff and her counsel to improperly seek on attorneys' fees and costs.

In the telemarketing context, the TCPA provides $500 in statutory damages for each call violating 47 U.S.C. § 64.1200 or $1,500 per willful or knowing violation.  *See* 47 U.S.C. § 227(c)(5)(B) and (C); 47 C.F.R. § 64.1200; *Charvat v. GVN Mich., Inc*., 561 F.3d 623, 632 (6th Cir. 2009) ("[T]he term 'each such violation' must refer to 'telephone call . . . in violation of the regulations,' and damages are awardable on a per-call basis.").  The TCPA provides does not provide for attorneys' fees or costs.

Plaintiff's attempt to extract attorneys' fees and costs, in the face of the American Rule and the fact that the TCPA is not a fee shifting statute, must be rejected.  A legion of caselaw holds that "[t]he TCPA makes no provision for attorneys' fees or costs."  *Klein v. Vision Lab*

---

[8] To the extent Plaintiff does assert a claim for TCPA § 227(b)(1), Defendant reserves the right to further brief and move to dismiss any such claim(s).

*Telecomms., Inc*., 399 F. Supp. 2d 528, 542 (S.D.N.Y. 2005); *Holtzman v. Turza*, 828 F.3d 606 (7th Cir. 2016) (in a TCPA fax blast class action case, Seventh Circuit reversed District Court Order that would have resulted in payments of more than $500 per violation plus attorneys' fees); *Klein,* 399 F. Supp. 2d at 542 (granting defendant's motion to dismiss plaintiff's claim for attorneys' fees in TCPA action) (citing *Key Tronic Corp. v. United States*, 511 U.S. 809, 814 (1997) (absent explicit congressional authorization, attorneys' fees are generally not recoverable)); *Gold Seal Termite & Pest Control Co. v. DirecTV, Inc*., 2003 U.S. Dist. LEXIS 11205, *12 (S.D. Ind. June 10, 2003) ("There is no provision [in the TCPA] that provides for shifting attorneys' fees or costs."); *Haley v. Hughes Network Sys., LLC v. Hughes Network Systems*, 2013 U.S. Dist. LEXIS 157104, at *6-7 (W.D.N.Y. Nov. 1, 2013); *J.C. Corp. Mgmt, Inc. v. Resource Bank*, 2005 U.S. Dist. LEXIS 33433 (E.D. Mo. Sept. 12, 2015).   Indeed, "[i]f [this Court] interpreted the statute to require only that the violator knew he was making a "call" or sending a fax, the statute would have almost no room for violations that are not "willful[ ] or knowing [ ]." *Lary*, 780 F.3d at 1107; *See Harris v. World Fin. Network Nat'l Bank*, 867 F. Supp.2d 888, 895 (E.D. Mich. 2012) ("Such a broad application of 'willfull[]' or 'knowing' would significantly diminish the statute's distinction between violations that do not require an intent, and those willful[] and knowing violations that [C]ongress intended to punish more severely.").   Plaintiff's claimed for relief for violations of TCPA § 227(b)(1) and request for attorneys' fees and costs under the TCPA is improper and must be stricken.

**D.    Plaintiff's Proposed Class Definition Is Flawed And Should Be Stricken**

Plaintiff improperly seeks to certify a class of all persons in the United States whose phone numbers were registered on the national do-not-call registry.  *See* Compl., at ¶ 22. Specifically, Plaintiff seeks to certify a class defined as:

> [A]ll persons within the United States whose phone numbers were registered on the Do Not Call Registry, and who, within the four years before the filing of the initial Complaint, through the date of class certification, received more than one telemarketing call within any twelve month period from, or on behalf of, Defendant.

Compl., at ¶ 22.

The TCPA provides in relevant part that "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of the court or the State bring [an action] in an appropriate court of that State . . . ."  47 C.F.R. § 227(c)(5).  The applicable regulation, 47 C.F.R. § 64.1200(c)(2), provides that "[n]o person or entity shall initiate any telephone solicitation to . . . "any residential telephone subscriber . . . ." Here, Plaintiff's proposed class includes all persons that registered their telephone numbers on the national do-not-call registry despite the TCPA limiting such private right of action to those residential telephone subscribers who registered their number on the national do-not-call registry.

Moreover, Plaintiff's proposed class definition is a fail-safe class – defined such that whether a person qualifies as a member of the class depends on whether the person has a valid claim.  A fail-safe class includes only those who are entitled to relief, and is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment.  *See Spread Enters., Inc. v. First Data Merch. Servs. Corp.*, 298 F.R.D.

20

54, 69 (E.D.N.Y. 2014).  Here, the Court will be required to conduct an individualized inquiry on the merits (e.g., whether residential numbers are identified on the national do-not-call registry, whether such persons received more than one telemarketing call within any 12-month period from Defendant) to determine whether a person qualifies as a class member, thereby resulting in a determination of whether the person has a valid claim.  This is the essence of a fail-safe class.

Lastly, "[t]he class must . . . be defined in such a way that anyone within it would have standing."  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006).  Where, as here, the class definition is "so broad that it sweeps within it persons who could not have been injured by the defendant's conduct, it is too broad."  *Kohen v. Pac. Inv. Mgt. Co. LLC & PIMCO Funds*, 571 F.3d 672, 677 (7th Cir. 2009).  Accordingly, Plaintiff's proposed class should be stricken.

## V.    CONCLUSION

For the foregoing reasons, Defendant Starion Energy, Inc. respectfully requests that this Court grant its motion and dismiss Plaintiff's Complaint in its entirety.

DEFENDANT,

STARION ENERGY, INC.

BY  /s/ Thomas C. Blatchley
　　Thomas C. Blatchley (ct25892)
　　Gordon & Rees LLP
　　95 Glastonbury Blvd., Ste 206
　　Glastonbury, CT 06033
　　Phone: (860) 278-7448
　　Fax: (860) 560-0185
　　Email: tblatchley@gordonrees.com
　　Its Attorney

## **CERTIFICATION OF SERVICE**

I hereby certify that on February 16, 2017, the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this document through the court's CM/ECF System.


BY _ /s/ *Mary Joyce Cusano* _
Mary Joyce Cusano

# EXHIBIT A



Contact Us    Welcome Guest, Sign In    My Account    0 item(s)

**HALO** branded solutions

Shop Products  | About HALO



**Nancy Owens**
Marketing & Branding Specialist

(508) 429-1725
nancy.owens@halo.com

Email Me

Search Products

## Nancy Owens
### Marketing & Branding Specialist

Helping clients achieve their goals with creativity, integrity and a strong attention to detail is Nancy's forte. Having worked with clients in manufacturing, service, safety, education, healthcare and non-profit niches for over 20 years, Nancy is a seasoned professional. She begins every project with a goal in mind, determining each step needed to achieve the desired result. This is how Nancy ensures that her sights are always set on customer satisfaction.

Nancy first recognized the value of promotional products during her time working in newspaper ad sales. Her time in advertising sparked her interest in providing targeted audiences with practical, fun and engaging products that ensure effective marketing campaigns.

Nancy's projects have helped her clients save money while promoting their brand. Talk with Nancy about your branding goals to find out how she can help boost brand awareness and increase ROI for your company.











**CONTACT ME:**    Nancy Owens    (508) 429-1725    nancy.owens@halo.com

---

**PRODUCTS**

All Products
Calendars
Personalized Bags & Totes
Personalized Drinkware
Pens, Pens & Writing
Technology
Promotional Apparel

**ABOUT HALO**

About HALO
Company Stores
Incentive Programs
Warehousing & Fulfillment
Product Safety & Social Compliance
Clients
Careers

**SHOP HALO**

All Products
Best Sellers
BrandED
HALO 365 Calendars
Brand Name Products
Special Offers

**CUSTOMER SERVICE**

Contact Us
Frequently Asked Questions
Online Credit Application
Site Map
Privacy Policy/Your CA Privacy Rights
Terms of Use

©2017 HALO Branded Solutions, Inc.



Shopping Cart | Logo Upload | Create Account | Log In

## PROMOTIONAL PRODUCT SPECIALISTS
Presented By: **HALO BRANDED SOLUTIONS**
Order Now, Call: **508-429-1725**

Search [_____] GO  Advanced Search

Watches   

**My Account**
Shopping Cart
Logo Upload
Create Account
Log In
**Browse Products**
New Products
Clearance Items
Awards
Bags
Clocks
Drinkware
Housewares
Lifestyle
Mobile Technology
Padfolios
Pens
Personal Care
Recreation
Stationery
Table Top
Technology
Tools
Watches
**Price Range**
Gifts Under $1
Gifts Under $3
Gifts Under $5
Gifts Under $10
Gifts Under $20
Gifts Over $20

Products   Watches   Bracelet Watches

1 - 8 of 8 items

Sort By: SKU | Name | Price



**JS2030**
*Men's Watch*
As low as:*$170.00*



**JS2031**
*Women's Watch*
As low as:*$170.00*



**WC5350**
*Men's Watch*
As low as:*$150.95*



**WC5351**
*Women's Watch*
As low as:*$150.95*



**WC6430**
*Men's Watch*
As low as:*$50.95*



**WC6431**
*Women's Watch*
As low as:*$50.95*



**WC6830**
*Men's Watch*
As low as:*$50.95*



**WC6831**
*Women's Watch*
As low as:*$50.95*

FreeRefill.com

*HALO BRANDED SOLUTIONS | . , . MA 01746 | Nancy.owens@halo.com*
*Phone: 508-429-1725 | Fax: 508-429-1725*

Home | Contact Us | About Us | Privacy Policy

Copyright ©2007 Logomark, Inc. All rights reserved.

**MetroWest** CHAMBER OF COMMERCE
THE POWER OF CONNECTION
(http://www.metrowest.org)

f (https://www.facebook.com/MetroWestChamber?sk=wall&ref=ts)

🐦 (https://twitter.com/MWCoC)

in (https://www.linkedin.com/groups?gid=1816646&trk=hb_side_g)

*Proudly Serving the MetroWest Region for Over 120 Years*

Build...Hire...Connect...Grow

JOIN Today!
(http://www.metrowest.org/member/newmemberapp/)

Member Login

Username:

Password:

Forgot your username/password?
(//metrowest.chambermaster.com/login/forgotpwd)

Log In

## Halo Branded Solutions Inc

(http://www.metrowest.org/li...

PROMOTIONAL PRODUCTS | ADVERTISING

**Halo Branded Solutions Inc**

VISIT WEBSITE
(HTTP://WWW.PROMOTIONALPRODUCTSPECIALISTS.COM)

75 Travis Road
Holliston, MA 01746
(508) 429-1725

PREMIER SPONSOR

MetroWest Medical Center

MetroWest Chamber of Commerce

📍 1671 Worcester Road, Suite 301, Framingham, MA 01701 (https://maps.google.com?q=1671+Worcester+Road%2c+Suite+301+Framingham+MA+01701)

📞 508. 879.5600 (tel:(508) 879-5600)

✉ jill@metrowest.org (mailto:jill@metrowest.org)

© Copyright 2017 MetroWest Chamber of Commerce. All Rights Reserved. Site provided by MicroNet (http://www.micronetonline.com) - powered by ChamberMaster (http://www.chambermaster.com) software.

# BNI Massachusetts

*Local Business – Global Network ®*

Members Only

| Home | About | Find a Chapter | **Find a Member** | How to Join | Events Calendar | FAQ for Members | Contact |

## Member Details

Join Our Team ▶

Like us on
Facebook

Get Invited to a BNI meeting

↓ ↓ ↓ ↙

## Complete Form

First Name *

Last Name *

Profession *

City *

Phone Number *

Email *

How Did You Hear About Us? *

**Nancy Owens**
HALO Branded Solutions
Chapter: BNI Winning Edge
Advertising, Advertising Specialties-Promotional Products

**My Business**
For over 20 years I have been helping my clients grow their businesses and show appreciation to their clients and staff through the use of imprinted promotional products. Finding just the right product to achieve marketing goals while staying within budget is one of the motivators that keeps me working to make my clients look good.

Phone 508-429-1725
Mobile Number 508-397-5696
Fax 502-427-1725
Website
http://www.promotionalproductspecialists.com

Ms. Nancy Owens
HALO Branded Solutions
By Appointment
Holliston, MA 01746

*Social Networking Links*

http://www.facebook.com/nancy.owens

Send Message

NEW MEMBERS
PLEASE PAY HERE

RENEWING MEMBERS
PLEASE PAY HERE

LEADERSHIP TEAM
AGREEMENTS

ORDER CHAPTER
SUPPLIES

SuccessNet

Login        Shopping Cart   0

## Promotional Product Specialists
*Presenting Our 2016 Holiday and All Occasion Cards*
*Nancy Owens*

*Search Site*

**CONTACT US**
**P:** 508-429-1725
**E:** nancy.owens@halo.com

Holiday    Occasions    About Us    FAQs

Free Return Address Printing Today!

Holiday    Rosh Hashanah Cards

Tweet          Like 0

### Style

Business (5)

Religious (5)

# Rosh Hashanah Cards

Sort By  *Most Popular* ∨

Items per page:   30 ∨

### Filter By:

### Price

☐ $0-$1.49 per item (0)

☐ $1.50 - $1.74 per item (0)

☐ $1.75 - $1.99 per item (0)

☐ $2.00 and above (0)



L' Shanah Tovah Rosh
Hashanah Card

*as low as $1.73 a card*



A Good and Sweet Year
Rosh Hashanah Card

*as low as $1.60 a card*



Collage of Symbols Rosh
Hashanah Card

*as low as $1.60 a card*

### Special Card Features

☐ Folded (5)

☐ Recycled (1)

Save yourself from writer's
cramp . We can address your
cards for you. Learn More »



Traditional Touches Rosh
Hashanah Card

*as low as $1.60 a card*



Harvesting a Good New
Year Rosh Hashanah Card

*as low as $1.73 a card*

Previous

Items 1 - 5 of 5    1 Next

Terms & Conditions / Privacy Policy

# EXHIBIT B



# Abbas v. Selling Source, LLC

United States District Court for the Northern District of Illinois, Eastern Division

December 14, 2009, Decided; December 14, 2009, Filed

Case No. 09 CV 3413

**Reporter**

2009 U.S. Dist. LEXIS 116697 *; 49 Comm. Reg. (P & F) 66

SADAT ABBAS, individually and on behalf of a class of similarly situated individuals, Plaintiff, v. SELLING SOURCE, LLC, a Delaware limited liability company, Defendant.

**Counsel:** [*1] For Sadat Abbas, individually and on behalf of a class of similarly situated individuals, Plaintiff: Michael J McMorrow, Myles P. McGuire, LEAD ATTORNEYS, Evan M Meyers, KamberEdelson LLC, Chicago, IL; Ryan David Andrews, Kamber Edelson, Chicago, IL.

For Selling Source, LLC, a Delaware limited liability company, Defendant: Blaine C Kimrey, LEAD ATTORNEY, Bryan K. Clark, Lathrop & Gage LLP, Chicago, IL.

**Judges:** JOAN B. GOTTSCHALL, United States District Judge.

**Opinion by:** JOAN B. GOTTSCHALL

# Opinion

## MEMORANDUM OPINION & ORDER

Plaintiff Sadat Abbas brought this putative class action against defendant Selling Source, LLC in the Circuit Court of Cook County, Illinois. Abbas alleges that Selling Source sent him and others like him unsolicited Short Message Service text messages ("SMS messages") from an "automatic telephone dialing system" in violation of the Telephone Consumer Protection Act of 1991, as enacted, 47 U.S.C. § 227 (the "TCPA"). Selling Source removed the suit, and the matter is presently before this court on Selling Source's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [1] For the reasons stated within, the

court grants Selling Source's motion to dismiss in part, and grants [*2] Abbas leave to re-plead consistent with this opinion.

## I. LEGAL STANDARDS

### A. Rule 12(b)(6)

Rule 12(b)(6) allows a defendant to seek dismissal of a complaint that fails to state a claim upon which relief can be granted. Fed R. Civ. P. 12(b)(6). In resolving a Rule 12(b)(6) motion, the court must "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [the plaintiff's] favor." *Tamayo v. Blagojevich,* 526 F.3d 1074, 1081 (7th Cir. 2008). Legal conclusions, however, are not entitled to any assumption of truth. *Ashcroft v. Iqbal,* 556 U.S. ___, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009). To survive a Rule 12(b)(6) motion, "the complaint need only contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *EEOC v. Concentra Health Servs., Inc.,* 496 F.3d 773, 776 (7th Cir. 2007) (quoting [*3] Fed. R. Civ. P. 8(a)(2)). However, the allegations must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citing *Conley v. Gibson,* 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). The plaintiff generally need not plead particularized facts, but the factual allegations in the complaint must be sufficient to "state a claim to relief that is plausible on its face . . . ." *Twombly,* 550 U.S. at 570.

### B. The TCPA

The relevant portion of the TCPA provides as follows:

---

[1] The motion does not address the sufficiency of Abbas's class allegations except insofar as Selling Source raises arguments regarding the TCPA that would be equally applicable to other members of the putative class. Therefore, the court takes no position on Abbas's class-specific allegations.

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States--
(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice--
. . .
(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call[.]

47 U.S.C. § 227(b)(1) (2006). The statute further defines "automatic [*4] telephone dialing system" (the "ATDS") as "equipment which has the capacity--(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." Id. § 227(a)(1).

## II. ANALYSIS

Selling Source urges that this court should dismiss Abbas's Complaint because: (1) Abbas has failed to make a "a short and plain statement of the claim showing that the pleader is entitled to relief" as required by Rule 8(a)(2) of the Federal Rules of Civil Procedure, given the gloss of Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 and Iqbal, 129 S. Ct. 1937, 173 L. Ed. 2d 868; (2) Abbas has failed to allege that he was charged for the SMS message he received, which Selling Source maintains is required to state a claim under the TCPA; (3) Abbas has failed to allege that the equipment that sent the subject SMS message was an ATDS; (4) the TCPA does not apply to SMS messages like the ones allegedly sent by Selling Source because a text message is not a "call" within the meaning of the statute and is not otherwise proscribed by the TCPA; (5) as applied, the TCPA would violate the First Amendment; and (6) as applied, the TCPA would be void for vagueness.

The court does not rule on a blank slate [*5] in resolving many of these questions; state and federal courts have addressed challenges to similar suits brought under the TCPA. See Satterfield v. Simon & Schuster, Inc., 569 F.3d 946 (9th Cir. 2009); see also Joffe v. Acacia Mortgage Corp., 211 Ariz. 325, 121 P.3d 831 (Ariz. Ct. App. 2005); Pollock v. Island Financial Arbitration & Mediation, Inc., 22 Misc. 3d 463, 869 N.Y.S.2d 740 (N.Y. City Ct. 2008); Satterfield v. Simon & Schuster, 2007 U.S. Dist. LEXIS 46325, 2007 WL 1839807 (N.D. Cal. June 26, 2007) rev'd 569 F.3d 946. Also, the Federal Communications Commission (the "FCC"), which

Congress tasked with implementing certain regulations under the TCPA, see 47 U.S.C. § 227(b)(2), has issued orders interpreting the TCPA. The court considers the case law and administrative opinions relevant to each contention.

### A. Rule 8(a)(2)

Selling Source first argues that Abbas has failed to satisfy federal pleading requirements. After alleging several facts regarding the initial, offending SMS message he allegedly received from Selling Source, Abbas makes broad, conclusory allegations regarding the "numerous" further messages that he allegedly received. See Compl. PP 17, 18. While Rule 8(a)(2) does not require facts to be pled with particularity, Abbas's allegations [*6] here provide no notice to Selling Source about the subsequent messages Abbas allegedly received. There is no allegation regarding when Abbas received the later messages, what those messages stated, or from what numbers he received the later messages. Some fair notice to Selling source is particularly necessary here because Abbas seeks recovery for each violation of the TCPA. See Compl. P 26. Abbas's allegations regarding subsequent messages he received are insufficient but not beyond cure, and so his Complaint is dismissed with leave to amend.

### B. "Charged"

Selling Source also argues that Abbas's Complaint should be dismissed because he does not allege that he was charged for the offending SMS messages. According to Selling Source, the TCPA, which prohibits certain "call[s]" made "to any telephone number assigned to a paging service, **cellular telephone service,** specialized mobile radio service, **or** other radio common carrier service, **or any service for which the called party is charged for the call,**" see 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added), is not violated unless "the called party is charged for the call." See also 47 C.F.R. 64.1200(a)(iii) (reiterating TCPA standard). [2] The [*7] phrase "for which the called party is charged for the call" clearly modifies "any service." What is less clear from this section alone is whether "any service for which the called party is charged" is a catch-all clause that equally describes the types of services that precede it, or whether the clause instead describes a different type of service (one in which the called

---

[2] Abbas argues that he alleged that he and others were charged for messages received, rendering this issue moot. However, he cites paragraphs in his Complaint that simply state that consumers have to pay for SMS messages received. Compl. P 2; see also id. P 11. It is far from clear that Abbas alleges that he is one of those consumers, particularly given the variety of cellular telephone plans available and given arrangements wherein employers and other third parties reimburse the actual user of the telephone at issue.

party is charged) than those listed before it. [3]

Selling Source claims that a 1992 FCC Report and Order suggests that the TCPA requires a called party to be charged for a violation to occur. *See In the Matter of Rules and Regulations Implementing the Telephone Consumers Protection Act of 1991,* Report and Order, 7 F.C.C.R. 8752, 8775 (Oct. 16, 1992) (the "1992 Order"). In the 1992 Order, the FCC stated, "Based on the plain language of § 227(b)(1)(iii) [*sic*], we conclude that the TCPA did not intend to prohibit autodialer or precorded message calls to cellular customers for which the called party is not charged." *Id.* Not two weeks later, however, Congress amended the TCPA to provide that the FCC "may, by rule or order, exempt from the requirements of paragraph (1)(A)(iii) of this subsection calls to a telephone number assigned to a cellular telephone service that are not charged to the called party." *See* Pub. L. No. 102-556, 106 Stat. 4181, 4194-95 (Oct. 28, 1992), enacted as 47 U.S.C. § 227(b)(2)(C). If uncharged calls were already exempted from the requirements of the TCPA, as the FCC's 1992 Order and Selling Source maintain, the later congressional amendment would be wholly superfluous, as no FCC "rule or order" would be [*10] necessary to exempt such calls from the statute's purview. [4]   Courts avoid such

---

[3] The parties urge that the doctrine of the last antecedent assists in construing the TCPA, but of course disagree as to how. The doctrine of the last antecedent is a canon of statutory construction that states that "where one phrase of a statute modifies [*8] another, the modifying phrase applies only to the phrase immediately preceding it." *See* O'Kane v. Apfel, 224 F.3d 686, 690 (7th Cir. 2000) (internal citations and quotation marks omitted). As Selling Source points out, "Evidence that a qualifying phrase is supposed to apply to all antecedents instead of only to the immediately preceding one may be found in the fact that it is separated from the antecedents by a comma." Norman J. Singer et al., 2A Sutherland Statutory Construction, § 47.33. Selling Source contends that "any service for which the called party is charged" is a "qualifying phrase" that modifies the rest of the list because it is separated by a comma from that list. But the qualifying phrase is clearly "for which the called party is charged," which modifies "any service." Abbas contends that this reading compels the conclusion that the TCPA does not require that calls be charged to the called party to be actionable. The court is unconvinced, though, in light of the problem outlined above: "any service" could mean "any other service" (*i.e.,* a catch-all which effectively modifies the earlier entries on the list), or could pose an alternative to the previous entries on the [*9] list.

[4] The court further notes that the issue of whether a call to a party not charged for the call fell within the TCPA was not mentioned in the Notice of Proposed Rulemaking that preceded the 1992 Order. *See generally In the Matter of the Telephone Consumer Protection Act of 1991,* 7 F.C.C.R. 2736 (Apr. 17, 1992). Moreover, as the 1992 Order states, the FCC's interpretation was based on the plain language of

---

ineffective statutory construction. *See In the Matter of Merchants Grain, Inc.,* 93 F.3d 1347, 1353-54 (7th Cir. 1996).

Selling Source argues that the congressional amendment was technical and should be given no substantive effect. The amendment was indeed technical. *See* Pub. L. No. 102-556, 106 Stat. at 4194-95. But "a statute is a statute, whatever its label," and "the usual tools of statutory construction" should be used in interpreting a technical amendment. *See United States v. R.L.C.,* 503 U.S. 291, 305 n.5, 112 S. Ct. 1329, 117 L. Ed. 2d 559 (1992); *see also Mudge v. United States,* 308 F.3d 1220, 1229 (Fed. Cir. 2002). Employing one of those tools--reading statutes as a whole--the court finds that the TCPA does not require that a party called via a number assigned to a cellular telephone service must be charged for the call to make that call actionable.

Finally, while Selling Source argues that congressional intent indicates that Congress was primarily concerned with cost-shifting (and that consequently the TCPA should not apply to calls not charged to the called party), Congress was just as concerned with consumers' privacy rights and the nuisances of telemarketing. *See Bonime v. Avaya,* 547 F.3d 497, 499 (2d Cir. 2008) [*12] ("Congress's stated purpose in enacting the TCPA was to protect the privacy interests of residential telephone subscribers . . . ."); *see also* Section II.E.1 *infra.* Automated calls invade privacy and pose nuisances regardless of whether the called party is charged for the call, and so congressional intent is furthered by the TCPA's application to both charged and uncharged calls.

## C. ATDS

The second issue is whether Abbas has sufficiently alleged that the SMS messages he received came from an ATDS. The TCPA defines an ATDS as "equipment which has the capacity--(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). Abbas has

---

the TCPA, and not on any expert or technical understanding of the statute or the nature of services covered by the statute. The court is equally capable of statutory interpretation.

Finally, the FCC, in a 2003 Report and Order relied on its 1992 Order to suggest that only charged calls are prohibited by the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Report and Order, 18 F.C.C.R. 14014, 14115 (July 3, 2003) (the "2003 Order"). But this suggestion does not specifically exempt calls for which the called party is not charged, *see* 47 U.S.C. § 227(b)(2)(C), [*11] and the court will not accord deference to the FCC for its bare announcement, for the reasons elaborated upon in section II.D.1.b within.

parroted that language in his Complaint. Compl. P 25. While this allegation is a bare legal conclusion entitled to no weight, see Iqbal, 129 S. Ct. at 1940, Abbas also alleges that Selling Source used an "SMS short code," for which it had a license, to send him the initial SMS message. Compl. P 14. Also, the text of the SMS message Abbas allegedly received clearly suggests that it is from an institutional sender without any personalization. Id. P 15. Finally, Abbas [*13] alleges that Selling Sources sent "mass transmissions of wireless spam" to potential customers. Id. P 12. Last, there is no indication that Selling Source had any reason to call Abbas's number aside from telemarketing purposes. These allegations flesh out the conclusion above; the court can reasonably infer that Selling Source obtained a license for a SMS short code by which it sent mass SMS messages to Abbas (and, perhaps, others) using equipment with some automated capacity.

The question remains whether Abbas must allege that Selling Source actually used the equipment's automated capacity, or whether Abbas can simply allege that the equipment had the capacity to do so. The plain text of the statute requires only "the capacity" for such random or sequential generation, see 47 U.S.C. § 227(a)(1), and the implementing regulations impose no higher burden. See 47 C.F.R. § 64.1200(f)(1). The Court of Appeals for the Ninth Circuit found this clear language mandated only allegations of "capacity," see Satterfield, 569 F.3d at 950, and this court agrees. Therefore, Abbas needs only to allege that the equipment that Selling Source used to send him SMS messages had the capacity to produce or [*14] store and dial numbers randomly or sequentially. [5]

## D. The TCPA and SMS messages

Selling Source also contends that the TCPA applies only to "call[s]," and not to SMS messages. Abbas counters that FCC orders finding that SMS messages are indeed "call[s]" should guide this court's interpretation of the TCPA. Resolution of this issue requires examination of Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984), and its progeny regarding judicial review of administrative decisions.

### 1. Chevron deference

In Chevron, the Supreme Court announced a two-part test for

judicial review of an administrative agency interpretation of a congressional statute that the agency administers. Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984). [6] First, the court must examine whether Congress has "directly spoken to the precise question at issue"--in this [*15] case, whether the definition of "call" includes an SMS message. Id. at 842. If so, congressional intent governs, but if not, courts may give deference to the agency's interpretation as the administrative process preceding that interpretation and the interpretation's persuasiveness warrant. See United States v. Mead Corp., 533 U.S. 218, 229-31, 121 S. Ct. 2164, 150 L. Ed. 2d 292 (2001).

### a. Whether Congress has defined "call"

The first question is whether Congress "has directly spoken to the precise question at issue," either by defining an ambiguous term or by using an unambiguous term that clearly evinces congressional intent. See Chevron U.S.A., 467 U.S. at 842-43. "The starting point in statutory interpretation is the language of [*16] the statute itself." Ardestani v. I.N.S., 502 U.S. 129, 135, 112 S. Ct. 515, 116 L. Ed. 2d 496 (1991) (citations and quotation marks omitted). In enacting the TCPA, Congress prohibited certain automated "call[s]," but did not define the term "call," see 47 U.S.C. § 227(b)(1), so the court next turns to that word's ordinary meaning. See Perrin v. United States, 444 U.S. 37, 42, 100 S. Ct. 311, 62 L. Ed. 2d 199 (1979).

Selling Source argues that the definition of "call" does not accommodate SMS messages. See Mem. 13. The parties engage in a battle of the dictionaries resulting in a draw: the definition of "call" includes "to communicate with or try to communicate with a person by telephone," which could include SMS messages, but does not demand as much. See, e.g., Webster's Third New International Dictionary of the English Language, Unabridged 318 (1961). Definitions aside, Selling Source maintains that the SMS messages are fundamentally different in nature from what it characterizes as "[a]utomated oral calls." See Mem. 14; see also id. 12 n.3. True as this may be, neither the above-quoted dictionary definition nor the TCPA requires that a "call" be "oral." Indeed, if such a requirement existed, the TCPA's prohibition

---

[5] The FCC has suggested that "capacity" is sufficient to render equipment an ATDS. 2003 Order, 18 F.C.C.R. at 14092-93. However, as discussed in section II.D.1.b. within, the FCC's suggestions, in the absence of formal notice-and-comment rulemaking on the issue, are not entitled to deference.

---

[6] It is undisputed that the FCC administers the TCPA. See 47 U.S.C. § 227(b)(2) (authorizing the FCC, inter alia, "to prescribe regulations to implement the requirements of this subsection"); see also Balt.-Wash. Tel. Co. v. Hot Leads Co., LLC, 584 F. Supp. 2d 736, 743 (D. Md. 2008) (describing FCC's "broad discretion to issue regulations 'reasonably related' to the purposes of the TCPA"). Consequently, FCC interpretations of the TCPA are properly analyzed pursuant to the Chevron two-part test.

on calls to "a paging service," *see* [*17]47 U.S.C. § 227(b)(1)(A)(iii), would be of little effect.

Selling Source raises the further historical point that Congress could not have intended to prohibit SMS messages when it enacted the TCPA in 1991 because SMS messages were not in use until the following year. *See* Mem. 11; *see also* J. Wesley Harned, Note, *Telemarketers Gone Mobile: The Telephone Consumer Protection Act of 1991 and Unsolicited Commercial Text Messages,* 97 Ky. L.J. 313, 314 (2009) (noting that the first SMS message was sent in 1992). Neither party cites any authority on point, [7] but the Seventh Circuit has criticized Selling Source's proposed method of statutory interpretation. It noted that such a canon of construction would lead to "absurd" results, including that "a 1925 statute dealing with 'news media' could not apply to television, and a 1930 statute dealing with 'motor cars' could not apply to Volkswagons." *See* *Squillacote v. United States,* 739 F.2d 1208, 1213 (7th Cir. 1984) (quoting Frederick Reed Dickerson, *The Interpretation and Applications of Statutes* 129 (1975) (internal quotation marks omitted)). The court finds this guidance instructive, and so the nonexistence of SMS messages when the TCPA was [*18] enacted does not preclude the application of the latter to the former.

Finally, Selling Source argues that Congress did not mean "call" to include SMS message because prospective amendments to expressly apply the TCPA to SMS messages, [*19] and because the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003, 15 U.S.C. § 7701 *et seq.* (the "CAN-SPAM Act") applies explicitly to text messages. *See* Mem. 11-17. These points are not well-taken. The CAN-SPAM Act, regardless of its application to SMS messages, clearly states, "Nothing in this chapter shall be interpreted to override the applicability of" the TCPA. *See*

---

[7] *McBoyle v. United States,* 283 U.S. 25, 26, 51 S. Ct. 340, 75 L. Ed. 816 (1931), a case cited by Selling Source, is inapposite. In that case, the Supreme Court determined that an airplane was not a "vehicle" and specifically noted, "[a]irplanes were well known in 1919 when this statute was passed, and it is admitted that they were not mentioned in the reports or in the debates in Congress." *Id.* Selling Source claims that *McBoyle* is of even greater force here because Congress could not have even contemplated SMS messages when passing the TCPA. *See* Reply 17. The court agrees with Selling Source that *McBoyle* is silent as to later-derived technologies such as the SMS messages at issue here, but unlike Selling Source finds *McBoyle* inapplicable to resolution of the instant question.

The Ninth Circuit in *Satterfield* noted this technological issue and without further discussion determined that a "call" could include an SMS message. *See* *Satterfield,* 569 F.3d at 954; *see also* *Joffe,* 211 Ariz. 325, 121 P.3d 831.

15 U.S.C. § 7712(a). Subsequent legislation provides at best an uncertain indicator of previous congressional intent, *see* *Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 118, n.3, 100 S. Ct. 2051, 64 L. Ed. 2d 766 (1980); all the more uncertain here, where the later Congress specifically disavowed any inferences to be drawn from its enactment. Proposed legislation is even further removed from subsequent legislation from the meaning of the original statute, given the uncertainty that it will ever be enacted, so a proposal by two senators to amend the TCPA to apply to SMS messages explicitly, *see* S. 788(3), 111th Cong. (2009), is of no force in interpreting congressional intent in enacting the TCPA eighteen years ago. *See* *United Stationers, Inc. v. United States,* 982 F. Supp. 1279, 1283 (N.D. Ill. 1997) [*20] (finding that proposed regulations carry no weight as legal authority). Consequently, the court finds such subsequent legislative activity irrelevant, and finds the term "call" within the TCPA ambiguous.

b. Deference and Administrative Procedures

Because the term "call" is ambiguous, the court considers what degree of deference is due the FCC's administrative interpretation. The Court has expanded its holding in *Chevron,* which granted deference only to formal notice-and-comment rulemaking. *See* *Chevron, U.S.A.,* 467 U.S. at 857-59; *see also* *Mead Corp.,* 533 U.S. at 229-31. Whether an agency's non-rulemaking interpretation is entitled to *Chevron* deference depends on "'an apparently open-ended list of factors,'" *see* *Krzalic v. Republic Title Co.,* 314 F.3d 875, 879 (7th Cir. 2002) (quoting Richard J. Pierce, Jr., *Administrative Law Treatise,* § 3.5, at 6-7 (4th ed. Supp. 2003)), including "the agency's care, its consistency, formality, . . . relative expertness, and . . . the persuasiveness of the agency's position." *Mead Corp.,* 533 U.S. at 228. However, an agency interpretation must be preceded by some minimum of process to merit deference; simple agency pronouncements, opinion letters, and [*21] policy statements fall below that minimum. *See* *Krzalic,* 314 F.3d at 881; *see also* *Sehie v. City of Aurora,* 432 F.3d 749 (7th Cir. 2005).

Here, the FCC issued an order stating in relevant part:

> We affirm that under the TCPA, it is unlawful to make *any call* using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number. Both the statute and our rules prohibit these calls, with limited exceptions, "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other common carrier service, or any service for which the called party is charged." This encompasses both voice calls and text calls to wireless numbers including, for

example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service.

*See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Report and Order, 18 F.C.C.R. 14014, 14115 (July 3, 2003) (the "2003 Order"). The FCC referenced the 2003 Order one year later in addressing regulations implementing the CAN-SPAM Act, stating:

> In 2003, we released a Report and Order in which we reaffirmed [*22] that the TCPA prohibits *any call* using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number. We concluded that this encompasses both voice calls and text calls, including Short Message Service (SMS) text messaging calls, to wireless phone numbers.
>
> . . .
>
> We noted that the TCPA and Commission rules that specifically prohibit using automatic telephone dialing systems to call wireless numbers already apply to any type of call, including both voice and text calls.
>
> . . .
>
> And, as we explained in the *NPRM* and a previous Commission order, the TCPA prohibition on using automatic telephone dialing systems to make calls to wireless phone numbers applies to text messages (e.g., phone-to-phone SMS), as well as voice calls. We clarify here that this prohibition applies to all autodialed calls made to wireless numbers, including audio and visual services, regardless of the format of the message.

*In the matter of Rules and Regulations Implementing the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003,* 19 F.C.C.R. 15927, 15931, 15933, 15934 (Aug. 4, 2004). [*23] One month later, the FCC, turning back to the TCPA, again stated:

> In 2003, the Commission released a Report and Order (2003 TCPA Order) revising the TCPA rules to respond to changes in the marketplace for telemarketing. . . . [W]e determined that the TCPA prohibits *any call* using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number. We concluded that this encompasses both voice calls and text calls to wireless numbers including, for example, Short Message Service calls.

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 19 F.C.C.R. 19215, 19224-25 (Sept. 21, 2004).

Selling Source maintains that the Notice of Proposed

Rulemaking (the "NPRM") that preceded the 2003 Order made no mention of any interpretation of the term "call," and therefore is entitled to no deference. *See generally In re Rules and Regulations Implementing Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking and Memorandum Opinion and Order, 17 F.C.C.R. 17459 (Sept. 18, 2002). The NPRM, while seeking comments on a variety of matters, does not mention SMS messages or any similar term, and does not [*24] reference any definition of "call." As a result, this portion of the 2003 Order is not entitled to *Chevron* deference because the FCC articulated it without any process. *See* Krzalic, 314 F.3d at 881 (noting that agency must engage in "something more formal, more deliberative, than a simple announcement" to warrant deference). Nor is this portion of the 2003 Order entitled to *Mead* deference. The FCC provided no justification for its statement that a "call" "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service." 2003 Order, 18 F.C.C.R. at 14115 & n.606. Moreover, its determination that "call[s]" include SMS messages does not appear to be based on a technical or expert understanding of SMS messages, *see* Mead Corp., 533 U.S. at 228, but rather appears to be based on an interpretation of the TCPA's text and legislative purpose. *See* 2003 Order, 18 F.C.C.R. at 14115. This court is equally capable of such interpretation, and so concludes the 2003 Order is entitled to no deference.

## 2. Whether an SMS message is a "call"

Turning to an independent examination [*25] of whether an SMS message is a "call," the court notes, as discussed above, that the term "call" is an ambiguous term which might encompass an SMS message. In *Satterfield,* the Ninth Circuit noted that "text messaging is a form of communication used primarily between telephones," and is therefore consistent with the definition of "call." 569 F.3d at 954. Congress, for its part, found that cheap, pervasive telemarketing practices needed to be controlled, *see* Telephone Consumer Protection Act of 1991, Pub. L. 102-243 § 2, 105 Stat. 2394 (1991) (codified as amended at 47 U.S.C. §§ 227, 152, & 331 (2006)), and intended to restrict unsolicited, automated advertisements and solicitations by telephonic means. *See* S. Rep. 102-178, at 1 (1991), *reprinted in* 1991 U.S.C.C.A.N. 1968, 1968; *see also* H.R. Rep. 102-317, at 5-6 (1991). The court agrees with the FCC's interpretation that congressional findings and intent apply with equal force to SMS messages. The court concludes that an SMS message is a "call" within the meaning of the TCPA.

## E. The TCPA and the First Amendment

Selling Source next argues that Abbas's complaint should be dismissed because the TCPA as applied to SMS messages violates the [*26] First Amendment. The constitutionality of the TCPA as applied to facsimile transmissions has been challenged repeatedly and upheld consistently. *See, e.g., Holtzman v. Caplice,* No. 07 C 7279, 2008 U.S. Dist. LEXIS 41188, 2008 WL 2168762, at *3 (N.D. Ill. May 23, 2008) (collecting cases). However, the TCPA's prohibition on facsimile transmissions applies to "unsolicited advertisement[s]," *see* 47 U.S.C. § 227(b)(1)(C), while the provision of the TCPA applicable here applies to "call[s]," whether advertisements or otherwise. *See id* § 227(b)(1)(A). As Selling Source argues, the TCPA's prohibition on "call[s]" is a content-neutral time, place, and manner restriction on speech. *See Joffe,* 121 P.3d at 841. Such restrictions are constitutional if (1) they serve a significant government interest, (2) are narrowly tailored to serve that interest, and (3) leave open ample alternative channels for the communication of the information. *See, e.g., Ward v. Rock against Racism,* 491 U.S. 781, 109 S. Ct. 2746, 105 L. Ed. 2d 661 (U.S. 1989) (citing cases); *see also Horina v. City of Granite City, Ill.,* 538 F.3d 624, 631 (7th Cir. 2008).

1. Significant government interest

In enacting the TCPA, Congress noted the nuisance of rampant telemarketing and the consequent costs [*27] of money, time, and the invasion of privacy to consumers. S. Rep. 102-178, at 1, *reprinted in* 1991 U.S.C.C.A.N. at 1969; *see also* H.R. Rep. 102-317, at 2. Congress further found that consumers were helpless to prevent such unwanted telemarketing calls, and were particularly unable to stop the calls via direct requests to the telemarketers themselves. S. Rep. 102-178, at 2, *reprinted in* 1991 U.S.C.C.A.N. at 1969. Continuous advances in technology made automated telemarketing all the more cost-effective (and, in turn, all the more widely used). *Id., reprinted in* 1991 U.S.C.C.A.N. at 1969-70; *see also* H.R. Rep. 102-317, at 7-8. Recognizing these problems, Congress found that it had a substantial interest in protecting the privacy of consumers and in preventing the above-described nuisances. S. Rep. 102-178, at 4, *reprinted in* 1991 U.S.C.C.A.N. at 1971-72.

Selling Source points out that Congress did not articulate a specific interest in proscribing automated SMS messages (nor could it have), Mem. 21-22, but Selling Source cites no authority suggesting that Congress needed to articulate a substantial government interest for each type of "call," whether oral telephone call or SMS message, [*28] it proscribed. Moreover, the above-articulated substantial interests apply equally to SMS messages and oral telephone calls. Selling Source's next argument that "[p]ervasive use of cell phones makes them far different from the land lines

Congress had in mind when it passed the TCPA," *id.* 22, proceeds from a false premise, as the TCPA plainly applies to cellular, paging, and other wireless services and not just "land lines." *See* 47 U.S.C. § 227(b)(1)(A)(iii). Selling Source's final argument, that "the telephone can be easily ignored," Mem. 23, ignores the congressional findings discussed above.

The TCPA, as applied to SMS messages, advances substantial government interests in protecting consumer privacy and in shifting the costs, pecuniary and otherwise, of telemarketing practices.

2. Narrowly Tailored

A statute is narrowly tailored to serve a substantial government interest "so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Ward,* 491 U.S. at 799 (quoting *United States v. Albertini,* 472 U.S. 675, 689, 105 S. Ct. 2897, 86 L. Ed. 2d 536 (1985)). In advancing its substantial interest, the restriction at issue cannot "burden substantially [*29] more speech than is necessary to further the government's legitimate interests." *Id.* Selling Source again cites the CAN-SPAM Act and the proposed revisions to the TCPA--both of which reference SMS messages--as evidence that the TCPA as applied to SMS messages is not narrowly tailored but rather redundant. But the CAN-SPAM Act's promulgated regulations prohibit certain SMS messages in commercial speech without providing a private cause of action, which the TCPA provides. *See* 47 C.F.R. § 64.3100; *see also* 47 U.S.C. § 227(b)(3). The TCPA's private right of action furthers the congressional purpose of protecting consumer privacy and shifting telemarketing costs in a way that the CAN-SPAM Act does not. Additionally, the proposed revisions to the TCPA are, as discussed above, of no force at the moment. The court finds that the TCPA is narrowly tailored to advance government's substantial interest in protecting the privacy of consumers, particularly from the nuisance of automated calls.

3. Alternative Means

Last, Congress left open to telemarketers and others covered by the TCPA non-automated, live methods of communication. *See* 47 U.S.C. § 227(b)(1)(A). Automated dialers seeking to avoid the [*30] strictures of the TCPA may find several imaginative ways around prohibitions on automated SMS messages. *See Moser v. F.C.C.,* 46 F.3d 970, 975 (9th Cir. 1994). That such dialers are "hamstrung" by the TCPA, Mem. 25, is no basis to invalidate it. *See id.* (finding that "the cost and efficiency of automated telemarketing does not prevent Congress from restricting the practice") (citing *Kovacs v. Cooper,* 336 U.S. 77, 88-89, 69 S. Ct. 448, 93 L. Ed. 513

(1949)). The court finds that Congress left open ample alternative channels through which telemarketers and other would-be automated callers can communicate.

**F. The TCPA and Vagueness**

Selling Source's last challenge to the TCPA is based on the purported vagueness of the TCPA. In support of this argument, Selling Source recapitulates its arguments that the text of the TCPA does not mandate that an SMS message constitute a "call" or that an ATDS can have the capacity to generate numbers randomly or sequentially without use for that purpose. *See* Mem. 25-26. Selling Source is incorrect as to the "capacity" question; that definition of ATDS derives directly from a straightforward reading of the TCPA. *See United States v. Walton,* 36 F.3d 32, 35 (7th Cir. 1994) (holding that statute [*31] was not vague that "explicitly and clearly forbids" certain conduct).

Moreover, Selling Source misstates the vagueness standard. The question is not what could be deduced just from a reading of the statute, but what a person of ordinary intelligence should know from reading the statute and relevant outside materials, such as administrative and judicial opinions. *See Gonzales v. Carhart,* 550 U.S. 124, 149, 127 S. Ct. 1610, 167 L. Ed. 2d 480 (2007) (articulating ordinary person standard); *see also Botosan v. Paul McNally Realty,* 216 F.3d 827, 836-37 (9th Cir. 2000) (determining vagueness by reference to statute, regulations, and interpretive handbook). By November 2006, when Selling Source allegedly sent the offending SMS message to Abbas, the FCC and the *Joffe* court had already adopted the view that "call" under the TCPA includes SMS messages. *See generally* 2003 Order; *Joffe,* 211 Ariz. 325, 121 P.3d 831. These extrinsic aides provided Selling Source with sufficiently fair notice of the potential application of the TCPA to its alleged dissemination of SMS messages.

**III. CONCLUSION**

For the reasons stated above, the court grants Selling Source's motion to dismiss in part and grants Abbas leave to re-plead in a manner consistent with this [*32] opinion.

/s/

JOAN B. GOTTSCHALL

United States District Judge

DATED: December 14, 2009

**End of Document**



# Bank v. Independence Energy Group LLC

United States District Court for the Eastern District of New York

October 2, 2014, Decided; October 2, 2014, Filed

12-cv-1369

**Reporter**

2014 U.S. Dist. LEXIS 141141 *; 2014 WL 4954618

TODD C. BANK, Plaintiff, - versus - INDEPENDENCE ENERGY GROUP LLC and INDEPENDENT ENERGY ALLIANCE LLC, Defendants.

**Prior History:** Bank v. Independence Energy Group LLC, 2013 U.S. Dist. LEXIS 39602 (E.D.N.Y., Mar. 12, 2013)

**Counsel:** [*1] TODD C. BANK, Plaintiff, Pro se, Kew Gardens, NY.

For Defendants: Aurora Parilla, SEDGWICK LLP, Newark, NJ.

**Judges:** John Gleeson, United States District Judge.

**Opinion by:** John Gleeson.

## Opinion

### MEMORANDUM AND ORDER

JOHN GLEESON, United States District Judge:

Todd Bank, proceeding *pro se*, brings this purported class action alleging that the Defendants violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(B), by calling his residential telephone line without his consent using an artificial or prerecorded voice that delivered a message advertising goods or services. Defendants have moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), on the ground that the telephone line Bank alleges the Defendants called does not qualify as a residential telephone line for the purposes of the TCPA and thus is not subject to the protections offered by § 227(b)(1)(B). Because I do not have sufficient evidence before me to determine whether the telephone line at issue is "residential" for purposes of § 227(b)(1)(B), Defendants' motion is denied.

### BACKGROUND

Bank alleges the following facts, which I accept as true for the purposes of deciding this motion. *See Harris v. Mills,* 572 F.3d 66, 71 (2d Cir. 2009).

On or about January 17, 2012, Defendants placed a call to Bank's residential telephone line using an artificial or prerecorded [*2] voice that advertised electricity-related services provided by the Defendants. Compl. ¶¶ 8-9, Mar. 19, 2012, ECF No. 1. Bank alleges that in the four years preceding the filing of the action, Defendants placed at least 10,000 such calls to residential phone lines without the subscribers' consent. *Id.* ¶¶ 10, 16.

Bank filed the complaint on March 19, 2012. Defendants moved to dismiss the complaint on May 23, 2014. On August 26, 2014, the case was reassigned to me from Judge William Kuntz.

### DISCUSSION

A. *The Standard of Review*

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must allege sufficient facts to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Bigio v. Coca-Cola Co.,* 675 F.3d 163, 173 (2d Cir. 2012). In making this determination, a court should assume all well-pleaded allegations in the complaint to be true "and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal,* 556 U.S. at 679; *see also Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ("Factual allegations must be enough to raise a right to relief above a speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (citation omitted)). However, "the tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable [*3] to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

In deciding a motion to dismiss, a court considers only "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken . . . ." *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993) (citation omitted). Legal questions of statutory interpretation may also properly be addressed on a motion to dismiss. *See F.R. v. Bd. of Educ.*, 67 F. Supp. 2d 142, 145 (E.D.N.Y. 1999).

### B. *Analysis*

The TCPA, among other things, makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission . . . ." 47 U.S.C. § 227(b)(1)(B).

The instant motion turns on what qualifies as a "residential" telephone line under § 227(b)(1)(B). Defendants contend that if a telephone number is held out by the subscriber to the public as a number used for the subscriber's business, it should not qualify as a residential telephone line for the purposes of this subsection of the TCPA. Under this theory, Defendants [*4] argue that the complaint fails to state a claim under § 227(b)(1)(B) because the line at issue was held out by Bank to the public as his business telephone number. Thus, according to Defendants, the telephone number cannot be considered "residential" and is not covered by the prohibitions of § 227(b)(1)(B).

Bank, on the other hand, contends that whether a telephone line is considered "residential" for the purposes of § 227(b)(1)(B) should be determined based on whether the line is registered with the telephone company as a residential line. Under his theory, how the subscriber uses the line and whether they hold out the line to the public as a business number is of no import.

"Congress's stated purpose in enacting the TCPA was to 'protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile (fax) machines and automatic dialers.'" *Bonime v. Avaya, Inc.*, 547 F.3d 497, 499 (2d Cir. 2008) (quoting S. Rep. No. 102-178, at 1 (1991)). The distinction between residential telephone subscribers and other subscribers is central to the TCPA's

regulatory framework. Residential subscribers receive the lion's share of the protections [*5] afforded by the TCPA based on the higher expectation of privacy in the home as compared to the workplace.[1] *See, e.g., United States v. Navas*, 597 F.3d 492, 501 (2d Cir. 2010) (noting the "elevated privacy expectations" in a residence in the Fourth Amendment context); *United States v. Seinfeld*, 632 F. Supp. 622, 626 (1986) ("There is a lesser expectation of privacy in a business as compared to a home.").

While "residential telephone lines" are singled out for special treatment throughout many sections of the TCPA, neither the statute nor the enacting regulations provide a definition for the phrase, and the plain language of the statute is not helpful in arriving at a definition. *See In re Caldor Corp.*, 303 F.3d 161, 167 (2d Cir. 2002) ("Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S. Ct. 843, 136 L. Ed. 2d 808 (1997)). When the plain language of a statute does not clearly express Congressional [*6] intent, a court should interpret the provision looking towards Congress's general purpose in enacting the legislation. *See*

*Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. N.Y. Shipping Ass'n, Inc.*, 965 F.2d 1224, 1237 (2d Cir. 1992) ("[I]n all matters of statutory interpretation, we are ultimately looking for the intent of congress . . . .") (citation omitted).

Bank argues that a bright line rule should be utilized to determine whether a particular telephone line is considered residential or business under the TCPA. The test that he suggests is based entirely on how the telephone line is registered with the company: if it is registered as a residential line, it is residential, no matter how the line is actually used by the subscriber. *See* Pl. Opp. 8-11, May 23, 2014, ECF No. 35. In support of this position, he cites a case decided by the intermediate state court in Missouri, *Margulis v. Fairfield Resorts, Inc.*, No. 03AC-008703, 2004 TCPA Rep. 1292 (Mo. Ct. App. 2004). In *Margulis*, the court concluded that basing the characterization of a phone line as residential if it is registered with the telephone company as such "is a reasonable bright line test and consistent with the plain language of the statute." *Id.* at 3.

---

[1] The legislative history of the TCPA confirms this view. *See* 137 Cong. Rec. S16204-01 (Nov. 7, 1991) (statement of Sen. Hollings) ("The Supreme Court has generally recognized that persons at work do not have the same level of privacy protection as afforded to persons in their homes. Thus the legality of a ban on unwanted computerized telephone calls to the workplace is uncertain.").

I agree that whether a telephone line [*7] is registered with the telephone company as "residential" is a good starting point for the inquiry into whether the line qualifies as "residential" under the TCPA. If a line is so designated, that fact will likely end the inquiry in most instances. However, if the subscriber holds out such a telephone number to the general public as a business line, the line should not be considered "residential" for the purposes of the TCPA even if it is registered as "residential" with the telephone company. This more nuanced approach to the phrase "residential telephone line" better comports with Congress's intent in enacting the TCPA and with common sense.

As noted above, the TCPA provides considerably less protection for business telephone lines than for residential lines.[2] Section 227(b)(2)(A) directs the Federal Communications Commission (the "FCC" or "Commission") to "consider prescribing regulations to allow businesses to avoid receiving calls made using an artificial or prerecorded voice to which they have not given their prior express consent." 47 U.S.C. § 227(b)(2)(A). The FCC, however, has not extended any further protections to businesses under the TCPA. *See* Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 7 FCC Rcd. 8752, 8756 n.7 (Oct. 16, 1992) [*8] ("Based on the record and on the scope of the prohibitions on autodialers and prerecorded messages in the rules we adopt today, we are not persuaded that additional prohibitions on prerecorded voice message calls to businesses are necessary at this time."); Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 23 FCC Rcd. 9779, 9785 (June 17, 2008) ("As the Commission has previously stated, the National Do-Not-Call Registry applies to 'residential subscribers' and does not preclude calls to businesses."); *Cellco P'ship v. Dealers Warranty, LLC*, No. 09-cv-1814(FLW), 2010 U.S. Dist. LEXIS 106719, 2010 WL 3946713, at *11 (D.N.J. Oct. 5, 2010) (noting that the FCC has refused to adopted additional prohibitions on prerecorded or artificial voice calls to businesses under the TCPA).

Under Bank's proposed framework, businesses that utilize artificial or prerecorded voice calls to communicate with other businesses would find it difficult to comply with the TCPA. Such businesses should be able to gather numbers from public directories or websites [*9] that list business telephone numbers (such as the Yellow Pages) under the assumption

that such lines are not residential. A telephone subscriber who registers a line with the telephone company as a residential line but then lists the number in the Yellow Pages and other directories as a business line sacrifices the protections afforded by the TCPA.

Defendants claim that the number involved in this case has been held out to the public by Bank to be the business number of his law firm. They argue that Bank lists the phone number on his professional letterhead, on the signature block in court documents, and on other publicly available resources on the Internet. Def. Br. 2-3, May 23, 2014, ECF No. 34. If Defendants are correct about the ways in which Bank has advertised this number, it would not qualify as residential under the TCPA. But the complaint does not allege the number at issue and this is a motion to dismiss. Whether Bank's phone number is used for Bank's business and thus falls outside the protections of the TCPA cannot be resolved without some limited discovery. The issue may then be susceptible to resolution on a motion for summary judgment.

CONCLUSION

For the reasons set forth [*10] above, Defendants' motion is denied, and limited discovery will be allowed to determine whether the phone line that is the subject of this litigation is in fact a residential line for the purposes of § 227(b)(1)(B).

So ordered.

John Gleeson, U.S.D.J.

Dated: October 2, 2014

Brooklyn, New York

**End of Document**

---

[2] For example, the only protection that business telephone lines receive under § 227 is a prohibition on the use of "an automatic telephone dialing system in such a way that two or more telephone lines of a multi-line business are engaged simultaneously." 47 U.S.C. § 227(b)(1)(D).



# Bank v. Independence Energy Grp. LLC

United States District Court for the Eastern District of New York

July 23, 2015, Decided; July 23, 2015, Filed

12-CV-1369 (JG)(VMS)

**Reporter**

2015 U.S. Dist. LEXIS 96532 *; 2015 WL 4488070

TODD C. BANK, Plaintiff, - versus - INDEPENDENCE ENERGY GROUP LLC and INDEPENDENT ENERGY ALLIANCE LLC, Defendants.

**Prior History:** Bank v. Independence Energy Group LLC, 2013 U.S. Dist. LEXIS 39602 (E.D.N.Y., Mar. 12, 2013)

**Counsel:** [*1] Todd C. Bank, Plaintiff, Pro se, Kew Gardens, NY.

For Defendants: DUANE MORRIS LLP, Dana B. Klinges, Kevin P. Potere, New York, NY.

**Judges:** John Gleeson, United States District Court.

**Opinion by:** John Gleeson

## Opinion

### MEMORANDUM AND ORDER

JOHN GLEESON, United States District Judge:

Todd Bank, proceeding *pro se*, brings this purported class action alleging that the defendants violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(B), by calling his residential telephone line without his consent using an artificial or prerecorded voice that delivered a message advertising goods or services. On October 2, 2014, I denied defendants' motion to dismiss because I found I did not have enough information to decide whether Bank's telephone line was a business or residential line for purposes of the TCPA. *See Bank v. Independence Energy Grp. LLC*, No. 12-CV-1369, 2014 U.S. Dist. LEXIS 141141, 2014 WL 4954618 (JG), at *1 (E.D.N.Y. Oct. 2, 2014) (ECF No. 37) (the "October 2 Opinion"). Now that the parties have conducted discovery on the topic, the defendants have moved for summary judgment on that issue and on the

ground that their offer of judgment mooted Bank's claim. For the reasons stated below, the defendants' motion for summary judgment is granted.

### BACKGROUND

I assume familiarity with my October 2 Opinion denying the defendants' motion to dismiss. What follows [*2] is a summary of the facts relevant to the issue of whether Bank's telephone line is residential. Unless otherwise noted, the facts set forth here are either undisputed, or, if disputed, are viewed in the light most favorable to Bank, the nonmoving party. *See Abramson v. Pataki, 278 F.3d 93, 101 (2d Cir. 2002)*.

Bank is an attorney practicing in Kew Gardens, New York. On January 17, 2012, Bank received a pre-recorded voice message on (718) 520-7125 (the "Subject Telephone"). Def. Rule 56.1 Stmt ¶ 3. Bank had previously registered the Subject Telephone with his service provider as a residential line. Pl. Rule 56.1 Stmt at ¶ 3. The pre-recorded voice message was delivered by an individual with whom the defendants had contracted to promote the retail electricity provided by Independence Energy. Pl. Rule 56.1 Stmt ¶ 5; *see also* Bank Decl. ¶ 5, Ex. C (Stark Dep.) at 31:17-32:11. The defendants assert that the call was made by individuals who "were not under contract or agreement with Defendants nor were they in any way otherwise employed by or agents of Defendants." Def. Rule 56.1 Stmt. ¶¶ 4-5.

Bank used the number for the Subject Telephone as his law office telephone number in pleadings and court filings, in professional correspondence, on his business card, and on his attorney [*3] registration form with the New York State Unified Court System. Def. Rule 56.1 Stmt ¶¶ 7-10. Bank also lists that number on tax returns for his law practice. *See id.* ¶ 12. Finally, the Subject Telephone has been listed on Avvo, a directory of attorneys, as Bank's contact number. *Id.* ¶ 16. Bank does not deny that he has used the Subject Telephone in these ways. *See* Pl. Rule 56.1 Stmt; *see also*

2015 U.S. Dist. LEXIS 96532, *3

Bank Decl. ¶ 3 ("Prior to, at the time of, and since the time of my receipt of Defendants' prerecorded telephone call . . . I have used the [Subject Telephone] for both personal and business purposes.").

DISCUSSION

A. *The Standard of Review*

A court may grant summary judgment if the moving party shows that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for these purposes when it 'might affect the outcome of the suit under the governing law.'" *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson*, 477 U.S. at 248).

In order to "[t]o survive summary judgment . . . the non-moving party must come forward with 'specific facts showing that there is a genuine issue [*4] for trial.'" *Reiseck v. Universal Commc'ns of Miami*, No. 06-CV-777 (TPG), 2012 U.S. Dist. LEXIS 120856, 2012 WL 3642375, at *2 (S.D.N.Y. Aug. 23, 2012) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), and the "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment. *Anderson*, 477 U.S. at 252. Conversely, summary judgment is appropriate if the evidence produced would not allow a reasonable juror to find in favor of the nonmoving party. *See Mitchell v. Shane*, 350 F.3d 39, 47 (2d Cir. 2003).

B. *Whether the Subject Telephone is "Residential"*

In my October 2 Opinion, I denied the defendants' motion to dismiss because "I [did] not have sufficient evidence before me to determine whether the line at issue is 'residential' for purposes of § 227(b)(1)(B)." *Bank*, 2014 U.S. Dist. LEXIS 141141, 2014 WL 4954618, at *1. I wrote that while a telephone subscriber can have a telephone number registered as "residential" with the telephone company, "if the subscriber holds out such a telephone number to the general public as a business line, the line should not be considered 'residential' for the purposes of the TCPA—even if it is registered as 'residential' with the telephone company." 2014 U.S. Dist. LEXIS 141141, [WL] at *3.

As detailed above, the defendants have presented ample evidence that Bank held out the Subject Telephone to the public as a business line. Specifically, Bank provides the Subject Telephone number [*5] on his business card, professional letterhead for his law practice, and in pleadings and court filings, and he provides it to clients, prospective clients, other attorneys, and business contacts. He also maintains his attorney registration through the New York Unified Court System utilizing the Subject Telephone number as his contact number.

I conclude based on the evidence in the record that no reasonable juror could find that the Subject Telephone is residential, and for the reasons stated in my October 2 Opinion, summary judgment is appropriate. *See Bank*, 2014 U.S. Dist. LEXIS 141141, 2014 WL 4954618, at *2-3.[1]

CONCLUSION

For the reasons set forth above, defendants' motion is granted, and the case is dismissed.

So ordered.

John Gleeson, U.S.D.J.

Dated: July 23, 2015

Brooklyn, New York

---

[1] I need not consider the defendants' additional argument in support of their motion.



# Ewing v. SQM US, Inc.

United States District Court for the Southern District of California

September 29, 2016, Decided; September 29, 2016, Filed

Case No.: 3:16-CV-1609-CAB-JLB

**Reporter**

2016 U.S. Dist. LEXIS 143272 *

ANTON EWING, Plaintiff, v. SQM US, INC. et al., Defendants.

**Counsel:** [*1] For Anton Ewing, Individually and on Behalf Of All Others Similarly Situated, Plaintiff: Dante T. Pride, LEAD ATTORNEY, The Pride Law Firm, San Diego, CA.

For SQM US, Inc., an Idaho Corporation, Defendant: Christine M Reilly, LEAD ATTORNEY, Manatt Phelps & Phillips, LLP, Los Angeles, CA.

For Blue Shield of California Life & Health Insurance Company, a California Corporation, Defendant: Chad R Fuller, LEAD ATTORNEY, Troutman Sanders LLP, San Diego, CA; Virginia B. Flynn, LEAD ATTORNEY, PRO HAC VICE, Troutman Sanders LLP, Richmond, VA.

**Judges:** Hon. Cathy Ann Bencivengo, United States District Judge.

**Opinion by:** Cathy Ann Bencivengo

# Opinion

### ORDER GRANTING MOTION TO DISMISS

[Doc. No. 14]

This matter is before the Court on Defendants' motion to dismiss for lack of standing. The motion has been fully briefed and the Court deems it suitable for submission without oral argument. For the following reasons, the motion is granted and the first amended complaint ("FAC") is dismissed with prejudice.

### I. Allegations in the Complaint

The factual allegations in the FAC are straightforward. On October 21, 2015, Defendants allegedly called Plaintiff's cellular telephone one time using an automatic telephone dialing system ("ATDS"). [Doc. [*2] No. 8 at ¶¶ 15-18.] The telephone number that Defendants allegedly called was "assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. § 227(b)(1)." [*Id.* at ¶ 19.] Plaintiff alleges that he did not provide his cellular telephone number to Defendants or give them permission to call his cellular telephone. [*Id.* at ¶ 21.]

Based on this single alleged telephone call, Plaintiff asserts claims for negligent and willful violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Plaintiff also seeks to represent a class consisting of others who received telephone calls made with an ATDS to their cellular telephones without their consent within the four years prior to the filing of the complaint.

### II. Legal Standard

Defendants bring their motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Defendants state they are making a facial attack, meaning they assert "that the allegations contained in [the FAC] are insufficient on their face to invoke federal jurisdiction." *Id.* "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations [*3] as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

### III. Discussion

Defendants argue that Plaintiff lacks standing to sue because he has not suffered a concrete injury caused by the alleged

2016 U.S. Dist. LEXIS 143272, *3

TCPA violation. The standing to sue doctrine is derived from Article III of the Constitution's limitation of the judicial power of federal courts to "actual cases or controversies." *Spokeo v. Robins*, 136 S.Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016) (citing *Raines v. Byrd*, 521 U.S. 811, 818, 117 S. Ct. 2312, 138 L. Ed. 2d 849 (1997)). "The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.* "[T]he 'irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). This case primarily concerns the first element.

The first element, injury in fact, "is a constitutional requirement, and 'it is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have [*4] standing.'" *Spokeo*, 136 S.Ct. at 1547-48 (quoting *Raines*, 521 U.S. at 820, n.3). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). "'For an injury to be "particularized," it 'must affect the plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan*, 504 U.S. at 560, n.1). Meanwhile, "[a] 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.* (citing Black's Law Dictionary 479 (9th ed. 2009)). Therefore, a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 1549. A "bare procedural violation, divorced from any concrete harm," does not satisfy the injury-in-fact requirement of Article III. *Id.*

"The party invoking federal jurisdiction bears the burden of establishing these elements. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any [*5] other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561 (internal citations omitted). Here, because Defendants make only a facial attack on standing in connection with their motion to dismiss, the Court only considers whether, assuming the truth of the allegations in the FAC, Plaintiff has Article III standing.[1]

The only allegation in the FAC that arguably relates to any injury to Plaintiff is the claim that the cellular telephone Defendants' called is "assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls." This phrasing mimics the language of the TCPA, which makes it unlawful to make a call using an ATDS "to any telephone number assigned to a . . . cellular telephone service . . . for which the called [*6] party is charged for the call . . . ." 47 U.S.C. § 227(b)(1)(A)(iii). For the purposes of this motion, the Court assumes that Plaintiff is alleging that he actually incurred a specific charge for Defendants' call to his cellular telephone.

Even with this assumption, the FAC does not adequately allege standing because it does not, and cannot, connect this claimed charge with the alleged TCPA violation—Defendants' use of an ATDS to dial his cellular telephone number. Put differently, Plaintiff does not, and cannot, allege that Defendants' use of an ATDS to dial his number caused him to incur a charge that he would not have incurred had Defendants manually dialed his number, which would not have violated the TCPA. Therefore, Plaintiff did not suffer an injury in fact traceable to Defendants' violation of the TCPA and lacks standing to make a claim for the TCPA violation here.

Notably, in his opposition brief, Plaintiff does not even argue that the alleged charge he incurred as a result of the call was a sufficient injury in fact to establish standing. Instead, Plaintiff's only arguments supporting the existence of standing are premised on purported injuries or harm that are not alleged in the FAC. Specifically, Plaintiff [*7] argues that he "sustained injury when he had to waste time answering and addressing the robo-call," and that he was injured insofar as the call depleted his phone's battery, requiring him to recharge it.[2] [Doc. No. 19 at 14-15.]

Even if the Court were to grant Plaintiff leave to amend to include these purported injuries that were not alleged in the FAC, Plaintiff would not overcome a facial attack on

---

[1] Despite framing their motion as a facial attack, Defendants make several arguments based on the context of and reason for the telephone call constituting the TCPA violation, and about Plaintiff's litigious nature. None of these arguments are based on allegations in the FAC, so the Court did not consider them in arriving at its decision here.

[2] The FAC's allegation that it "expressly is not intended to request any recovery for personal injury and claims related thereto" [Doc. No. 8 at ¶ 27] effectively disclaims these injuries that Plaintiff now argues support standing in opposition to the instant motion.

standing. As with the charge Plaintiff allegedly incurred because of the call, these injuries are not connected to Defendants' alleged use of an ATDS to dial his number. "A plaintiff who would have been no better off had the defendant refrained from the unlawful acts of which the plaintiff is complaining does not have standing under Article III of the Constitution to challenge those acts in a suit in federal court." *McNamara v. City of Chicago*, 138 F.3d 1219, 1221 (7th Cir. 1998). Here, Mr. Ewing would have been no better off had Defendants dialed his number manually (in which case they would have refrained from violating [*8] the TCPA). He would have had to expend the same amount of time answering and addressing Defendants' manually dialed telephone call and would have incurred the same amount of battery depletion. Further, that the use of an ATDS may have allowed Defendants to place a greater number of calls more efficiently did not cause any harm to Plaintiff. *See Silha v. ACT, Inc.*, 807 F.3d 169, 174-75 (7th Cir. 2015) ("[A] plaintiff's claim of injury in fact cannot be based solely on a defendant's gain; it must be based on a plaintiff's loss.").

In sum, to use the language from *Spokeo*, Plaintiff's alleged concrete harm (and the harm he argued in his opposition but did not allege in the FAC) was divorced from the alleged violation of the TCPA. *See Spokeo*, 136 S.Ct. at 1549 (holding that "a bare procedural violation, divorced from any concrete harm, [does not] satisfy the injury-in-fact requirement of Article III"). Accordingly, Plaintiff has not and cannot satisfy the standing to sue requirements of Article III.

## IV. Conclusion

For the foregoing reasons, Plaintiff has not alleged, and cannot plausibly allege, a concrete injury traceable to Defendants' alleged use of an ATDS to call his cellular telephone in violation of the TCPA. Defendants' motion to dismiss is therefore **GRANTED** for [*9] lack of standing, and the first amended complaint is **DISMISSED WITH PREJUDICE**.[3]

It is **SO ORDERED**.

Dated: September 29, 2016

/s/ Cathy Ann Bencivengo

Hon. Cathy Ann Bencivengo

United States District Judge

---

[3] In light of this decision, Defendants' motion to strike [Doc. No. 13] is **DENIED AS MOOT**.

**End of Document**



# Gold Seal Termite & Pest Control Co. v. DirecTV, Inc.

United States District Court for the Southern District of Indiana, Indianapolis Division

June 10, 2003, Decided

1:03-cv-00367-LJM-WTL

**Reporter**

2003 U.S. Dist. LEXIS 11205 *; 2003 WL 21508177

GOLD SEAL TERMITE & PEST CONTROL COMPANY, on behalf of itself and all others similarly situated, Plaintiffs, vs. DIRECTV, INC., Defendant.

**Notice:** [*1] NOT INTENDED FOR PUBLICATION IN PRINT

**Disposition:** Plaintiffs' motion to remand granted. Cause remanded. Plaintiffs awarded fees and costs incurred as a result of removal.

## Case Summary

### Procedural Posture

After defendant corporation removed a case to a federal trial court, plaintiff class filed a motion to remand its case, brought pursuant to the Telephone Consumer Protection Act, 47 U.S.C.S. § 227, for allegedly sending unsolicited facsimile transmissions, to an Indiana state trial court. The corporation responded by filing a motion to deny the class' motion to remand and to certify.

### Overview

The class filed an action in state court, pursuant to the Telephone Consumer Protection Act, 47 U.S.C.S. § 227 (Act), after allegedly receiving unsolicited facsimile transmissions. It filed its action in state court because the Act provided for a private right of action pursuant to 47 U.S.C.S. § 227(b)(3) to be filed in an appropriate state court. The corporation removed the case to the federal court. The class then filed a motion to remand. The corporation moved to deny that motion. After considering the pleadings, the federal trial court found the motion to remand had to be granted. It so concluded because it found that even though the provision under which the class was suing was part of a federal law, the United States Congress expressly stated its intention that the private right of action be brought in an appropriate state court. It also noted that the United States Congress did not provide for concurrent jurisdiction with the federal court as it did in other parts of the Act. Finally, it found the corporation had not shown that federal diversity jurisdiction applied because it had not shown that the amount in controversy exceeded the statutory minimum of $ 75,000.

### Outcome

The motion to remand filed by the class was granted, and, thus, the corporation's motion to deny the motion to remand and motion to certify the question of jurisdiction was denied. The cause was ordered to be remanded to the proper state trial court and the attorney fees and costs incurred as a result of removal was awarded to the class.

**Counsel:** For Gold Seal Termite and Pest Control Company, on Behalf of Itself and All Others Similarly Situated, PLAINTIFF: David J Cutshaw, Cohen and Malad, Indianapolis, IN USA. Eric S Pavlack, Cohen and Malad, LLP, Indianapolis, IN USA. Irwin B Levin, Cohen and Malad, Indianapolis, IN USA. Scott D Gilchrist, Cohen and Malad, Indianapolis, IN USA.

For Directv, Inc, DEFENDANT: Carl A Hayes, McTurnan & Turner, Indianapolis, IN USA. Wayne C Turner, McTurnan & Turner, Indianapolis, IN USA.

**Judges:** LARRY J. McKINNEY, CHIEF JUDGE, United States District Court, Southern District of Indiana.

**Opinion by:** LARRY J. McKINNEY

## Opinion

### ORDER ON PLAINTIFFS' MOTION TO REMAND & DEFENDANT'S MOTION TO DENY & CERTIFY

This cause is now before the Court on the plaintiffs', Gold Seal Termite & Pest Control Company, on behalf of itself and all others similarly situated ("Gold Seal"), motion to remand this suit to the Marion County Superior Court. Defendant, DirecTV, Inc. ("DirecTV"), moved for a denial of Gold Seal's motion and also moved to have the Court certify the question of jurisdiction to the Seventh Circuit for interlocutory determination.

Both parties' motions have been fully briefed and the Court has been duly advised. For the reasons discussed herein, Gold Seal's motion to remand is **GRANTED**. Correspondingly, [*2] DirecTV's motion to deny the plaintiffs' motion to remand and to certify is **DENIED**.

## I. BACKGROUND

In this action, Gold Seal seeks to hold DirecTV liable for alleged unsolicited facsimile transmissions that occurred on March 8, 2001, pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(C). Section 227(b)(3) provides a private right of action under the TCPA. It states:

> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State - -
>
> (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>
> (B) an action to recover for actual monetary loss from such a violation, or to receive $ 500 in damages for each such violation, whichever is greater, or
>
> (C) both such actions.

47 U.S.C. § 227(b)(3).

Gold Seal asserts that remand is appropriate in this case because § 227(b)(3) gives exclusive jurisdiction to State courts for private suits under the TCPA. Gold Seal supports this assertion with six Courts of Appeals holdings. *See Murphey v. Lanier,* 204 F.3d 911, 915 (9th Cir. 2000); [*3] *ErieNet, Inc. v. Velocity Net, Inc.,* 156 F.3d 513, 520 (3rd Cir. 1998); *Foxhall Realty Law Offices, Inc. v. Telecom. Premium Servs., Ltd.,* 156 F.3d 432 at 438 (2d cir. 1998); *Nicholson v. Hooters of Augusta, Inc.,* 136 F.3d 1287 at 1289, *modified,* 140 F.3d 898 (11th Cir. 1998); *Chair King, Inc. v. Houston Cellular Corp.,* 131 F.3d 507, 514 (5th Cir. 1997); *Int'l Sci. & Tech. Inst., Inc. v. Inacom Comm., Inc.,* 106 F.3d 1146 (4th Cir. 1997). In addition, Gold Seal points to an unpublished decision by this Court that concludes that the Court must "acknowledge the surging tide and the near-deafening roar of these appellate decisions on this issue and yield to their shared wisdom and distilled judgment." *Cohen & Malad, P.C. v.*

*USMoney Source, Inc.,* No. IP00-1547-C-B/S, Order Granting Pl.'s Mot. to Remand. The U.S. District Court for the Southern District of Indiana opinion in *Cohen & Malad* came after a more thorough decision that found in favor of jurisdiction even in light of the Fourth Circuit's decision in *Int'l Sci. & Tech. Inst., Inc. v. Inacom Commun., Inc.,* [*4] *Kenro, Inc. v. Fax Daily, Inc.,* 904 F. Supp. 912 (S.D. Ind. 1995).

In the alternative, Gold Seal asserts that diversity jurisdiction in this case is inappropriate because the amount in controversy does not exceed the $ 75,000.00 jurisdictional minimum. Specifically, Gold Seal argues that class notification costs cannot be included in a judgment in this case because the TCPA does not authorize the award of fees. *Id.* Moreover, Gold Seal argues that costs of notification, like attorneys fees, are yet-to-be incurred expenses that are not "in controversy" at the time of removal. *Id.* at 13 (citing *Hart v. Schering-Plough Corp.,* 253 F.3d 272, 274 (7th Cir. 2001)). Finally, Gold Seal argues that an award of notification costs, like an award of attorneys' fees, in this case would be subject to the "common fund" doctrine and borne by the class plaintiffs on a *pro rata* basis. *Id.* at 15 (citing *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478, 62 L. Ed. 2d 676, 100 S. Ct. 745 (1980)).

DirecTV asserts that jurisdiction in this Court is appropriate for two independent reasons. First, pursuant to 28 U.S.C. § 1331, this Court [*5] has jurisdiction over claims arising under federal law or involving the interpretation of federal law. DirecTV argues that Gold Seal's claims arise under federal law because the TCPA is a federal statute and the language of § 227(b)(3) is permissive rather than exclusive. Def.'s Br. in Opp'n, at 2 (citing *Am. Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 260, 60 L. Ed. 987, 36 S. Ct. 585 (1916)). *See also Breuer v. Jim's Concrete of Brevard, Inc.,* 155 L. Ed. 2d 923, 123 S. Ct. 1882, 1884-85 (2003). Therefore, this Court has federal subject matter jurisdiction over the suit because there is no express prohibition for such jurisdiction in the statute.

Second, DirecTV argues that this Court has diversity jurisdiction over the suit because the parties are citizens of different states, and Gold Seal seeks class action certification of this suit and seeks to hold DirecTV responsible for the cost of class notification, the cost of which would exceed the $ 75,000.00 jurisdictional minimum. Def.'s Br. in Opp'n, at 3. DirecTV asserts that the cost of class notice in a class action is an item that should be attributed to the named plaintiff alone, not [*6] allocated *pro rata* among the class as a whole. *Id.; id.* at 28 (citing *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 356, 57 L. Ed. 2d 253, 98 S. Ct. 2380 (1978); *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 179, 40 L. Ed. 2d 732,

94 S. Ct. 2140 (1974)). Gold Seal has asserted that there are potentially 8.5 million class members, mail notification of which would exceed $ 3 million. *Id.* at 25-26. Therefore, the amount in controversy well exceeds the $ 75,000.00 threshold.

## II. STANDARD

A federal court may remove to its jurisdiction a civil suit filed in state court so long as the district court has original jurisdiction. *See Doe v. Allied-Signal, Inc.,* 985 F.2d 908, 911 (7th Cir. 1993) (citing 28 U.S.C. § 1441). Courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum. *Id.* (citing *Illinois v. Kerr-McGee Chem. Corp.,* 677 F.2d 571, 576 (7th Cir.), *cert. denied,* 459 U.S. 1049, 74 L. Ed. 2d 618, 103 S. Ct. 469 (1982)). Any doubt regarding jurisdiction should be resolved in favor of the states. [*7] *Id.* (citing *Jones v. Gen. Tire & Rubber Co.,* 541 F.2d 660, 664 (7th Cir. 1976). The party seeking removal bears the burden of establishing federal jurisdiction. *Id.* (citing *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 66 L. Ed. 144, 42 S. Ct. 35 (1921)). With respect to the amount in controversy requirement for diversity jurisdiction, it is not enough to point to a possibility that a plaintiff's claim could reach $ 75,000. *In re Brand Name Prescription Drugs Antitrust Litig.,* 123 F.3d 599, 607 (7th Cir. 1997). Rather, the evidence must establish at least a "reasonable probability" that the amount in controversy requirement is satisfied. *NLFC v. Devcom Mid-Am., Inc.,* 45 F.3d 231, 237 (7th Cir.1995); *King v. Wal-Mart Stores, Inc.,* 940 F. Supp. 213, 216 (S.D.Ind.1996); *Reason v. GMC,* 896 F. Supp. 829, 834 (S.D.Ind.1995).

## III. DISCUSSION

### A. FEDERAL JURISDICTION

The Court finds that DirecTV's attempt to create a jurisdictional split among the Circuit Courts of Appeal by obtaining a ruling from this Court that finds federal jurisdiction over private [*8] rights of action brought under the TCPA fails. DirecTV's primary argument is that because a federal statute creates the cause of action, the Court must presume that it has jurisdiction. But, as so clearly pointed out by the Fourth Circuit, such a presumption is ill-founded. *See Int'l Sci. & Tech. Inst.,* 106 F.3d at 1151. Federal courts have limited jurisdiction. *See id.* Therefore, unless jurisdiction is found through a statute, this Court may not exercise jurisdiction over the matter. It is true that 28 U.S.C. § 1331 grants federal courts jurisdiction over claims "arising under the Constitution, laws or treaties of the United States." However, the grant of jurisdiction described by § 1331 is narrower than that of the similarly worded grant of power by

the Constitution. *See Verlinden B.V. v. Cent. Bank of Nigeria,* 461 U.S. 480, 495, 76 L. Ed. 2d 81, 103 S. Ct. 1962 (1983). Federal-question jurisdiction necessarily depends upon an act of Congress and the corresponding intent of Congress for jurisdiction expressed by statute. *See Int'l Sci. & Tech. Inst.,* 106 F.3d at 1153-54.

In the case of the TCPA, Congress [*9] did express its intent to create jurisdiction for private rights of action--in State courts. It is clear from a comparison of 47 U.S.C. § 227(b)(3) to another section of the TCPA that Congress did not mean to imply jurisdiction in federal courts under § 227(b)(3). *Compare* 47 U.S.C. § 227(b)(3) *with* 47 U.S.C. § 227(f)(2) ("the district courts of the United States … shall have exclusive jurisdiction over all civil actions brought under this subsection"). Where Congress meant to grant jurisdiction in federal courts under the TCPA it did so explicitly. *See* 47 U.S.C. § 227(f)(2). Moreover, as pointed out by the Fourth Circuit in *International Science & Technology Institute,* in the rest of the Communications Act (which the TCPA amended), Congress explicitly provided for concurrent jurisdiction when it so intended. 106 F.3d at 1152 (citing 47 U.S.C. §§ 214(c), 407, 415(f), 553(c)(1), 555(a), 605(e)(3)(A)). *See also Foxhall Realty Law Offices,* 156 F.3d at 436 (agreeing with the Fourth Circuit that Congress' explicit grant of concurrent [*10] jurisdiction in other parts of the Communications Act evidences Congress' intent to limit jurisdiction to State courts pursuant to 47 U.S.C. § 227(b)(3)). Therefore, reading the entire Communications Act as a whole, the absence of an explicit grant of concurrent jurisdiction in 47 U.S.C. § 227(b)(3) implies that Congress did not intend for federal courts to hear private rights of action under the TCPA.

The Supreme Court's recent holding in *Breuer v. Jim's Concrete of Brevard, Inc.,* 155 L. Ed. 2d 923, 123 S. Ct. 1882 (2003), does not change this analysis. In *Breuer,* a former employee sued his former employer in a Florida state court for alleged violation of the Fair Labor Standards Act of 1938 ("FLSA"). The employer removed the suit to federal court pursuant to 28 U.S.C. § 1441(a). *123 S. Ct.* at 1883. The employee moved to remand the case to Florida State court arguing that the FLSA's provision that an action "may be maintained" in state court was an express exception to the general authorization of removal under 28 U.S.C. § 1441(a). The district court denied the employee's [*11] motion and the Eleventh Circuit affirmed.

The Supreme Court held that removal was proper. The Court reasoned that the FLSA provided that an action "may be maintained … in any Federal or State court of competent jurisdiction." 29 U.S.C. § 216(c). Therefore, pursuant to 28 U.S.C. § 1331, district courts would have original jurisdiction over FLSA claims because they arise under the laws of the

United States. Removal would be improper only if Congress expressly prohibited such removal. *Breuer,* 123 S. Ct. at 1884. Finding no such prohibition in the FLSA or other statute referencing the FLSA, the Supreme Court concluded that removal was proper. *Id.* at 1886-87.

DirecTV's reliance upon *Breuer* is misplaced because unlike in that case where the FLSA's jurisdictional provision expressly provided that federal courts may hear such actions, the similar provision of the TCPA has no similar express grant of federal jurisdiction. Therefore, the analysis in this case would not follow that of *Breuer* unless first there was a finding of implied federal court jurisdiction. As discussed above, there is no reason to find such [*12] implied jurisdiction.

For these reasons, the Court finds that it lacks federal subject matter jurisdiction over Gold Seal's claim under the TCPA. However, DirecTV's removal of the case may still have been proper if diversity jurisdiction lies.

## B. DIVERSITY JURISDICTION

Diversity jurisdiction exists if the parties are residents of different states and the amount in controversy exceeds $ 75,000.00. 28 U.S.C. § 1332. In a class action suit, at least one plaintiff must meet the jurisdictional amount in controversy requirement. *See In re Brand Name Prescription Drugs Antitrust Litig.,* 123 F.3d 599, 607 (7th Cir.1997), *reh'g denied.* If so, the Court has supplemental jurisdiction over the claims of the other putative class members pursuant to 28 U.S.C. § 1367. *See id.*

In this case, the TCPA provides that private citizens may bring an action either to enjoin violation of the Act or to recover damages in an amount up to $ 1,500.00. 47 U.S.C. § 227(b)(3). There is no provision that provides for shifting of attorneys' fees or costs. But, DirecTV argues that because in its settlement demand [*13] Gold Seal requested that DirecTV pay for notice to putative class members, the Court should attribute the approximate cost of such notice to the named plaintiff for purposes of determining diversity jurisdiction. Def.'s Br. in Opp'n, at 28 (citing *Eisen,* 417 U.S. at 179; *Oppenheimer Fund,* 437 U.S. at 356; *accord In re Mexico Money Transfer Litig.,* 267 F.3d 743, 746 (7th Cir. 2001)).

The Court is not convinced that this approach is proper. It is true that the Supreme Court in *Eisen* espoused the "usual rule … that a plaintiff must initially bear the cost of notice to the class." 417 U.S. at 178. In fact, because the plaintiff in *Eisen* was unwilling to bear the cost of notice to the class as defined in his original complaint, the Supreme Court "remanded the cause with instructions to dismiss the class action as so

defined." *Id.* at 179. However, *Eisen* speaks to who bears the cost up front; it does not speak to the issue of whether the cost of notice is eventually apportioned among the members of the class. Moreover, *Eisen* does not sanction the assignment of the cost of notice as a liability [*14] of the defendant.

Even if the Court were to consider the cost of notice a liability of the defendant, DirecTV's argument fails. In cases that look at the potential liability of the defendant to determine the amount in controversy, usually in the context of injunctive relief, the courts first determine whether the relief sought by the plaintiff "would require some alteration in the defendant's method of doing business that would cost the defendant at least the statutory minimum," or whether the relief sought "would force the defendant to forgo a benefit to him that is worth more than the threshold amount …." *Brand Name Prescription Drugs Antitrust Litig.,* 123 F.3d at 609, 610, *reh'g denied* (citing *McCarty v. Amoco Pipeline Co.,* 595 F.2d 389 (7th Cir. 1979)). But, the defendant may not aggregate class members' separate claims for purposes of the jurisdictional amount. *123 F.3d* at 609. Therefore, whether the cost of notice in this case should be considered an expense attributable only to the named plaintiff seems to turn on whether the class plaintiffs are "asserting an individual right or, rather, a right to an undivided interest in something." [*15] *Id.* at 610. Here, each plaintiff would be asserting an individual right, not an undivided interest in something. Likewise, class notice, even if it is an administrative cost to be borne by DirecTV, would be apportioned to the number of plaintiffs. In other words, the cost to DirecTV increases with the addition of another potential class member, not because of a change in a right that the class has as a whole.

Moreover, the Court agrees with Gold Seal that the "common fund" doctrine would apply to any costs that Gold Seal would incur on behalf of the class. *See Boeing Co. v. Van Gemert,* 444 U.S. 472, 62 L. Ed. 2d 676, 100 S. Ct. 745 (1980). Under that doctrine, attorneys fees and other costs borne by the named plaintiff are shared *pro rata* among the class members. Here, those costs would include the cost of class notice.

Finally, a holding that allowed defendants to use the cost of notice as a method for creating diversity jurisdiction would directly conflict with the purpose of a class action. Class actions were designed to give plaintiffs with small claims the ability to aggregate resources to enforce those claims. Allowing a defendant to use the aggregated [*16] cost of class notice to support diversity jurisdiction would make superfluous the doctrine that the plaintiff may choose his forum. Moreover, such a holding would ensure that every class action filed would automatically meet the amount in controversy requirement, which is inapposite to long-established rules regarding the determination of the amount in

2003 U.S. Dist. LEXIS 11205, *16

controversy for removed class actions. Accord *Tires Prods. Liab. Litig. v. Bridgestone/Firestone, Inc.(In re Bridgestone/Firestone, Inc.),* 256 F. Supp. 2d 884, 2003 WL 1873751, *7 & n.17 (S.D. Ind. Apr. 11,2003) (discussing *Brand Name Prescription Drugs,* 123 F.3d at 608).

For the foregoing reasons, the Court finds that DirecTV has not evidenced that the amount in controversy exceeds the statutory minimum of $ 75,000.00. Therefore, this Court does not have diversity jurisdiction over this cause.

## IV. <u>CONCLUSION</u>

The Court has found that it lacks federal subject matter jurisdiction and diversity jurisdiction over this matter. Therefore, the cause was improperly removed to this Court and the plaintiffs' motion to remand is **GRANTED.** Correspondingly, the defendant's motion to deny the plaintiffs' motion to remand and to certify [*17] is **DENIED.** The cause is **REMANDED** to the Marion County, Indiana, Superior Court. The plaintiffs are awarded their fees and costs incurred as a result of removal, pursuant to 28 U.S.C. § 1447(c). The plaintiffs shall file their petition for fees and costs within fifteen days of the date of this Order; defendants shall have fifteen days to file any response.

IT IS SO ORDERED this 10th day of June, 2003.

LARRY J. McKINNEY, CHIEF JUDGE

United States District Court

Southern District of Indiana

**End of Document**



# Haley v. Hughes Network Sys., LLC

United States District Court for the Western District of New York

October 30, 2013, Decided; November 1, 2013, Filed

12-CV-1079JTC

**Reporter**

2013 U.S. Dist. LEXIS 157104 *; 2013 WL 5937007

FAITH HALEY, Plaintiff, -vs- HUGHES NETWORK SYSTEMS, LLC, d/b/a HUGHESNET, INC., Defendant.

**Counsel:** [*1] For Faith Haley, Plaintiff: Sergei Lemberg, LEAD ATTORNEY, Lemberg & Associates, LLC, Williamsville, NY.

**Judges:** JOHN T. CURTIN, United States District Judge.

**Opinion by:** JOHN T. CURTIN

# Opinion

## INTRODUCTION

On November 6, 2012, plaintiff, Faith Haley, filed a complaint alleging the violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA"). Defendant, Hughes Network, LLC, d/b/a HughesNet, Inc., failed to appear and defend this action, which resulted in the Clerk of the Court entering default on April 2, 2013. Item 7. Presently before the court is plaintiff's motion for default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. Item 11. For the following reasons, plaintiff's motion is granted.

## DISCUSSION

### 1. Default Judgment Standard

Before obtaining default judgment, a party must first secure a Clerk's Entry of Default by demonstrating, by affidavit or otherwise, that the opposing party is in default. Fed.R.Civ.P. 55(a). Once default has been entered, the allegations of the complaint that establish the defendant's liability are accepted as true, except for those relating to the amount of damages. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).

In [*2] considering whether to enter default judgment, the court must determine whether the facts alleged in the complaint are sufficient to state a claim for relief as to each cause of action for which the plaintiff seeks default judgment. Further, where the damages sought are not for a sum certain, the court must determine the propriety and amount of the default judgment. See Fed.R.Civ.P. 55(b)(2). Damages must be established by proof, unless the damages are liquidated or "susceptible of mathematical computation." *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974). All reasonable inferences from the evidence presented are drawn in the moving party's favor. See *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

### 2. Liability

As set forth in the complaint, the facts alleged are accepted as true. In approximately August 2012, defendant began placing daily telephone calls to plaintiff's cellular telephone in an attempt to locate plaintiff's daughter, Danielle Haley. Defendant contacted plaintiff's cellular telephone using an automated telephone dialer system ("ATDS") with an artificial or prerecorded voice. Plaintiff has never provided defendant with her telephone number or contact [*3] information. On many occasions, plaintiff informed defendant that it had dialed an incorrect number and requested that it cease placing calls to her. Despite this, defendant continued to place telephone calls to plaintiff. Item 1, ¶¶ 7-13.

Plaintiff alleges multiple violations of a single provision of the TCPA. Specifically, plaintiff alleges that defendant violated section 227(b)(1)(A)(iii), which makes it unlawful for

> any person within the United States, or any person outside the United States if the recipient is within the United States ... to make any call (other than a call made for emergency purposes or made with the prior express

consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call ....

47 U.S.C. § 227(b)(1)(A)(iii). "Thus, to prove that a defendant violated the TCPA in a case involving a cell phone, a plaintiff must establish that (1) the defendant called his or her cell phone, and (2) the defendant [*4] did so using an ATDS or an artificial or prerecorded voice." *Levy v. Receivables Performance Mgmt., LLC*, F.Supp.2d , 2013 U.S. Dist. LEXIS 135675, 2013 WL 5310166, *5 (E.D.N.Y. September 23, 2013). Plaintiff has sufficiently alleged the violation of section 227(b)(1)(A)(iii) of the TCPA, and liability under the statute is established.

### 3. Damages

A person or entity that successfully establishes a TCPA violation under section 227(b)(1)(A)(iii) may recover its actual monetary loss from the violation or receive $500 in damages for each such violation, whichever is greater. *See* 47 U.S.C. § 227(b)(3)(B). Moreover, if the court finds that the defendant engaged in willful or knowing violations of the TCPA, "the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B)," i.e., three times the actual monetary loss resulting from the violation or $1500 in damages for each violation, whichever is greater. *See id.* § 227(b)(3). In this case, plaintiff seeks an award of $46,500.00. This amount represents damages of $15,000.00 for the negligent violation of the TCPA on 30 occasions prior to and including September 24, 2012, and $31,500.00 [*5] for the willful violation of the TCPA on 21 occasions after September 24, 2012, when plaintiff specifically asked that defendant stop calling her cell phone.

By virtue of the entry of default, defendant is deemed to have admitted the well-pleaded allegations of the complaint, including its placing of non-emergency telephone calls to plaintiff's cellular telephone using ATSD and/or prerecorded or artificial voice technology, without plaintiff's prior consent. In support of the motion for a default judgment, plaintiff has submitted a copy of her cellular telephone log from September 24, 2012 to October 26, 2012, which indicates 20 telephone calls from defendant to plaintiff's cell phone. Item 11-4 ("Exh. A").[1] Plaintiff stated in an affidavit that, in or

around the last week of August 2012, defendant began placing daily calls to her cellular telephone. Item 11-3, ¶ 2. From the last week of August until September 24, 2012, defendant placed "as many as 30" calls to her cellular telephone. *Id.*, ¶ 12. On September 24, 2012, she advised defendant that the number it was calling was a cellular number and asked defendant to stop the calls. *Id.*, ¶ 10. Accordingly, the court finds that the violations [*6] after September 24, 2012 were willful in that defendant was advised that the number it was calling in an effort to locate plaintiff's daughter was a cellular telephone number. Accordingly, the court awards plaintiff $15,000.00 representing 30 negligent violations of the statute prior to and including September 24, 2012, and $27,000.00 representing 18 willful violations of the statute after September 24, 2012, for a total judgment of $42,000.00.

### 4. Attorneys' Fees and Costs

In the complaint, plaintiff sought attorney's fees, but abandoned the request in her motion for default judgment. Absent explicit congressional authorization, attorney's fees are generally not recoverable. *See, e.g., Key Tronic Corp. v. United States*, 511 U.S. 809, 814, 114 S. Ct. 1960, 128 L. Ed. 2d 797 (1994). The TCPA makes no provision for attorney's fees or costs. *See Klein v. Vision Lab Telecomms., Inc.*, 399 F. Supp. 2d 528, 542 (S.D.N.Y 2005); [*7] *J.C. Corp. Mgmt., Inc. v. Resource Bank*, 2005 U.S. Dist. LEXIS 33433, 2005 WL 2206086, at *4 (E.D.Mo. September 12, 2005). Accordingly, the plaintiff is not entitled to an award of attorney's fees.

### CONCLUSION

Accordingly, plaintiff's Motion for Default Judgment (Item 11) is GRANTED. Plaintiff is awarded $42,000.00 for defendant's violations of the TCPA.

So Ordered.

/s/ John T. Curtin

JOHN T. CURTIN

United States District Judge

Dated: October 30, 2013

---

---

[1] Plaintiff seeks damages for 21 calls after September 24, 2012, but the telephone log submitted to the court lists only 20 legible calls on

and after September 24, 2012, with two calls occurring on September 24, 2012, one of which was not answered and thus could not have been the call in which plaintiff advised the defendant to cease calls to her cellular telephone.



# Hernandez v. Path, Inc.

United States District Court for the Northern District of California

October 17, 2012, Decided; October 19, 2012, Filed

Case No.: 12-CV-01515 YGR

**Reporter**

2012 U.S. Dist. LEXIS 151035 *; 89 Fed. R. Evid. Serv. (Callaghan) 971; 2012 WL 5194120

OSCAR HERNANDEZ, individually and on behalf of a class of similarly situated individuals, Plaintiffs, vs. PATH, INC., Defendant.

**Prior History:** Opperman v. Path, Inc., 2012 U.S. Dist. LEXIS 135747 (W.D. Tex., Aug. 22, 2012)

## Case Summary

### Overview

A mobile devise user had U.S. Const. art. III standing to assert claims against an operator of a photo sharing and message service for wireless mobile devices where he alleged that the operator installed tracking software onto his mobile device, the user wanted to remove the software, and he would be required to pay a trained technician a significant sum to do so. The 18 U.S.C.S. § 2511 claim was dismissed as the user failed to allege that the provider intercepted any communication contemporaneous with its transmission.

### Outcome

Motion to dismiss granted in part with leave to amend.

**Counsel:** [*1] For Oscar Hernandez, individually and on behalf of a class of similarly situated individuals, Plaintiff: Brian R Strange, LEAD ATTORNEY, Brian Russell Strange, Strange and Carpenter, Los Angeles, CA; Joseph H Malley, LEAD ATTORNEY, PRO HAC VICE, Law Office of Joseph H. Malley, PC, Dallas, TX.

For Path, Inc., Defendant: Jedediah Wakefield, LEAD ATTORNEY, Tyler Griffin Newby, Fenwick & West LLP, San Francisco, CA.

For Apple Inc., Miscellaneous: Jacob Allen Walker, Gibson Dunn and Crutcher LLP, Palo Alto, CA.

**Judges:** YVONNE GONZALEZ ROGERS, UNITED STATES DISTRICT COURT JUDGE.

**Opinion by:** YVONNE GONZALEZ ROGERS

# Opinion

### ORDER GRANTING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND

Plaintiff Oscar Hernandez brings this putative class action against Defendant Path, Inc. ("Path") alleging that after putative class members downloaded Path's "App" to their mobile devices, that Path accessed the putative class members' mobile devices and uploaded to its servers the class members' personally identifiable information, including the address book stored on the mobile devices, and shared this information with advertisers. Plaintiff's First Amended Complaint ("FAC") alleges ten claims: (1) Violations of the Electronic Communications [*2] Privacy Act, 18 U.S.C. § 2510 et seq.; (2) Violations of the Stored Communications Act, 18 U.S.C. § 2701 et seq.; (3) Violations of the California Computer Crime Law, California Penal Code § 502; (4) Violations of California's Invasion of Privacy Act, California Penal Code § 630 et seq.; and state law claims for (5) Violations of the California Unfair Competition Law, California Business and Professions Code § 17200 et seq.; (6) Invasion of Privacy and Seclusion and Public Disclosure of Private Facts; (7) Negligence; (8) Conversion; (9) Trespass to Personal Property/Chattel; and (10) Unjust Enrichment.

Defendant Path moves to dismiss Counts III through X for lack of subject matter jurisdiction on the grounds that Plaintiff has not alleged Article III standing; and moves to dismiss all claims pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The Court heard oral argument on July 31, 2012.

Having carefully considered the papers submitted, the pleadings in this action, and the oral argument of counsel, for the reasons set forth below, the Court hereby **GRANTS IN PART** the Motion to Dismiss **WITH LEAVE TO AMEND.**

## I. BACKGROUND

Path operates a social networking-enabled [*3] photo sharing and messaging service for wireless mobile devices. Plaintiff seeks to represent a class of users that downloaded the Path App to their mobile device. When the users downloaded the Path App, Path accessed, uploaded and stored data from the users' Contact Address Books. [1] According to the FAC, the Path App also installed tracking software onto the users' mobile devices that enabled Path to track user interactions on social networking websites, including geo-tagging GPS coordinates within digital content, such as photographs and videos. Plaintiff further alleges that Path is storing this information on its servers without encryption, which presents a security risk.

## II. STANDING

Because standing is a threshold jurisdictional question, the Court will address that issue first. *See Steel Company v. Citizens for a Better Environment, 523 U.S. 83, 94, 102, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998).*

To [*4] establish Article III standing, a plaintiff must satisfy three elements: (1) "the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) "there must be a causal connection between the injury and the conduct complained of"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)* (internal quotation marks, citations and footnote omitted).

Plaintiff identifies three injuries to establish Article III standing: (1) diminished mobile device resources, such as storage, battery life, and bandwidth; (2) increased, unexpected, and unreasonable risk to the security of sensitive personal information; and (3) future costs to remove embedded code from media files uploaded through the Path App.

(1) The specific harm caused by diminished resources of which Plaintiff complains is *de minimus*: depletion of "two to three seconds of battery capacity." (FAC ¶ 122.) [2]

(2) The hypothetical threat of future harm due to a security risk to Plaintiff's personal information is insufficient to confer Article III standing. *Krotner v. Starbucks Corp., 628 F.3d 1139, 1141-43 (9th Cir. 2010).*

(3) Although Plaintiff has not alleged that he spent time or money removing the Path App and associated tracking files, the harm alleged is not hypothetical. According to the FAC, the Path App installed tracking software onto Plaintiff's mobile device, Plaintiff wants to remove the tracking software, and alleges that he would need to pay a trained technician as much as $12,250.00 [3] to do so. (*See* FAC ¶ 73). Thus, Plaintiff has sufficiently alleged that he has suffered an actual injury as a result of Path's actions.

Based on the foregoing analysis, the Court **DENIES** this basis for the Motion to Dismiss.

## III. RULE 12(b)(6) ANALYSIS

### A. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003).* All allegations of material fact are taken as true. *Johnson v. Lucent Techs., Inc., 653 F.3d 1000, 1010 (9th Cir. 2011).* To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* (quoting *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).*

---

[1] According to the FAC, "[a] contact address book is a database within a Mobile Device for storing entries called 'contacts.' Each contact consists of a few standard fields of data, including but not limited to, contact names, phone numbers, mailing addresses, e-mail addresses, instant message screen names, job title, employer, websites, birthdays, and notes." (FAC ¶ 41.)

[2] Plaintiff argues that there are calculable injuries to his mobile device resources [*5] and the bandwidth for which he pays to access the internet and calculable costs to draining bandwidth, memory and battery power. In a footnote Plaintiff indicates that "discovery will allow Plaintiff the opportunity to quantify the amount [of bandwidth] used by Path's App." (Opp'n 12, n.18.) Plaintiff should be able to determine the extent of his injuries without the benefit of discovery.

[3] Path disputes that removal of the embedded code would require a trained [*6] computer technician. According to Path, removal is "a simple act requiring no more than two swipes of his finger on his phone." On a motion to dismiss, the Court must accept as true the well-pleaded allegation.

### 1. Requests for Judicial Notice.

Although review is generally limited to the contents of the complaint and documents attached thereto, *Allarcom Pay Television. Ltd. v. Gen. Instrument Corp.*, 69 F.3d 381, 385 (9th Cir. 1995), the Court may also consider a matter that is properly the subject of [*7] judicial notice. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). Under Federal Rule of Evidence 201, a court may take judicial notice of a fact not subject to reasonable dispute because it is generally known within the trial court's territorial jurisdiction, or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

Defendant has requested the Court take judicial notice of a patent application, the Path App's pages on the iPhone App Store and Google Play store, the Apple App Store and Google Play marketplace webpages, screenshots of the Path user-interface, and notices provided by the iOS and Android OS. The Court will take judicial notice of the patent application because it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." However, the screenshots and webpages are not subject to judicial notice; information contained on the screenshots, websites, and Path's privacy policy are not from sources whose accuracy cannot reasonably be questioned, nor are they facts generally known within the territorial jurisdiction of this Court. *See* Fed. R. Evid. 201(b).

### 2. [*8] Incorporation by Reference.

Under the incorporation by reference doctrine, if "the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint," the Court may consider the document without converting the motion to dismiss into a motion for summary judgment. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). The Court considers Path's Privacy Policy, which was in place and publicly available during the relevant class period (*see* Van Horn Dec. Ex. 1, Dkt. No. 16-2) to be incorporated by reference into the FAC because Plaintiff references the privacy policy and Plaintiff's claims are based on how Path discloses information to users. *See Knievel, supra*, 393 F.3d at 1076. The Court does not consider the remaining documents to be incorporated by reference in the FAC. Although referenced by the FAC, Plaintiff's claims do not depend on the contents of the referenced documents.

### B. ANALYSIS OF PLAINTIFF'S CLAIMS

Path argues Counts I and II fail to state a claim and that even [*9] if this Court had subject matter jurisdiction over Counts III through X, each should be dismissed for failure to state a claim. The Court analyzes the sufficiency of the allegations of each Count below.

### 1. *Count I* — *Federal Wiretap Act:* 18 U.S.C. § 2511(1).

The Electronic Communications Privacy Act, commonly known as the Federal Wiretap Act, prohibits "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511. According to the FAC, Path intercepted and procured Plaintiff's and the Class Members' electronic communications, which included procuring users' contact address books, and intercepting interactions between users and their contacts online from their Mobile Devices. (FAC ¶ 141.)

The FAC fails to allege that Defendant intercepted any communication contemporaneous with its transmission. Although Path allegedly transmitted the Class Members' Contact Address Books from the Class Members' mobile devices to Path's servers, Path did not "intercept" a "communication" to do so. Likewise, Plaintiff fails to allege facts to support an inference that Path "intercepted" a [*10] "communication" on a third-party social network cite contemporaneous with, and not after, the communication was posted on the social networking website. [4]

Based on the foregoing analysis, the Court **GRANTS** the Motion to Dismiss Count I. Out of an abundance of caution that an "interception" as defined can, in fact, be alleged specifically, the Court grants **LEAVE TO AMEND** to the extent this claim can be amended consistent with this Order.

### 2. *Count II* — *Stored Communications Act:* 18 U.S.C. § 2701.

The Stored Communications Act ("SCA") makes it an offense to "intentionally access[ ] without authorization a facility through which an electronic communication service is provided; or intentionally exceed[ [*11] ] an authorization to access that facility ... and thereby obtain[ ] ... access to a wire or electronic communication while it is in electronic storage

---

[4] The Federal Wiretap Act requires an intentional "intercept." The common understanding of the term intercept, *i.e.*, "to stop, seize, or interrupt in progress or course or before arrival," is further defined by the Federal Wiretap Act itself as "*the aural or other acquisition* of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." Webster's Ninth New Collegiate Dictionary at 630 (1988); 18 U.S.C. § 2510(4) (emphasis supplied).

2012 U.S. Dist. LEXIS 151035, *11

in such system." 18 U.S.C. § 2701(a)(1). Plaintiff's SCA claim fails on multiple fronts.

First, an "electronic communication service" is statutorily defined as a service which provides its users the ability to send or to receive wire or electronic communications. 18 U.S.C. § 2510(15). [5] "Existing telephone companies and electronic mail companies are providers of electronic communication services." S. Rep. No. 99-541 (1986), reprinted in 1986 U.S.C.C.A.N. 3555, 3568. Plaintiff is not a provider of electronic communication services and his iPhone is not a facility through which such service is provided.

Second, as defined by and used in the SCA, the term "electronic storage" refers to the temporary, intermediate storage of the electronic communication that is incidental to the electronic transmission of the communication. As alleged in the FAC, the putative class members' Contact Address Books are not a communication to which the SCA applies.

Based on [*12] the foregoing analysis, the Court **GRANTS** the Motion to Dismiss Count II. Out of an abundance of caution that these terms as defined can, in fact, be alleged specifically, the Court grants **LEAVE TO AMEND** to the extent this claim can be amended consistent with this Order.

3. *Count III* — *California Computer Crime Law:* Cal. Penal Code § 502.

Plaintiff alleges that Path violated subsections 1, 2, 6, 7, and 8 of the California Computer Crime Law, Cal. Penal Code §§ 502(c)(1), (2), (6)-(8). Those sections impose civil liability upon any party who:

(1) "Knowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data," *id.* § 502(c)(1);

(2) "Knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network," *id.* § 502(c)(2);

(3) "Knowingly [*13] and without permission provides or assists in providing a means of accessing a computer, computer system, or computer network in violation of this section," *id.* § 502(c)(6);

(4) "Knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network," *id.* § 502(c)(7); or

(5) "Knowingly introduces any computer contaminant into any computer, computer system, or computer network," *id.* § 502(c)(8). Subsection 502(b)(10) defines a "computer contaminant" as "any set of computer instructions that are designed to modify, damage, destroy, record, or transmit information within a computer, computer system, or computer network without the intent or permission of the owner of the information." *Id.* § 502(b)(10).

The parties dispute whether "without permission" as used in Cal. Penal Code § 502(c)(1), (2), (6), and (7) means (i) unauthorized or (ii) unauthorized access that circumvents a technical or code-based barrier. *See also Weingand v. Harland Fin. Solutions, Inc.,* C-11-3109 EMC, 2012 U.S. Dist. LEXIS 84844, 2012 WL 2327660, at *4-6 (N.D. Cal. June 19, 2012)* (discussing split of authority without deciding which construction to adopt so as to allow complete briefing and factual [*14] development on motion for summary judgment). The parties also dispute whether software code that is installed voluntarily is a "computer contaminant," which the statute limits civil liability to conduct "without the intent or permission of the owner of the information." *See* Cal. Penal Code § 502(b)(10). Based on the current limited briefing, the Court cannot conclude as a matter of law whether Path's alleged conduct—*i.e.,* downloading the Path App, which Plaintiff voluntarily installed on his mobile device, contained undisclosed software code that surreptitiously transferred data stored on Plaintiff's mobile device to Path's servers—falls outside the scope of the California Computer Crime Law, Cal. Penal Code § 502(c).

Based on the foregoing analysis, the Court **DENIES** the Motion to Dismiss Count III.

4. *Count IV* — *California's Invasion of Privacy Law:* Cal. Penal Code §§ 630 et seq.

California Penal Code Section 631, captioned "Wiretapping," provides, in part:

Any person who . . . willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the

---

[5] The SCA uses the definitions of terms defined in 18 U.S.C. § 2510. *See* 18 U.S.C. § 2711.

contents or meaning of any message, report, or communication while [*15] the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable . . .

As set forth in the analysis of Count I for violation of the Federal Wiretap Act (*see* Section III.B.1, *supra*), Plaintiff fails to allege that Path intercepted a communication in transit. Cal. Penal Code § 631(a). [6]

Based on the foregoing analysis, the Court **GRANTS** the Motion to Dismiss Count IV. Out of an abundance of caution that an "interception" as defined can, in fact, be alleged specifically, the Court grants **LEAVE TO AMEND** to the extent this claim can be amended consistent with this Order.

*5. Count V* — *California's Unfair Competition Law:* Cal. Bus. & Prof. Code §§ 17200 et seq.

California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200

*a) Unlawful Prong*

To state a cause of action for an "unlawful" practice under the UCL, Plaintiff must allege the violation of some other law. *Cel-Tech Comm'ns, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180, 83 Cal. Rptr. 2d 548, 973 P.2d 527 (Cal. 1999). Plaintiff has adequately alleged unlawful conduct under Count III, which may serve as the predicate violation. The conduct alleged in the FAC, if true, constitutes an unlawful act or practice within the meaning of the UCL.

*b) Unfair Prong*

An act or practice is "unfair" when it "offends [*17] an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Smith v. State Farm Mutual Automobile Insurance Co.*, 93 Cal. App. 4th 700, 719, 113 Cal. Rptr. 2d 399 (Cal. Ct. App. 2001). The conduct alleged in the FAC, if true, constitutes an unfair act or practice within the meaning of the UCL.

*c) Fraudulent Prong*

A business practice is fraudulent under the UCL if members of the public are likely to be deceived. *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008). Plaintiff fails to allege fraud with particularity. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) (UCL claims that sound in fraud are subject to heightened pleading requirement of Rule 9(b)).

Nonetheless, Plaintiff has sufficiently pled two of the three prongs, which is sufficient to withstand a motion to dismiss. [7] Therefore, the Court **DENIES** the Motion to Dismiss Count V.

*6. Count VI* — *State Common Law Privacy Torts.*

The elements for a claim of Public Disclosure of Private Facts are: "(1) public disclosure (2) of a private fact (3) which would be offensive and objectionable to the reasonable person and (4) which is not of legitimate public concern." *Shulman v. Group W Prods., Inc.*, 18 Cal. 4th 200, 214, 74 Cal. Rptr. 2d 843, 955 P.2d 469 (Cal. 1998). Public disclosure means "communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Cal. Jury Instr.—Civ. 7.21.

Plaintiff has not alleged a *public* disclosure, only that Path stored Plaintiff's Contact Address Book on its servers.

Based on the foregoing analysis, the Court **GRANTS** the Motion to Dismiss Count VI. Out of an abundance of caution that a "public disclosure" can, in fact, be alleged specifically, the Court grants **LEAVE TO AMEND** to the extent this claim

---

[6] Both parties cite cases that have analyzed whether the federal Wiretap Act preempts California's Invasion of Privacy Law. *Compare Bunnell v. Motion Picture Ass'n of America* 567 F. Supp. 2d 1148, 1154 (C.D. Cal. 2007) (California's Invasion of Privacy Law is preempted) *with Leong v. Carrier IQ Inc.*, 2012 U.S. Dist. LEXIS 59480, 2012 WL 1463313 (C.D. Cal. Apr. 27, 2012) *and Valentine v. NebuAd, Inc.*, 804 F. Supp. 2d 1022, 1028-29 (N.D. Cal. 2011) (California's Invasion of Privacy Law is not preempted). Based on the current cursory briefing, which does [*16] not explain why the Court should adopt either party's position on the issue of preemption, the Court is unable to determine whether this claim is preempted.

[7] Federal Rule of Civil Procedure 12(b)(6) is not an appropriate device to eliminate a portion of a claim. *SocialApps, LLC v. Zynga, Inc.*, 4:11-CV-04910 YGR, 2012 U.S. Dist. LEXIS 14124, 2012 WL 381216, at *2 (N.D. Cal. Feb. 6, 2012) ("motion under Rule 12(b)(6) may not be used to challenge only [*18] certain allegations within a claim") (citing *Thompson v. Paul*, 657 F. Supp. 2d 1113, 1129 (D. Ariz. 2009)).

can be amended consistent with this Order.

7. _Count VII — Negligence._

The elements of a claim for negligence under California law are: "(1) a legal duty to use due care; (2) a breach of [*19] such legal duty; and (3) the breach as the proximate or legal cause of the resulting injury." 6 Witkin, Summary of Cal. Law, Torts § 835, p. 52 (10th ed. 2005). In this context, "legal duty" means the duty to use ordinary care in activities from which harm to the plaintiff might reasonably be anticipated. _See id._ at p. 53. "The risk reasonably to be perceived defines the duty to be obeyed.'" _Dillon v. Legg_, 68 Cal.2d 728, 739, 69 Cal. Rptr. 72, 441 P.2d 912 (Cal. 1968) (quoting _Palsgraf v. Long Island R.R. Co._ 248 N.Y. 339, 344, 162 N.E. 99 (N.Y. 1928)).

According to the FAC, "Defendant owed a duty to Plaintiff and Class Members to protect their personal information and data property and take reasonable steps to protect them from the wrongful taking of such information and the wrongful invasion of their privacy." (FAC ¶ 205.) Defendant allegedly breached this duty by, among other things, accessing and uploading data from Plaintiff's Contact Address Book, storing that data in an unsecure manner, and transmitting the data to third parties. (_Id._ ¶ 208; _see also, id._ ¶ 203 (incorporating by reference paragraphs 1 through 202).) Plaintiff complains of two injuries: (a) diminished bandwidth; and (b) the cost of removing tracking software. [*20] (_See id._ ¶ 209 (citing _id._ ¶¶ 56-79, 108-11, and 121-23).)

Defendant argues that Plaintiff has not provided any legal basis for the alleged duty. The case on which Defendant relies, _In re iPhone Application Litig.,_ 2011 U.S. Dist. LEXIS 106865, 2011 WL 4403963 (N.D. Cal. 2011), does not support its position. There, Judge Koh found that the "Plaintiffs ha[d] not yet adequately pled or identified a legal duty on the part of Apple to protect users' personal information from third-party app developers." 2011 U.S. Dist. LEXIS 106865, [WL] at *9. No such duty to protect Plaintiff from third parties is alleged here — Path _is_ a third-party app developer and Plaintiff alleges that Path had a duty not to take Plaintiff's personal information. Path has not offered any legal authority to support its position that it does not owe Plaintiff such a duty. Based upon the facts alleged in the FAC, and the arguments advanced by Path, the Court cannot rule as a matter of law that Path did not owe Plaintiff a duty not to take his personal information. _See Rowland v. Christian_, 69 Cal.2d 108, 112, 70 Cal. Rptr. 97, 443 P.2d 561 (Cal. 1968) (absent statutory provision or public policy declaring exception to fundamental principle that a person is liable for injuries caused by failure to exercise reasonable [*21] care, no such exception should be made).

Path also argues, on the same grounds that it argued Plaintiff does not have standing, that Plaintiff has not alleged an appreciable, non-speculative, present injury. The Court already addressed this issue in its Standing analysis, _supra,_ Part II, and found that the cost of removing tracking software sufficiently alleges injury-in-fact for purposes of withstanding a motion to dismiss.

Based on the foregoing analysis, the Court **DENIES** the Motion to Dismiss Count VII.

8. _Count VIII — Conversion._

The tort of conversion requires that a plaintiff plead "ownership or right to possession of property, wrongful disposition of the property right and damages." _Kremen v. Cohen,_ 337 F.3d 1024, 1029 (9th Cir. 2003) (quoting _G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.,_ 958 F.2d 896, 906 (9th Cir. 1992).

Path argues that it has not dispossessed or excluded Plaintiff from use of that property because Plaintiff has only alleged that Path copied the information. Plaintiff does not dispute that he does not allege the second element for a claim of conversion, wrongful disposition of the property right, which the Court takes as a tacit concession of the [*22] merits of Path's argument. Accordingly, the Court will dismiss the claim on this ground.

Based on the foregoing analysis, the Court **GRANTS** the Motion to Dismiss Count VIII. Out of an abundance of caution that the element of wrongful disposition of a property right can, in fact, be alleged specifically, the Court grants **LEAVE TO AMEND** to the extent this claim can be amended consistent with this Order.

9. _Count IX — Trespass._

The tort of trespass to chattels has been extended to cases where the plaintiff can establish that "(1) defendant intentionally and without authorization interfered with plaintiff's possessory interest in [a] computer system; and (2) defendant's unauthorized use proximately resulted in damage to plaintiff." _eBay, Inc. v. Bidder's Edge, Inc.,_ 100 F. Supp. 2d 1058, 1069-1070 (N.D. Cal. 2000). The California Supreme Court has held that the tort "does not encompass ... an electronic communication that neither damages the recipient computer system nor impairs its functioning." _Intel Corp. v. Hamidi,_ 30 Cal. 4th 1342, 1347, 1 Cal. Rptr. 3d 32, 71 P.3d 296 (Cal. 2003); _see also id._ at 1356 ("In the decisions so far reviewed, the defendant's use of the plaintiff's computer system was held sufficient to support [*23] an action for trespass when it actually did, or threatened to, interfere with the intended functioning of the system, as by significantly

reducing its available memory and processing power.").

As to the first element, Plaintiff adequately pleads that the alleged interference was unauthorized because, although he downloaded the Path App, Path exceeded the scope of any consent given. More problematic is that Plaintiff has not alleged that the functioning of his mobile device was *significantly* impaired to the degree that would enable him to plead the elements of a trespass—as alleged in the FAC, any depletion of his mobile device's finite resources is a *de minimis* injury.

Based on the foregoing analysis, the Court **GRANTS** the Motion to Dismiss Count IX. Out of an abundance of caution that Plaintiff can allege more than a *de minimus* injury, the Court grants **LEAVE TO AMEND** to the extent this claim can be amended consistent with this Order.

*10. Count X — Unjust Enrichment.*

Path moves for dismissal of Count X on the basis that unjust enrichment is not a cause of action under California law. California Courts are split on this issue. *See Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1307, 128 Cal. Rptr. 3d 109 (Cal. Ct. App. 2011); [*24] *In re iPhone Application Litig., supra*, 2011 U.S. Dist. LEXIS 106865, 2011 WL 4403963, at *15. Depending on the nature of the allegations, a cause of action for unjust enrichment could exist. *See* RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 1 (2012). This Court previously held that there is a cause of action for unjust enrichment under California law. *See, e.g., Hawthorne v. Umpqua Bank*, C-11-6700 YGR, Dkt. No. 30, 2012 U.S. Dist. LEXIS 58635, 2012 WL 1458194, at *2-3 (N.D. Cal. Apr. 26, 2012). Therefore, the Court denies the motion on this basis.

Based on the foregoing, the Court **DENIES** the Motion to Dismiss Count X for Unjust Enrichment.

## IV. CONCLUSION

For the reasons set forth above, the Motion to Dismiss is **GRANTED IN PART WITH LEAVE TO AMEND.** Counts I, II, IV, VI, VIII, and IX are **DISMISSED WITH LEAVE TO AMEND.**

By no later than November 9, 2012, Plaintiff shall file either a second amended complaint or a statement that he will proceed on the first amended complaint.

Defendant shall respond within 21 days of service.

This Order Terminates Docket Number 16.

**IT IS SO ORDERED.**

**Dated:** October 17, 2012

/s/ Yvonne Gonzalez Rogers

**YVONNE GONZALEZ ROGERS**

**UNITED STATES DISTRICT COURT JUDGE**

---

*End of Document*

 LexisNexis®

# In re Fosamax Prods. Liab. Litig.

United States District Court for the Southern District of New York

April 9, 2010, Decided; April 9, 2010, Filed

MDL No. 1789; 09 Civ. 1412 (JFK)

**Reporter**
2010 U.S. Dist. LEXIS 37795 *

IN RE: FOSAMAX PRODUCTS LIABILITY LITIGATION; This Document Relates to ELIZABETH K. BROWN, Plaintiff, -against- MERCK & CO. INC, and SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, Defendants.

**Subsequent History:** Dismissed without prejudice by Benes v. Merck (In re Fosamax Prods. Liab. Litig.), 2010 U.S. Dist. LEXIS 40758 (S.D.N.Y., Apr. 26, 2010)

**Prior History:** In re Fosamax Prods. Liab. Litig., 2010 U.S. Dist. LEXIS 33260 (S.D.N.Y., Mar. 26, 2010)

**Counsel:** [*1] For Elizabeth K. Brown, Plaintiff: Andres C. Pereira, LEAD ATTORNEY, Fleming & Associates, L.L.P., Houston, TX; Christopher Morgan Posey, LEAD ATTORNEY, The Edward A. Williamson Law Firm, Philadelphia, MS.

For Merck & Co., Inc., Defendant: James C. Fraser, Michael L. Hecht, LEAD ATTORNEYS, PRO HAC VICE, David J. Heubeck, Paul F. Strain, Venable LLP (Baltimore), Baltimore, MD; Theodore VanHuysen Mayer, Hughes Hubbard & Reed LLP (NY), New York, NY.

For Smithkline Beecham Corporation D/B/A Glaxosmithkline, Defendant: Charles F. Rysavy, LEAD ATTORNEY, K&L Gates (New Jersey), Newark, NJ; Christopher R. Carton, PRO HAC VICE, K&L Gates (New Jersey), Newark, NJ.

**Judges:** JOHN F. KEENAN, United States District Judge.

**Opinion by:** JOHN F. KEENAN

# Opinion

*Memorandum Opinion & Order*

**JOHN F. KEENAN, United States District Judge**:

Plaintiff Elizabeth K. Brown filed the instant action against Merck Sharp & Dohme Corporation ("Merck") and Smithkline Beecham Corporation ("GSK"), alleging that she sustained personal injuries from the prescription osteoporosis drugs Fosamax, which is manufactured by Merck, and Boniva, which is marketed by GSK. Plaintiff brings claims for strict liability, negligence, negligent misrepresentation, fraudulent [*2] concealment, and breach of implied and express warranties. GSK moves to dismiss all claims asserted against it for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, the motion is granted.

On a motion to dismiss under Rule 12(b)(6), the court must accept the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008)*. To survive the 12(b)(6) motion, plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*. Labels, conclusions, "naked assertions devoid of further factual enhancement," and " [t]hreadbare recitals of the elements of a cause of action" are not afforded the same presumption of truth as well-pleaded factual allegations and are insufficient to survive a motion to dismiss. *Ashcroft v. Iqbal, U.S. , 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)* (quotations omitted). After the court strips away conclusory allegations, there must remain sufficient [*3] well-pleaded factual allegations to "nudge [plaintiff's] claims across the line from conceivable to plausible." *Twombly, 550 U.S. at 570*.

GSK argues that Plaintiff fails to state a claim against it because the Complaint does not allege a single factual allegation to support her causes of action. More specifically,

GSK contends that Plaintiff has not alleged that she ever took Boniva.

Setting aside the introductory portions of the Complaint in which Plaintiff identifies the parties and sets forth the alleged basis for jurisdiction and venue, the Complaint is separated into two sections, labeled "factual background" and "counts." Neither contains sufficient factual allegations to make plausible the claims asserted against GSK.

Plaintiff cannot rely on the conclusory allegations contained within the "counts" section of the Complaint, which contains nothing more than "threadbare recitals of the elements of a cause of action." *Iqbal*, 129 S. Ct. at 1949. For example, Plaintiff attempts to rebuff GSK's claim that the Complaint does not contain an allegation that she ever took Boniva by directing the Court to the subsection of the Complaint dedicated to her strict liability claim, in which she [*4] alleges that: (1) "Plaintiff used Fosamax and Boniva as prescribed and in a manner normally intended, recommended, promoted, and marketed by Defendant"; and (2) "Fosamax and Boniva failed to perform safely when used by ordinary consumers, including Plaintiff, including when it was used as intended and in a reasonably foreseeable manner." (Compl. PP 40-41.) Although these statements are based on the assumption that Plaintiff took Boniva, the Court cannot deconstruct a conclusory statement and construe certain fragments as well-pleaded factual allegations.

The "factual background" section of the Complaint -- the section which would most logically contain the factual allegations that underpin her claims -- spans twenty-six paragraphs, but contains only one reference to Boniva or GSK. *See id.* P 11 ("Defendants, either directly or through [their] agents, apparent agents, servants, or employees, at all relevant times, designed, tested, developed, manufactured, labeled, marketed, distributed and sold Fosamax and Boniva."). The allegations contained in the other twenty-five paragraphs generally pertain to Plaintiff's use of Fosamax, the drug's qualities, and the information Merck purportedly [*5] knew or should have known about its risks. For example, whereas Plaintiff alleges that she took Fosamax from approximately March 2000 to December 2007, she does not specify anywhere in the Complaint if, when, or for how long she took Boniva. *See id.* P30. Similarly, Plaintiff alleges that she was diagnosed with "severe osteonecrosis of the jaw" in December 2007 as a "direct and proximate result of using Fosamax," but makes no similar allegation that she sustained any injury as a result of taking Boniva. *Id.* PP 30, 32. Further highlighting the lack of factual allegations regarding GSK or Boniva is Plaintiff's repeated reference to "defendant," in the singular form, as if she clumsily copied these factual allegations from one of the many complaints in this multi-

district litigation that asserts claims solely against Merck.

In sum, the underlying factual allegations make no reference to GSK and do not allow the Court to draw the inference that Plaintiff took Boniva or that it caused her alleged injury. Therefore, GSK's motion to dismiss is granted. All claims asserted against GSK are hereby dismissed without prejudice. Plaintiff is granted leave to replead and shall file and serve an amended [*6] complaint within thirty (30) days from the date of entry of this Memorandum Opinion and Order.

**SO ORDERED**.

**Dated: New York, New York**

**April 9, 2010**

/s/ John F. Keenan

**JOHN F. KEENAN**

**United States District Judge**

Ena of Document



# J.C. Corporate Mgmt. v. Res. Bank

United States District Court for the Eastern District of Missouri, Eastern Division

September 12, 2005, Decided

Case No. 4:05CV00716 ERW

**Reporter**
2005 U.S. Dist. LEXIS 33433 *; 2005 WL 2206086

J.C. CORPORATE MANAGEMENT, INC., Plaintiff, v. RESOURCE BANK, Defendant.

# Case Summary

**Procedural Posture**
Putative class action plaintiff corporation sued defendant bank in state court, seeking damages, injunctive relief, and attorney fees for the bank's alleged violation of the Telephone Consumer Protection Act (TCPA). The bank removed the action to federal court asserting federal question and diversity jurisdiction, and the corporation moved to remand the action to state court.

**Overview**
The corporation asserted that the bank violated the TCPA by sending unsolicited advertisements by facsimile, and the bank asserted federal question jurisdiction since the corporation's claim was based on a federal statute. The bank also contended that federal jurisdiction existed since the parties were of diverse citizenship and, including injunctive relief and attorney fees, the requisite amount in controversy for each class member was met. The court held, however, that remand was warranted based on lack of jurisdiction. Despite the TCPA's status as a federal statute, the TCPA provided for exclusive state court jurisdiction over actions involving the statute and thus federal jurisdiction was precluded. Further, the amount in controversy was well below the jurisdictional minimum since the value of injunctive relief to each class member was limited to the minimal savings from being free of unwanted facsimiles, and the TCPA made no provision for an award of attorney fees as required to include such fees in the amount in controversy.

**Outcome**
The corporation's motion to remand the action to state court was granted.

**Counsel:** [*1] For J.C. Corporate Management, Inc., a Missouri Corporation formerly known as National Educational Acceptance Corp., Plaintiff: John S. Steward, BURSTEIN LAW FIRM, P.C., Clayton, MO; Max G. Margulis, Chesterfield, MO.

For Resource Bank, Defendant: Mary Ann L. Wymore, Erika M. Anderson, Valerie Gay Lipic, GREENSFELDER AND HEMKER, St. Louis, MO.

**Judges:** E. RICHARD WEBBER, UNITED STATES DISTRICT JUDGE.

**Opinion by:** E. RICHARD WEBBER

# Opinion

## MEMORANDUM AND ORDER

This matter comes before the Court upon Plaintiff J.C. Corporate Management, Inc.'s Motion to Remand and for Attorneys' Fees [doc. # 9].

## I. BACKGROUND FACTS

On March 17, 2005, Plaintiff J.C. Corporate Management, Inc. ("Plaintiff"), on behalf of itself and all others similarly situated, filed a Class Action Petition against Defendant Resource Bank ("Defendant") in the Circuit Court of the County of St. Louis, Twenty-Second Judicial Circuit. In the Petition, Plaintiff contends that "Defendant or its agent(s) sent, caused to be sent, or allowed to be sent … unsolicited advertisements by fax" to Plaintiff, other persons, and entities in Missouri. (Pet. PP5, 7.)

Plaintiff brings two counts. In Count I, Plaintiff alleges [*2] that Defendant violated the Telephone Consumer Protection Act ("TCPA") by knowingly and intentionally sending,

2005 U.S. Dist. LEXIS 33433, *2

causing to be sent, or allowing to be sent unsolicited advertisements by facsimile. Plaintiff requests monetary damages pursuant to the TCPA. In Count II, Plaintiff requests that "Defendant or its agent(s) . . . be permanently enjoined from sending any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person or entity's facsimile machine without that person or entity's prior express invitation or permission." (Pet. P28.) Finally, under the heading "Prayer for Relief," Plaintiff requests that the Court: (1) certify the case as a class action; (2) appoint Plaintiff and its counsel to represent the class; (3) enjoin Defendant from the acts and practices described in the Petition; (4) enter judgment against Defendant in an amount equal to the full amount of statutory damages allowed under the TCPA; (5) enter an award of prejudgment interest; and (6) require Defendant to pay the attorneys' fees and costs of Plaintiff and the class.

On May 4, 2005, Defendant filed a Notice of Removal. In the Notice of Removal, [*3] Defendant states that the Court has both federal question jurisdiction pursuant to 28 U.S.C. § 1331 and diversity jurisdiction pursuant to 28 U.S.C. § 1332. On May 25, 2005, Plaintiff timely filed the instant Motion to Remand and for Attorneys' Fees. In the Motion to Remand, Plaintiff argues that this Court lacks both federal question and diversity jurisdiction. Additionally, Plaintiff alleges that it is entitled to attorneys' fees for the cost of bringing the instant Motion because Defendant clearly had no legal or factual basis upon which to remove this action.

## II. STANDARD FOR FEDERAL JURISDICTION

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994).* If a federal court takes action in a dispute over which it lacks subject matter jurisdiction, that action is a nullity. *See Am. Fire & Cas. Co. v. Finn, 341 U.S. 6, 17-18, 71 S. Ct. 534, 95 L. Ed. 702 (1951); Hart v. Terminex Int'l, 336 F.3d 541, 541-42 (7th Cir. 2003)* (stating that it was "regrettable" that the case had to be [*4] dismissed for lack of subject matter jurisdiction "rendering everything that has occurred in [the] eight years [of litigation] a nullity"). A claim may be removed to federal court only if it could have been brought in federal court originally; thus, the diversity and amount in controversy requirements of 28 U.S.C. § 1332 must be met, or the claim must be based upon a federal question pursuant to 28 U.S.C. § 1331. *Peters v. Union Pac. R.R. Co., 80 F.3d 257, 260 (8th Cir. 1996).* The party invoking jurisdiction bears the burden of proof that the prerequisites to jurisdiction are satisfied. *In re Bus. Men's Assurance Co., 992 F.2d 181, 183 (8th Cir.*

*1993).*

Because the removal statutes impede upon states' rights to resolve controversies in their own courts, such statutes must be strictly construed. *Nichols v. Harbor Venture, Inc., 284 F.3d 857, 861 (8th Cir. 2002).* Although a defendant has a statutory right to remove when jurisdiction is proper, the plaintiff remains the master of the claim and any doubts about the propriety of removal are resolved in favor of remand. *See In re Bus. Men's, 992 F.2d at 183;* [*5] *McHugh v. Physicians Health Plan of Greater St. Louis, 953 F. Supp. 296, 299 (E.D. Mo. 1997).* If "at any time before final judgment it appears that the district court lacks subject matter jurisdiction," the case must be remanded to the state court from which it was removed. 28 U.S.C. § 1447(c).

One basis for removal is federal question jurisdiction pursuant to 28 U.S.C. § 1331. Jurisdiction under § 1331 requires that the claim arise under the Constitution, laws, or treaties of the United States. The second basis for removal is diversity of citizenship pursuant to 28 U.S.C. § 1332. Jurisdiction under § 1332 requires (1) complete diversity of citizenship and (2) a minimum amount in controversy in excess of $ 75,000. 28 U.S.C. § 1332. When "the complaint alleges no specific amount of damages or an amount under the jurisdictional minimum, the removing party . . . must prove by a preponderance of the evidence that the amount in controversy exceeds $ 75,000." *In re Minn. Mut. Life Ins. Co. Sales Practices Litig., 346 F.3d 830, 834 (8th Cir. 2003)* (citing *Trimble v. Asarco, Inc., 232 F.3d 946, 959 (8th Cir. 2000)).* [*6] *See also James Neff Kramper Family Farm P'ship v. IBP, Inc., 393 F.3d 828, 831 (8th Cir. 2005).*

## III. DISCUSSION

In support of its Motion to Remand, Plaintiff makes two arguments: (1) the Court does not have federal question jurisdiction pursuant to 28 U.S.C. § 1331 because the TCPA grants exclusive jurisdiction to state courts; and (2) the Court does not have diversity jurisdiction because this action fails to meet the amount in controversy requirement of 28 U.S.C. § 1332. Additionally, Plaintiff requests attorneys' fees because, according to Plaintiff, Defendant had no legal or factual basis upon which to remove this action. Defendant responds by arguing that: (1) the Court has federal question jurisdiction because Plaintiff's claims arise under federal law; and (2) the Court has diversity jurisdiction because the parties are diverse and the amount in controversy exceeds $ 75,000. Finally, Defendant argues that an award of attorneys' fees is not warranted under the circumstances of this case due to the existence of legitimate and unsettled questions of law.

### A. Federal Question Jurisdiction

2005 U.S. Dist. LEXIS 33433, *6

Defendant [*7] argues that this Court has federal question jurisdiction over Plaintiff's TCPA claims. According to Defendant, Plaintiff's TCPA claims "arise under" a federal statute and are therefore within the jurisdiction of this Court. At least one federal district court has found this argument persuasive, concluding that TCPA cases may be heard in federal court on the basis of federal question jurisdiction. In *Kenro, Inc. v. Fax Daily, Inc.*, 904 F.Supp. 912 (S.D. Ind. 1995), the court found a parallel between the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA") and the TCPA. The *Kenro* court stated that both statutes did not address the validity of removal to federal court and that the court therefore would "not assume that the language in the TCPA providing for a private right of action in state court was meant to repeal federal question jurisdiction which exists under 28 U.S.C. § 1331." *Kenro*, 904 F.Supp. at 915. Defendant argues that the Court should adopt the reasoning set forth in *Kenro, Inc.* and find that this TCPA case is properly before the Court on the basis of federal question jurisdiction.

In contrast, [*8] Plaintiff argues that the TCPA vests exclusive jurisdiction over private TCPA claims in state courts. The overwhelming majority of courts which have considered this question have found Plaintiff's argument persuasive, concluding that,

> while Congress created, in the TCPA, an individual right to be free from unsolicited fax advertising, it provided for private actions to enforce the right exclusively in state courts. Accordingly, jurisdiction of the United States district courts over private TCPA actions may not be premised on the general federal-question jurisdiction conferred by 28 U.S.C. § 1331.

*International Science & Tech. Inst. v. Inacom Communs.*, 106 F.3d 1146, 1158 (4th Cir. 1997). Other courts have reached the same conclusion. See *Dun-Rite Constr., Inc. v. Amazing Tickets, Inc.*, 2004 U.S. App. LEXIS 28047, No. 04-3216, 2004 WL 3239533, at *2 (6th Cir. Dec. 16, 2004) (noting that "state courts' maintenance of exclusive jurisdiction over private rights of action under the TCPA and federal courts' concomitant lack of jurisdiction to hear such private claims are well-settled"); *Murphey v. Lanier*, 204 F.3d 911, 914 (9th Cir. 2000); [*9] *ErieNet, Inc. v. Velocity Net., Inc.*, 156 F.3d 513, 518 (3rd Cir. 1998); *Foxhall Realty Law Offices, Inc. v. Telecomms. Premium Serv., Ltd.*, 156 F.3d 432, 434 (2nd Cir. 1998); *Nicholson v. Hooters of Augusta, Inc.*, 136 F.3d 1287, 1289 (11th Cir. 1998); *Chair King, Inc. v. Houston Cellular Corp.*, 131 F.3d 507, 514 (5th Cir. 1997).

The Court finds that federal question jurisdiction cannot provide the basis for removal in this TCPA case. The relevant provision of the TCPA provides that "[a] person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State" an action under the TCPA. 47 U.S.C. § 227(b)(3). Although the Eighth Circuit has not specifically addressed this issue, every circuit court having the opportunity to construe this statute has concluded that the TCPA does not confer federal question jurisdiction on federal district courts. Additionally, this Court and other district courts within this Circuit have found that federal courts do not have authority to hear TCPA claims on the basis of federal question jurisdiction. [*10] See, e.g. *Gans v. Leiserv, Inc.*, No. 4:02cv00995 ERW, at 3-8 (E.D. Mo. 2003) (undertaking thorough analysis and concluding federal courts do not have authority to hear TCPA claims on basis of federal question jurisdiction); *Barry v. Dell Computer Corp.*, 2000 U.S. Dist. LEXIS 20630, No. Civ. 00-939, 2000 WL 34494809, at *1, *4 (D.Minn. Oct. 18, 2000) (noting that since *Kenro, Inc.* "every federal court of appeals faced with this question has found that the TCPA creates exclusive jurisdiction in state courts"). [1] Though the question technically remains an open one in the Eighth Circuit, it appears clear that the Eighth Circuit would conclude that federal courts do not have jurisdiction over TCPA claims on the basis of federal question jurisdiction. Accordingly, the Court does not have federal question jurisdiction over Plaintiff's TCPA claims.

[*11] B. Diversity Jurisdiction

Defendant argues that Plaintiff's claims were properly removed on the basis of diversity jurisdiction. The focus of the dispute between the parties with regard to the issue of diversity jurisdiction is whether the amount in controversy requirement has been met. According to Defendant, the jurisdictional amount is satisfied when Plaintiff's request for injunctive relief and attorneys' fees are included. Plaintiff contends that Defendant has failed to demonstrate that the

---

[1] Courts which have considered this issue have focused upon the text and legislative history of the TCPA in interpreting the statute. First, it appears clear that Congress intended to grant state courts exclusive jurisdiction over private TCPA actions. This is evidenced by Congress' specific grant of jurisdiction to state courts for private actions under the TCPA, which is in contrast to Congress' grant of concurrent jurisdiction for actions brought by state attorney generals under the same statute. Congress could have chosen to grant concurrent jurisdiction for private TCPA claims, but chose not to do so. See *Int'l Sci. & Tech. Inst., Inc.*, 106 F.3d at 1152. Second, the legislative history of the TCPA demonstrates Congress' intent to keep private actions under the TCPA within state court. See *Chair King, Inc.*, 131 F.3d at 513. Finally, the specific jurisdictional grant to state courts in the TCPA trumps the general jurisdictional grant of § 1331. See *Nicholson*, 136 F.3d at 1289.

amount in controversy with respect to each individual plaintiff in this case exceeds $ 75,000. Because the Court agrees with Plaintiff that the amount in controversy requirement is not satisfied in this case, the Court concludes that it lacks diversity jurisdiction over Plaintiff's claims. [2]

[*12]   1. *Injunctive Relief*

Count II is a request for injunctive relief. Defendant argues that, in valuing this injunctive relief from its perspective, the value of the requested relief exceeds $ 75,000 because "the cost to [Defendant] of ceasing fax advertising, regardless of whether the potential customer desired or welcomed such information, and to 'redesign and implement new advertisements . . . would exceed $ 75,000 and would do so whether the injunction ran in favor of one plaintiff or of the entire proposed class.'" Mem. in Opp. at 5 (quoting *Holcombe v. Smithkline*, 272 F.Supp.2d 792, 798 (E.D. Wis. 2003)). [3] According to Defendant "the chilling effect of Plaintiff's requested relief precludes [Defendant] from utilizing its marketing plan with resulting losses in excess of $ 75,000." Mem. in Opp. at 5. Plaintiff contends that the proper way to value injunctive relief for jurisdictional purposes is from the plaintiff's perspective and that the value may not be

aggregated among the potential class members.

[*13]   Although it is well settled that the amount in controversy is measured by the value of the object of litigation, [4] [*14] courts have historically disagreed as to the perspective from which that value should be established. [5] In this Circuit, however, when considering a motion to remand, it is clear that Circuit precedent "requires the district court to rely solely on the plaintiff's viewpoint in meeting the requisite amount." *Smith v. Amer. States Preferred Ins. Co.*, 249 F.3d 812, 813-14 (8th Cir. 2001). [6] In the instant case, valuing the requested injunctive relief from Plaintiff's perspective, it is clear that the value of the injunction to Plaintiff does not

---

[2] The Court notes that it need not reach the issue of whether it is permissible to remove a TCPA case to federal court on the basis of diversity jurisdiction. The current trend among federal district courts appears to be to recognize diversity jurisdiction over TCPA claims. *Saporito v. Vision Lab Telecomm., Inc.*, No. 05-CV-1007, 2005 WL 1130277, at *5 (E.D.N.Y. May 13, 2005). *See Accounting Outsourcing, L.L.C. v. Verizon Wireless Pers. Communications, L.P.*, 294 F.Supp.2d 834, 836 (M.D. La. 2003) (holding "that federal courts are not precluded from hearing TCPA claims when the parties are diverse"); *Kinder v. Citibank*, 2000 U.S. Dist. LEXIS 13853, No. 99-CV-2500, 2000 WL 1409762, at *4 (S.D. Cal. Sept. 14, 2000) (holding that "although the Court agrees with Plaintiff that the TCPA itself provides no basis for federal jurisdiction, nothing in the TCPA precludes federal courts from hearing TCPA claims where some other independent basis for jurisdiction exists"); *Kopff v. World Research Group, L.L.C.*, 298 F.Supp.2d 50, 55 (D.D.C. 2003) (adopting the holding in *Kinder*). *Contra Gottlieb v. Carnival Corp.*, 367 F.Supp.2d 301, 307-09 (E.D.N.Y. 2005) (holding that the TCPA vests exclusive jurisdiction in state courts regardless of federal question jurisdiction or diversity jurisdiction). In the instant case, even assuming *arguendo* that Plaintiff's TCPA claims can be removed to this Court on the basis of diversity jurisdiction, the case must nonetheless be remanded for failure to meet the amount in controversy requirement.

[3] The Court notes that Plaintiff's requested injunctive relief is actually narrower than the language Defendant employs here. Plaintiff requests only that Defendant be prohibited from sending unsolicited facsimile advertisements.

[4] The Eighth Circuit has recently affirmed that "the amount in controversy is measured by the value of the object of the litigation." *James Neff Kramper Family Farm P'ship v. IBP, Inc.*, 393 F.3d 828, 833 (8th Cir. 2005) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977)).

[5] Three approaches have developed in regard to the perspective from which to value injunctive relief: (1) the "plaintiff viewpoint" rule, (2) the "either viewpoint" rule, and (3) the "party asserting jurisdiction" rule. *See Bergstrom v. Burlington N. R.R. Co.*, 895 F.Supp. 257, 259-60 (D.N.D. 1995). *See also* 14B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3703 (3d ed. 1992).

[6] In support of its defendant's viewpoint theory, Defendant cites *Hatridge v. Aetna Casualty & Surety Company*, 415 F.2d 809 (8th Cir. 1969). It appears that, in that case, the court rested its decision to look at the defendant's viewpoint due to the nature of the plaintiff's claim and its dependency upon the claim of her husband. *Hatridge*, 415 F.3d at 816. It is questionable whether the court was applying the defendant's viewpoint theory at all. *See Mass. State Pharm. Ass'n v. Federal Prescription Service, Inc.*, 431 F.2d 130, 132 n.1 (8th Cir. 1970) (stating that the court did not apply the defendant's viewpoint rule in *Hatridge*). In any event, *Hatridge* concerned individual claims and did not address the unique situation of a class action. In *Massachusetts State Pharmaceutical Association*, the Eighth Circuit found that, for class actions, "the 'plaintiff viewpoint' rule is the only valid rule." 431 F.2d 130, 132 n.1 (8th Cir. 1970). The Eighth Circuit concluded that the Supreme Court's decision in *Snyder v. Harris*, 394 U.S. 332, 89 S. Ct. 1053, 22 L. Ed. 2d 319 (1969), in which the Supreme Court announced that courts cannot aggregate individual claims to reach the jurisdictional minimum, did not permit the use of any other perspective. *Id.* In the court's view, measuring the value of the object of litigation from the defendant's perspective would essentially allow aggregation of claims contrary to the rule in *Snyder. Id.*

It is clear that *Smith v. American States Preferred Insurance Company*, 249 F.3d 812 (8th Cir. 2001), reaffirms the Eighth Circuit's mandate that the plaintiff's perspective be used when valuing injunctive relief in cases such as this one.

approach any amount near the jurisdictional minimum. For Plaintiff, the value of the injunction is equal to the intangible benefit of being free from unwanted faxes, along with the amount of money Plaintiff would save in ink, paper, and facsimile maintenance by eliminating the receipt of unsolicited facsimile advertisements. This value is well below $ 75,000.

[*15]  2. *Attorneys' Fees*

In its Prayer for Relief, Plaintiff requests its attorneys' fees and costs incurred in bringing this action. According to Defendant, Plaintiff's request for attorneys' fees and costs indicates that the amount in controversy requirement is met because the requested attorneys' fees and costs will exceed $ 75,000. Plaintiff contends that, pursuant to clear Eighth Circuit precedent, the requested attorneys' fees should not be included for purposes of determining whether the jurisdictional amount is satisfied. The Eighth Circuit has concluded that "only statutory attorney fees count toward the jurisdictional minimum calculation." *Rasmussen v. State Farm Mut. Auto. Ins. Co., 410 F.3d 1029, 1031 (8th Cir. 2005)*. In rejecting a party's argument that his claim exceeded the jurisdictional amount when attorneys' fees were considered, the *Rasmussen* court found that the party had not demonstrated that he was entitled to statutory attorneys' fees if he prevailed in the action. *Id.* In reaching this conclusion, the *Rasmussen* court relied on its earlier decision in *Crawford v. F. Hoffman-LaRoche, Ltd., 267 F.3d 760 (8th Cir. 2001),* [*16] where the court had determined that statutory attorneys' fees do count toward the jurisdictional minimum. *Crawford, 267 F.3d at 766.* [7] [*17] Here, Defendant concedes that Plaintiff is not entitled to statutory attorneys' fees in the event that Plaintiff prevails in this action. The TCPA does not provide for the recovery of attorneys' fees, and Defendant has

pointed to no other statute providing for such fees. Defendant does claim that Plaintiff is entitled to attorneys' fees pursuant to "class action statutes," but Defendant does not provide a name or other identifying citation for any such statutes, and the Court has found none. [8] Defendant has failed to demonstrate that Plaintiff is entitled to statutory attorneys' fees in this case and has failed to demonstrate that any such fees can be included for amount in controversy purposes.

C. Plaintiff's Request for Defendant to Pay Attorneys' Fees

Plaintiff requests that the Court order Defendant to pay its costs, including attorneys' fees, for bringing this Motion to Remand, pursuant to *28 U.S.C. 1447(c)*, because Defendant removed this action without having a reasonable basis [*18] in fact or law for doing so. Section 1447(c) provides that "an order remanding the case may require payment of just costs and any actual expenses, including attorney[s'] fees, incurred as a result of the removal." The key factor in making this determination "is the propriety of the defendant's removal." *Lytle v. Lytle, 982 F.Supp. 671, 674 (E.D. Mo. 1997)*. The statute does not require a finding of bad faith. *Id.* The decision as to whether the imposition of fees is warranted is discretionary. *Workforce Dev., Inc. v. Corp. Benefit Servs. of Am., 316 F.Supp.2d 854, 859 (D. Minn. 2004)*.

The Court has determined that Plaintiff is entitled to one-half of the costs incurred in bringing this Motion to Remand. Though an overwhelming majority of courts have determined that federal courts do not have federal question jurisdiction over TCPA claims, Defendant is correct in pointing out that the issue has not yet been decided by the Eighth Circuit. Thus, though the Court believes it is clear that the Eighth Circuit would concur with the well-reasoned decisions of these other courts, the Court cannot conclude that Defendant's removal of this action on the [*19] basis of federal question jurisdiction was entirely unreasonable. However, there appears to be no reasonable basis upon which Defendant could have removed this action on the basis of diversity jurisdiction. Regardless of whether TCPA claims are removable on the basis of diversity

---

[7] Typically, if provided for by statute, courts include attorneys' fees in the amount in controversy computation. 14B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3712 (3d ed. 1992). For example, in *Crawford v. F. Hoffman-La Roche Ltd.,* the Eighth Circuit permitted the inclusion of fees provided for in the Arkansas Deceptive Trade Practices Act. *267 F.3d 760, 766-67* (8th Cir. 2001). *See also Hart v. Schering Plough Corp., 253 F.3d 272, 274 (7th Cir. 2001)* (noting that attorneys' fees provided for in the Illinois' Wage Actions Act might be included in the amount in controversy); *Woodmen of World Life Ins. Soc'y v. Manganaro, 342 F.3d 1213, 1217-18 (10th Cir. 2003)* (finding that the potential award of attorneys' fees provided for in the New Mexico Unfair Practices Act should have been considered in the amount in controversy); *Cohen v. Office Depot, Inc., 204 F.3d 1069, 1079 (11th Cir. 2000)* (finding that attorneys' fees provided for by Florida statutes that prohibit deceptive business practices and misleading advertising can be included in the amount in controversy).

[8] Specifically, Defendant argues that "Plaintiff's entitlement to attorneys' fees herein arises solely from the class action statutes, not from its claims under the TCPA." Mem. in Opp. at 8. Defendant does not otherwise identify the "class action statutes" to which it refers, and does not cite to a relevant case in support of its proposition. The two cases referred to in the Wymore Affidavit, upon which Defendant relies, both appear to have been settled by the parties prior to trial. It also appears that the parties in those cases agreed to a certain amount of attorneys' fees as part of their settlement agreements. *See* Def.'s Ex. B; *Fed. R. Civ. P. 23(h)* (attorneys' fees may be authorized by agreement of the parties or by law).

2005 U.S. Dist. LEXIS 33433, *19

jurisdiction, the amount in controversy requirement is clearly not met in this case, as even a cursory review of the Petition and applicable law indicates. The law in this Circuit is well-settled and clear that injunctive relief in cases such as this one is to be valued from the plaintiff's perspective and that only statutory attorneys' fees may be included for purposes of ascertaining the amount in controversy. Moreover, the law is clear that the party invoking federal jurisdiction has the burden of demonstrating that these requirements have been met. Defendant nonetheless spent significant time arguing that the amount in controversy requirement is met in this case because injunctive relief should be valued from the defendant's perspective and because non-statutory attorneys' fees are includable for purposes of reaching the jurisdictional minimum. Consequently, opposing counsel and this Court expended significant [*20] resources responding to what appear to be unreasonable arguments with respect to this Court's diversity jurisdiction. Therefore, the Court finds that Plaintiff is entitled to one-half of the costs, including attorneys' fees, incurred in bringing the Motion to Remand.

Because the Court finds that Defendant has failed to establish that this Court has jurisdiction over this case, the Court must remand the action to the state court from which it was removed.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand [doc. # 9] is **GRANTED.** This action is remanded to the Circuit Court of St. Louis County.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Attorneys' Fees [doc. # 9] is **GRANTED, in part, and DENIED, in part.** Within **TEN (10)** days of the date of this Order, Plaintiff shall provide Defendant with an itemized list of its costs, including attorneys' fees, incurred as a result of bringing this Motion to Remand. Within **TWENTY (20)** days of the date of receipt of said list, Defendant shall either remit to Plaintiff's counsel one-half of Plaintiff's costs, as described herein, or present specific objections to Plaintiff's counsel regarding [*21] the costs. In the event that specific objections are presented, counsel shall confer in good faith to resolve the objections. In the event no resolution can be reached, the Court expects that counsel will file an appropriate motion.

Dated this 12th day of September, 2005.

E. RICHARD WEBBER

UNITED STATES DISTRICT JUDGE

**JUDGMENT**

In accordance with the Memorandum and Order entered on this date and incorporated herein,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that this matter is **REMANDED** to the Circuit Court of the County of St. Louis, Missouri, from which it was removed.

Dated this 12th day of September, 2005.

E. RICHARD WEBBER

UNITED STATES DISTRICT JUDGE

*End of Document*



# Kostmayer Constr., LLC v. Port Pipe & Tube, Inc.

United States District Court for the Western District of Louisiana, Lake Charles Division

October 19, 2016, Decided; October 19, 2016, Filed

CIVIL ACTION NO. 2:16-cv-01012

**Reporter**
2016 U.S. Dist. LEXIS 145947 *

KOSTMAYER CONSTRUCTION, LLC, Plaintiffs v. PORT PIPE & TUBE, INC., Defendants

**Counsel:** [*1] For Port Pipe & Tube Inc, Defendant: Barry W Ashe, LEAD ATTORNEY, Samantha P Griffin, Stone Pigman et al, New Orleans, LA; Merrick J Norman, Jr, Norman Business Law Center, Lake Charles, LA.

**Judges:** PATRICIA MINALDI, UNITED STATES DISTRICT JUDGE.

**Opinion by:** PATRICIA MINALDI

# Opinion

## MEMORANDUM RULING

Before the court is the defendant Port Pipe & Tube, Inc.'s (Port Pipe) Motion to Dismiss (Rec. Doc. 8) and Motion for Oral Argument (Rec. Doc. 9). The plaintiff Kostmayer Construction, LLC (Kostmayer) filed a Response (Rec. Doc. 10), and Port Pipe filed a reply (Rec. Doc. 14). For the following reasons, the court will **GRANT** Port Pipe's Motion to Dismiss (Rec. Doc. 8) and **DENY** Port Pipe's Motion for Oral Argument (Rec. Doc. 9) as moot. The case will be **DISMISSED WITHOUT PREJUDICE** and leave file an amended complaint within twenty-one (21) days.

## FACTS & PROCEDURAL HISTORY

Kostmayer originally filed suit in the Eastern District of Louisiana alleging, on behalf of itself and all others who are similarly situated, that Port Pipe violated the Telephone Consumer Protection Act (TCPA) and the Junk Fax Prevention Act of 2005 (JFPA) by sending unsolicited fax advertisements. In its complaint, Kostmayer alleges it personally received [*2] at least six unsolicited faxes that violated the TCPA and the JFPA.[1] Kostmayer also alleges that the unsolicited faxes "caus[ed] Plaintiff and Plaintiff Class to sustain statutory damages, in addition to actual damages, including but not limited to those contemplated by Congress and the FCC."[2] The complaint does not further explain any alleged damages incurred by the plaintiff. While the case was pending in the Eastern District of Louisiana, Port Pipe moved to dismiss the action arguing that Kostmayer did not have standing because it did not allege a concrete injury, and that venue in the Eastern District of Louisiana was improper. Kostmayer filed a Response (Rec. Doc. 10), and Port Pipe filed a reply (Rec. Doc. 14). Then the parties filed a consent motion to withdraw the case and transfer it to the Western District of Louisiana.[3] The motion was granted,[4] and the action and the pending motions were assigned to this court on July 7, 2016.[5] The parties have not filed any subsequent memoranda. Because the parties have consented to venue in the Western District of Louisiana, the court disregards Port Pipe's improper venue argument.

## LAW & ANALYSIS

### I. Motion to Dismiss Standard

Port Pipe argues that the action should be dismissed under Federal Rule of Civil Procedure 12(b)(1) because the court does not have subject matter jurisdiction over a case in which the plaintiff has not sufficiently alleged standing.[6] Under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject

---

[1] Compl. (Rec. Doc. 1), ¶ 24.

[2] Compl. (Rec. Doc. 1), ¶ 24.

[3] Ex Parte/Consent [*3] Motion to Withdraw (Rec. Doc. 15).

[4] Order Granting Motion to Withdraw (Rec. Doc. 16).

[5] District Case Transferred (Rec. Doc. 17).

[6] Memo. in Support of Motion to Dismiss (Rec. Doc. 8-1), p. 1.

2016 U.S. Dist. LEXIS 145947, *3

matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). In a 12(b)(1) motion to dismiss, the plaintiff has the burden of establishing subject matter jurisdiction, and the motion "should only be granted if it appears certain that the plaintiff cannot prove any set of facts in support of [its] claims entitling [it] to relief." *Id. at 286, 287* (citations omitted).

To determine whether it has subject matter jurisdiction, the district court can look to "the complaint alone, the complaint supplemented by the undisputed facts as evidenced in the record, or the complaint supplemented by the undisputed facts plus the court's resolution of the disputed facts." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Mississippi Plaintiffs)*, 668 F.3d 281, 287 (5th Cir. 2012) (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001)). Here, [*4] because a record has not been developed, the court looks to the complaint alone to determine subject matter jurisdiction. "Accordingly, the [c]ourt accepts as true all factual allegations set forth in the complaint." *Sartin v. EKF Diagnostics, Inc.*, No. CV 16-1816, 2016 U.S. Dist. LEXIS 86777, 2016 WL 3598297, at *2 (E.D. La. July 5, 2016) (citing *Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010)).

## II. Standing Requirement for Federal Subject Matter Jurisdiction

Port Pipe argues that Kostmayer did not allege facts that it suffered a concrete harm due to its alleged violation of the TCPA and JFPA, and therefore under the recently decided *Spokeo Inc. v. Robins*, 578 U.S. __, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016), the plaintiff has not established federal subject matter jurisdiction. Under Article III of the Constitution, federal courts' jurisdiction is limited to justiciable "Cases" and "Controversies." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998) (citing *Muskrat v. United States*, 219 U.S. 346, 356-57, 31 S. Ct. 250, 55 L. Ed. 246, 46 Ct. Cl. 656 (1911)). For a case to be justiciable, the party bringing the case must have standing. *Id.*

Standing consists of three elements— "[the] plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547 (citing *Lujan v. Deft. of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements[,

and when] a case is at the pleading stage, the plaintiff must 'clearly [*5] ... allege facts demonstrating' each element." *Id.* (citations omitted). Because Congress cannot "statutorily grant[] the right to sue to a plaintiff who would not otherwise have standing," *id. at 1547-48* (citing *Raines v. Byrd*, 521 U.S. 811, 820 n.3, 117 S. Ct. 2312, 138 L. Ed. 2d 849 (1997)), a plaintiff must still allege "a concrete injury even in the context of a statutory violation," *id. at 1549*. Therefore, a complaint that alleges only a statutory violation without alleging a concrete harm must be dismissed. *Id. at 1549*.

On July 5, 2016, Judge Vance of the Eastern District of Louisiana decided a nearly identical case to the one before this court. *Sartin*, 2016 U.S. Dist. LEXIS 86777, 2016 WL 3598297.[7] In fact, all of the attorneys representing the plaintiff in this case also represented the plaintiff in *Sartin*. The complaints in both cases allege that the defendants violated the TCPA by sending unsolicited faxes. *Sartin*, 2016 U.S. Dist. LEXIS 86777, 2016 WL 3598297, at *1*; Compl. (Rec. Doc.1). In both cases, the plaintiffs make the same single reference to damages—that the defendants' violation of the TCPA "caus[ed] Plaintiff and Plaintiff Class to sustain statutory damages, in addition to actual damages, including but not limited to those contemplated by Congress and the [Federal Communications Commission]." *Sartin*, 2016 U.S. Dist. LEXIS 86777, 2016 WL 3598297, at *3*; Compl. (Rec. Doc.1), ¶ 24.

The court in *Sartin* found that

> [w]hile a plaintiff need only provide "general factual allegations of injury" to withstand dismissal at the pleading stage, *Lujan*, 504 U.S. at 561, [the plaintiff's] conclusory allegation lacks even general factual support .... [I]ts vague reference to Congress and the FCC provides no factual material from which the Court can reasonably infer what specific injury, if any, [the plaintiff] sustained through defendants' alleged statutory violations. Absent supporting factual allegations, [the plaintiffs] bare assurance that an unspecified injury exists is insufficient to establish Article III standing. *See Pub. Citizen, Inc. v. Bomer*, 274 F.3d 212, 218 (5th Cir. 2001) (dismissing complaint when plaintiffs failed to plead specific facts indicating that they had suffered an injury in fact); *Cocona, Inc. v. Sheex, Inc.*, 92 F. Supp. 3d 1032, 1040 (D. Colo. 2015) (finding plaintiffs "conclusory" allegation of an injury in fact insufficient to

---

[7] At the time of the *Sartin* decision, both Port Pipe and Kostmayer had already [*6] submitted all memoranda in connection to the Motion to Dismiss. Two days after Judge Vance decided *Sartin*, the current case was transferred to this court.

establish standing).

2016 U.S. Dist. LEXIS 86777, 2016 WL 3598297, at *3.

Agreeing with Judge Vance, this court finds that the same conclusory damage allegation is insufficient to withstand a 12(b)(1) Motion to Dismiss. As explained by the Supreme Court in *Spokeo*, Kostmayer cannot establish [*7] standing by simply alleging a statutory violation. 136 S. Ct. at 1549. Kostmayer must allege facts to establish a concrete injury, and his general reference to damages contemplated by congress is insufficient. *See id.; Sartin*, 2016 U.S. Dist. LEXIS 86777, 2016 WL 3598297, at *3. Furthermore, Kostmayer cannot establish a concrete injury through his Memorandum in Opposition (Rec. Doc. 10) because "[a]n opposition to a motion to dismiss is not the place for a party to raise new factual allegations or assert new claims." *Sartin*, 2016 U.S. Dist. LEXIS 86777, 2016 WL 3598297, at *4 (citations omitted).

For these reasons, the court will **GRANT** Port Pipe's Motion to Dismiss (Rec. Doc. 8) and **DISMISS** Kostmayer's action **WITHOUT PREJUDICE**, with leave file an amended complaint within twenty-one (21) days. Further the court will **DENY AS MOOT** Port Pipe's Motion for Oral Arguments (Rec. Doc. 9).

Lake Charles, Louisiana, this 19 day of October, 2016.

/s/ Patricia Minaldi

PATRICIA MINALDI

UNITED STATES DISTRICT JUDGE

---

**End of Document**



# Leyse v. Bank of Am.

United States District Court for the Southern District of New York

June 14, 2010, Decided; June 14, 2010, Filed

09 Civ. 7654 (JGK)

**Reporter**
2010 U.S. Dist. LEXIS 58461 *; 2010 WL 2382400

MARK LEYSE, Plaintiff, - against - BANK OF AMERICA, NATIONAL ASSOCIATION, Defendant.

**Subsequent History:** Related proceeding at Leyse v. Bank of Am., N.A., 2012 U.S. Dist. LEXIS 100269 (D.N.J., July 18, 2012)

**Prior History:** Leyse v. Bank of Am., 2009 U.S. Dist. LEXIS 86577 (W.D.N.C., Sept. 1, 2009)

**Counsel:** [*1] For Mark Leyse, Plaintiff: Todd C Bank, LEAD ATTORNEY, Law Office of Todd C. Bank, Kew Gardens, NY.

For Bank of America, National Association, Defendant: Kyle W. Mooney, Mark Paul Ladner, LEAD ATTORNEYS, Morrison & Foerster LLP (NYC), New York, NY.

**Judges:** John G. Koeltl, United States District Judge.

**Opinion by:** John G. Koeltl

# Opinion

### *MEMORANDUM OPINION AND ORDER*

### JOHN G. KOELTL, District Judge:

Mark Leyse ("the plaintiff" or "Leyse") originally brought this action on behalf of himself and others similarly situated against the Bank of America, National Association ("the defendant" or "Bank of America") in the United States District Court for the Western District of North Carolina, alleging that a phone call placed by Bank of America to Leyse's residence in New York on March 11, 2005 violated a provision of the Telephone Consumer Protection Act ("TCPA") and regulations promulgated under the TCPA. *See* 47 U.S.C. § 227(b)(1)(B); 47 C.F.R. § 64.1200(a)(2). Bank of

America moved to transfer the case to this Court where a suit filed by Leyse's roommate regarding the same telephone call is pending. *See Dutriaux v. Bank of Am., Nat'l Ass'n*, No. 05 Civ. 3838 (S.D.N.Y. filed Apr. 12, 2005). The *Dutriaux* action was stayed pending [*2] the appeals in *Holster v. Gatco, Inc.*, 485 F. Supp. 2d 179 (E.D.N.Y. 2007), *aff'd*, 2008 U.S. App. LEXIS 23203 (2d Cir. 2008), *vacated and remanded*, 130 S. Ct. 1575, 176 L. Ed. 2d 716 (2010) and *Bonime v. Avaya, Inc.*, No. 06 Civ. 1630, 2006 U.S. Dist. LEXIS 91964, 2006 WL 3751219 (E.D.N.Y. Dec. 20, 2006), *aff'd*, 547 F.3d 497 (2d Cir. 2008).[1] The court in North Carolina granted the motion and transferred this case to this Court.

Bank of America now moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), alleging that Leyse does not have standing to bring this action because Leyse's roommate Genevieve Dutriaux ("Dutriaux"), rather than Leyse, was the subscriber for the telephone line in their home. The plaintiff opposes the motion, arguing that it was Leyse who answered the telephone call and that any resident of the home who uses the telephone line is a "called party" with a private cause of action for $ 500 in statutory damages pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 C.F.R. § 64.1200(a)(2).

### I.

In [*3] defending a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Procedure 12(b)(1), the plaintiff bears the burden of proving the Court's jurisdiction by a preponderance of the evidence. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In considering such a motion, the Court generally must accept

---

[1] The Supreme Court of the United States' recent decision in *Shady Grove* resolved the relevant issues on appeal in *Holster* and *Bonime*. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 176 L. Ed. 2d 311 (2010).

the material factual allegations in the complaint as true. *See J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004). The Court does not, however, draw all reasonable inferences in the plaintiff's favor. *Id.; Graubart v. Jazz Images, Inc.*, No. 02 Civ. 4645, 2006 U.S. Dist. LEXIS 24828, 2006 WL 1140724, at *2 (S.D.N.Y. Apr. 27, 2006). Indeed, where jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists. *See Anglo-Iberia Underwriting Mgmt. Co. v. P.T. Jamsostek (Persero)*, 600 F.3d 171, 175 (2d Cir. 2010); *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003); *Filetech S.A. v. France Telecom S.A.*, 157 F.3d 922, 932 (2d Cir. 1998); *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986). In so doing, the [*4] Court is guided by that body of decisional law that has developed under Federal Rule of Civil Procedure 56. *Kamen*, 791 F.2d at 1011; *see also McKevitt v. Mueller*, No. 09 Civ. 3744, 689 F. Supp. 2d 661, 2010 U.S. Dist. LEXIS 13208, 2010 WL 532508, at *1 (S.D.N.Y. Feb. 16, 2010).

**II**.

The following facts are taken to be true for the purposes of this motion.

Bank of America alleges, and Leyse does not deny, that Leyse and Dutriaux were roommates at an address in New York on March 11, 2005. (*See* Bank of America's Mem. of Law in Supp. of its Mot. to Dismiss 9 & n.9.) On that date, DialAmerica Marketing, Inc. ("DialAmerica") placed a prerecorded telemarketing call on behalf of Bank of America to a phone number that was associated with Dutriaux in DialAmerica's records. (Am. Compl. P 9; Nelson Decl. PP 2-3, Ex. 1.) DialAmerica's records did not associate the phone number with Leyse. (Nelson Decl. P 3, Ex. 1.) Dutriaux alleges in her complaint that she was the subscriber to the telephone line that was called, and Leyse does not deny this claim in his briefs. (Mooney Decl. Ex. 4 at PP 7, 9, July 22, 2009.) At oral argument of the current motion the plaintiff's counsel represented that Leyse answered the telephone call. In her original complaint [*5] in this Court, Dutriaux, represented by the same counsel as Leyse, alleged that the call was left on her home answering device. (Mooney Decl. Ex. 2 at P 9, July 22, 2009.) In her amended complaint, Dutriaux obscured this paragraph by alleging only that the call was placed to Dutriaux's residential telephone line. (Mooney Decl. Ex. 4 at P 9, July 22, 2009.)

The message in the call included all of the information required by 47 C.F.R. § 64.1200(a)(6). (Am. Compl. P 10.) Bank of America alleges, and Leyse does not deny, that Dutriaux voluntarily returned the call and spoke with Bank of

America representatives about credit card offerings. (Bank of America's Mem. of Law in Supp. of its Mot. to Dismiss 6.) When a call was placed to the number provided in the prerecorded message, the caller heard a prerecorded message listing various options, including options to apply for a Bank of America credit card and to speak to a representative regarding a call that had been received. (Am. Compl. P 12.) According to the plaintiff, a caller who spoke with Bank of America representatives would be encouraged to apply for a Bank of America credit card, even if they selected the option to speak with someone [*6] regarding a prior telephone call. (Am. Compl. P 15.) The plaintiff alleges that the call placed to his home and the subsequent call to Bank of America were a pretext to violate 47 U.S.C. § 227(b)(1)(B) and 47 C.F.R. § 64.1200(a)(2). (Am. Compl. PP 14, 16.) Leyse also alleges that such calls were placed to at least 10,000 individuals. (Am. Compl. P 17.)

On April 12, 2005 Dutriaux filed a class action complaint, later amended, in this Court against Bank of America alleging violations of 47 U.S.C. § 227(b)(1)(B) and 47 C.F.R. § 64.1200(a)(2) and seeking statutory damages and injunctive relief pursuant to 47 U.S.C. § 227(b)(3). (Mooney Decl. Exs. 1-4, July 22, 2009.) On July 14, 2007 the *Dutriaux* action was stayed in this Court pending the appeal of the holdings in *Bonime* and *Holster* that N.Y. C.P.L.R. § 901(b) barred putative TCPA class actions in both state and federal court. *See Bonime*, 2006 U.S. Dist. LEXIS 91964, 2006 WL 3751219; *Holster*, 485 F. Supp. 2d at 179.

On March 10, 2009, Leyse filed this action in the United States District Court for the Western District of North Carolina. (Mooney Decl. Ex. 9, July 22, 2009.) Bank of America moved to dismiss or to transfer the action to this Court. The motion to transfer [*7] was granted and on September 2, 2009, this action was transferred to this Court.

Bank of America now moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), alleging, among other arguments, that Leyse lacks standing to bring this action. The defendant opposes the motion.

**III**.

The Court of Appeals for the Second Circuit has recently explained:

The irreducible constitutional minimum of standing, rooted in Article III's case-or-controversy requirement, consists of three elements: (1) injury in fact, by which is meant an invasion of a legally protected interest; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be

redressed by a favorable decision. The legally protected interest may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing. Accordingly, standing is gauged by the specific common-law, statutory or constitutional claims that a party presents.

*Fulton v. Goord*, 591 F.3d 37, 41 (2d Cir. 2009) (internal citations and quotation marks omitted). The issue in this case is whether the defendant's alleged violation of the TCPA was an invasion of the plaintiff's legally [*8] protected interest such that the plaintiff has suffered an injury in fact sufficient for standing.

Under the TCPA, it is unlawful for any person within the United States "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempt by rule or order by the [Federal Communications] Commission . . . ." 47 U.S.C. § 227(b)(1)(B). Thereafter, the Federal Communications Commission promulgated regulations exempting from the ban calls made for emergency or commercial purposes, calls made of a commercial purpose that do not constitute "unsolicited advertisement" or "telephone solicitation," calls "made to any person with whom the caller has an established business relationship at the time the call is made," or calls on behalf of non-profit organizations. *See* 47 C.F.R. § 64.1200(a)(2).

The TCPA creates a private cause of action for a person to enjoin violations of the provisions of the TCPA and for statutory damages of $ 500 for each violation of the statute. *See* 47 U.S.C. § 227(b)(3). A statute may permit recovery [*9] of statutory damages for statutory violations even when the plaintiff has not suffered actual damages. *Cf. Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 307 (2d Cir. 2003) (finding plaintiff has standing to sue for violation of Fair Debt Collection Practices Act ("FDCPA") even though plaintiff did not suffer actual damages); *Ehrich v. I.C. Sys., Inc.*, 681 F. Supp. 2d 265, 2010 WL 301965, at *2 (E.D.N.Y. 2010) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)) (same). The "called party" has standing to bring suit against a person or entity that violates the TCPA, even if the called party has suffered no actual harm. *See* 47 U.S.C. 227(b)(1)(B); *Landsman & Funk, P.C. v. Lorman Bus. Ctr., Inc.*, No. 08 Civ. 481, 2009 U.S. Dist. LEXIS 18114, 2009 WL 602019, at *3 (W.D. Wis. Mar. 9, 2009) (finding allegation that defendant sent fax to plaintiff in violation of TCPA sufficient basis for standing because Congress created "legally enforceable bounty system[] for assistance in enforcing" the TCPA).

Section 227(b)(1)(B) prohibits initiating a phone call using a prerecorded message to any residential telephone line "without the prior express consent of the called party" unless the exceptions under 47 C.F.R. § 64.1200(a)(2) [*10] apply. 47 U.S.C. § 227(b)(1)(B). A called party who receives such a call is permitted to bring suit to collect $ 500 in statutory damages. *See* 47 U.S.C. § 227(b)(3). Bank of America argues that it is only the telephone subscriber who has standing to bring an action for statutory damages under the TCPA. Bank of America points to legislative history and references to residential telephone subscribers in the text of the TCPA and subsequent regulations. *See, e.g.*, 47 U.S.C. § 227(a)(2)(A) (defining "established business relationship" as including a "relationship between a person or entity and business subscriber subject to the same terms applicable under such section to a relationship between a person or entity and a residential subscriber"); S. Rep. No. 102-178, at 1 (1991) ("The purposes of the bill are to protect the privacy interests of residential telephone subscribers . . . ."); 47 C.F.R. § 64.1200(c)(1), (c)(2), (d) (referring to "residential telephone subscriber[s]"). Leyse responds that the "called party" should not be interpreted as the equivalent of a "residential subscriber."

However, in this case Leyse is not a "called party" within the meaning of § 227(b)(1)(B). The uncontroverted [*11] evidence shows that DialAmerica, the entity that placed the call on behalf of Bank of America, placed the call to Dutriaux, Leyse's roommate and the telephone subscriber. DialAmerica's records demonstrate that it associated the phone number with Dutriaux, not with Leyse. To the extent that Leyse picked up the phone, he was an unintended and incidental recipient of the call.

In *Kopff*, the United States District Court for the District of Columbia found that a wife who acted as the executive assistant to her husband, the president of a business, did not have standing to bring an action for statutory damages under the TCPA when a business sent a fax in violation of the TCPA addressed to her husband as president of the company. *See Kopff v. World Research Group, LLC*, 568 F. Supp. 2d 39, 40-42 (D.D.C. 2008). While the wife retrieved the faxes at issue from the business's fax machine, they were addressed to the husband as president of the company. Likewise, in the present case, while the prerecorded message did not address Dutriaux by name and it was Leyse who allegedly answered the phone, Dutriaux was the intended recipient of the call because it was Dutriaux whose name was associated with [*12] the telephone number in DialAmerica's records.

Leyse cites two cases from the Ohio Court of Common Pleas finding that the recipient of calls or faxes that violated other provisions of the TCPA had standing to sue, even when the

plaintiff was not the intended recipient of the call or fax. *See Dawson v. Am. Dream Home Loans*, No. 06 Civ. 513, 2006 WL 2987104, at *4 (Ohio Ct. Com. Pl. Oct. 4, 2006); *Charvat v. AT&T Corp.*, No. 98 Civ. 9334, 1999 TCPA Rep. 1005, at *7 (Ohio Ct. Com. Pl. Nov. 30, 1999). While each of these cases interpret standing under other provisions of the TCPA, to the extent they could be read to find standing under the provisions in this case, the Court declines to follow them. If any person who receives the fax or answers the telephone call has standing to sue, then businesses will never be certain when sending a fax or placing a call with a prerecorded message would be a violation of the TCPA. Under the statute, a business is permitted to send a fax or phone call with a prerecorded message to persons who have given prior express consent or with whom the business has an existing business relationship. *See* 47 U.S.C. § 227(b)(1)(B); 47 C.F.R. § 64.1200(a)(2)(iv). When [*13] a business places such a call or sends such a fax, it does not know whether the intended recipient or a roommate or employee will answer the phone or receive the fax. If the business is liable to whomever happens to answer the phone or retrieve the fax, a business could face liability even when it intends in good faith to comply with the provisions of the TCPA.

Leyse also cites *In re Consumer.Net*, 15 F.C.C. 281 (1999), a case in which the Federal Communications Commission held that the TCPA's do-not-call provisions apply to specific telephone numbers rather than telephone subscribers. In *Consumer.Net*, a husband's do-not-call request was violated when the defendant subsequently called the same telephone line, even though the defendant alleged that it was calling his wife. *Id.* at 1.37 (stating the defendant's argument that it is permitted to call a different party at the same number "would eviscerate the policy goals of the statute in protecting telephone subscribers from unwanted telemarketing calls by creating a virtually irrefutable defense that the telemarketer was trying to reach 'someone else' at that number."). *Consumer.Net* dealt with the do-not-call provision of the TCPA, which [*14] is not the provision at issue in this case. [2]

Bank of America argues that it would be absurd to allow any person who happens to pick up the phone to sue for damages for a violation of the TCPA. The statute, according to Bank of America, only contemplates one such recovery by the

residential telephone subscriber. Otherwise, a business with the express prior consent to call a residential telephone subscriber, or with an established business relationship with a residential telephone subscriber, would have to obtain permission from all persons who live in the home before making a call pursuant to 47 U.S.C. § 227(b)(1)(B) or 47 C.F.R. § 64.1200(a)(2)(iv). The statute, on Bank of America's view, does not require a business to take such inconvenient precautions. Leyse [*15] responds that if the defendants' view prevails, it will be equally absurd for a business to have to inquire as to whether a person giving the business express prior consent is in fact the person whose name is on the telephone bill for their residence.

The TCPA is not as infirm as either party suggests. The face of the statute itself permits prerecorded calls when a business has the prior express consent of the "called party." 47 U.S.C. § 227(b)(1)(B). It is apparent that in this case Leyse was not the called party, although Leyse answered the telephone. Bank of America called Dutriaux, and it is Dutriaux who could grant permission for Bank of America to place that call to her, or pursue her statutory damages. Bank of America did not call Leyse; therefore, Bank of America was not required to seek Leyse's permission to place the call.

Nor was Bank of America required to determine that Dutriaux was the residential telephone subscriber. If Bank of America had the prior express consent of Dutriaux to place the call to her residence, it would be free to call Dutriaux regardless of whether Dutriaux was the residential telephone subscriber. To find otherwise would mean that when a business calls [*16] a person with a prerecorded message, that business could be liable to any individual who answers the phone despite the fact that the business only intended to call one person. *See Kopff*, 568 F. Supp. 2d at 42 (fax addressed to individual gives cause of action to only that individual, it does not create cause of action for assistant who picks up the fax from the fax machine).

Leyse was not the called party and lacks standing to seek statutory damages from Bank of America under the TCPA. Therefore, the Amended Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). It is unnecessary to reach the additional grounds asserted for dismissal. [3]

---

[2] The do-not-call provision forbids telephone solicitations to a "residential telephone subscriber" when the subscriber has registered the subscriber's telephone number on the national do-not-call list. *See* 47 C.F.R. § 64.1200(c)(2). The provision relevant to this case, on the other hand, forbids prerecorded calls to residential telephone lines "without the prior express consent of the called party." 47 C.F.R. § 64.1200(a)(2).

[3] The plaintiff seeks leave to replead, but the plaintiff has already filed an amended complaint and does not suggest how he could cure the lack of standing. The cross motion to amend is therefore denied. *See L-7 Designs, Inc. v. Old Navy, LLC*, No. 09 Civ. 1432, 2010 U.S. Dist. LEXIS 13929, 2010 WL 532160 at *3 (S.D.N.Y. Feb. 16, 2010) (denying leave to replead when plaintiff had already filed an amended complaint and new amendment would not alter court's

2010 U.S. Dist. LEXIS 58461, *16

**IV**.

The defendant seeks an award of costs and attorneys' fees. The Court has the inherent authority to grant [*17] attorneys' fees when a party "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) (internal quotation marks omitted). This case has the whiff of the inappropriate in view of the pursuit of this action arising out of the very same telephone call that is the subject of the *Dutriaux* action while the *Dutriaux* action was stayed. Moreover, it is odd that the plaintiff's attorney pursued this action in North Carolina when the action relating to the same telephone call was stayed in New York. Nevertheless, the issues in the case are sufficiently close that the Court cannot find bad faith.

The plaintiff likewise moves for attorneys' fees and sanctions, but there is no basis for the plaintiff's request.

Therefore, the Court declines to award attorneys' fees to either party.

CONCLUSION

The defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) is **granted**.

The Clerk is directed to close Docket No. 5, to enter judgment in favor of the defendant, and to dismiss this case for lack of standing. [4]

**SO ORDERED**.

**Dated: New York, New York**

**June 14, 2010**

/s/ John G. Koeltl

**John G. Koeltl**

**United States District Judge**

---

End of Document

---

opinion).

[4] Any of the parties in the *Dutriaux* action can of course move to lift the [*18] stay in view of the Supreme Court's decision in *Shady Grove*.



# Romero v. Dep't Stores Nat'l Bank

United States District Court for the Southern District of California

August 5, 2016, Decided; August 5, 2016, Filed

Case No.: 15-CV-193-CAB-MDD

**Reporter**

2016 U.S. Dist. LEXIS 110889 *; 2016 WL 4184099

ELISA R. ROMERO, Plaintiff, v. DEPARTMENT STORES NATIONAL BANK et al., Defendants.

**Counsel:** [*1] For Elisa R Romero, Plaintiff: Ivan Miguel Lopez Ventura, LEAD ATTORNEY, Ivan M. Lopez Ventura, Esq., Hawthorne, CA USA; Ronald Wilcox, LEAD ATTORNEY, Ronald Wilcox, Attorney at Law, San Jose, CA USA; Andre L. Verdun, Crowley Law Group, San Diego, CA USA.

For Department Stores National Bank, Fds Bank, Defendants: Christine M La Pinta, LEAD ATTORNEY, Seltzer Caplan McMahon Vitek, San Diego, CA USA; Julie Lynette Urzi, LEAD ATTORNEY, PRO HAC VICE, Macy's Law Department, Bridgeton, MO USA.

**Judges:** Hon. Cathy Ann Bencivengo, United States District Judge.

**Opinion by:** Cathy Ann Bencivengo

# Opinion

### ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

[Doc. No. 73]

This matter is before the Court on Defendants' motion to dismiss for lack of subject matter jurisdiction on the grounds that Plaintiff lacks standing under Article III of the Constitution. The parties have each filed three briefs on the issue, and the Court held oral argument on June 2, 2016. For the reasons set forth below, the motion is granted.

## I. Background

In 2014, Plaintiff failed to make payments on the amount owing on her Macy's credit card. To collect that debt, Defendants, who were the creditors, called Plaintiff on her cellular telephone, which is the only [*2] telephone number Plaintiff had provided for her account. Plaintiff contends that Defendants called her over 290 times using an automated telephone dialing system ("ATDS") over the course of six months between July and December 2014. Plaintiff answered only three of these telephone calls: one in July, one in September, and one in December. According to Plaintiff, on each of these occasions she asked Defendants to stop calling her. Defendants did not call Plaintiff again after the last call Plaintiff answered in December 2014. In January 2015, Plaintiff filed this lawsuit, asserting claims for violation of California's Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788 et seq. ("RFDCPA"), intrusion upon seclusion, negligent infliction of emotional distress, and violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

According to the complaint, "Defendant's unlawful conduct caused Plaintiff severe and substantial emotional distress, including physical and emotional harm, including but not limited to: anxiety, stress, headaches (requiring ibuprofen, over the counter health aids), back, neck and shoulder pain, sleeping issues (requiring over the counter health aids), anger, embarrassment, humiliation, [*3] depression, frustration, shame, lack of concentration, dizziness, weight loss, nervousness and tremors, family and marital problems that required counseling, amongst other injuries and negative emotions." [Doc. No. 1 at ¶ 3.] At her deposition in this matter, Plaintiff testified that as a result of Defendants calling to collect the money she owed, Plaintiff suffered "nervousness, a lot of tension, problems with my husband, headaches, my neck, and they would go down to my back and I would lose my appetite. I lost weight." [Doc. No. 79-2 at 3.]

After the close of discovery, Defendants' moved for summary

2016 U.S. Dist. LEXIS 110889, *3

judgment on the RFDCPA, intrusion upon seclusion, and negligent infliction of emotional distress claims, and the Court granted the motion. Specifically, the Court found that Defendants had cured any violation of the RFDCPA, that an intrusion upon seclusion claim premised solely on the volume of calls is insufficient to demonstrate conduct that would be highly offensive to a reasonable person, and that Plaintiff had failed to establish any duty on the part of Defendants as is necessary for a negligent infliction of emotional distress claim. After the Court's order, only the TCPA claim remained [*4] in this lawsuit.

Since then, the Court held a pretrial conference on April 8, 2016, at which it set this matter for trial to begin on June 13, 2016, on the TCPA claim. Plaintiff also filed a pre-trial memorandum of facts and law, and the Court entered a pre-trial order prepared by the parties. Neither of these documents make any mention of any actual damages suffered by Plaintiff. On May 26, 2016, Defendants filed the instant motion to dismiss, which they state was prompted, at least in part, by the Supreme Court's May 16, 2016 decision in *Spokeo v. Robins*, 136 S.Ct. 1540, 194 L. Ed. 2d 635 (2016). Plaintiff filed an opposition brief on May 31, 2016, and the Court held oral argument on June 2, 2016. Due to the condensed briefing schedule and specific issues raised by the Court at oral argument that were not addressed in the briefs, the Court vacated the pending trial date and gave the parties an opportunity for supplemental briefing on the motion. After considering those briefs, the Court determined that further oral argument was unnecessary and took the motion under submission.

## II. Requirements for Article III Standing

The standing to sue doctrine is derived from Article III of the Constitution's limitation of the judicial power of federal courts to "actual cases or controversies." *Spokeo v. Robins*, 136 S.Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016) (citing *Raines v. Byrd*, 521 U.S. 811, 818, 117 S. Ct. 2312, 138 L. Ed. 2d 849 (1997)). "The doctrine limits [*5] the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.* "[T]he 'irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). This case primarily concerns the first element.

The first element, injury in fact, "is a constitutional requirement, and 'it is settled that Congress cannot erase Article III's standing requirements by statutorily granting the

right to sue to a plaintiff who would not otherwise have standing.'" *Spokeo*, 136 S.Ct. at 1547-48 (quoting *Raines*, 521 U.S. at 820, n.3). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). "'For an injury to be "particularized," it 'must affect the plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan*, 504 U.S. at 560, n.1). Meanwhile, "[a] 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.* (citing Black's Law Dictionary 479 [*6] (9th ed. 2009)). Therefore, a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 1549. A "bare procedural violation, divorced from any concrete harm," does not satisfy the injury-in-fact requirement of Article III. *Id.*

"The party invoking federal jurisdiction bears the burden of establishing these elements. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561 (internal citations omitted). Here, although Defendants characterized their motion as a motion to dismiss, this case is beyond the summary judgment stage, and both parties submitted evidence with their briefs. Accordingly, "the plaintiff can no longer rest on [] 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific [*7] facts,' which for purposes of the [] motion will be taken as true." *Id.*

## III. Discussion

The Supreme Court has held that "a plaintiff must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352, 126 S. Ct. 1854, 164 L. Ed. 2d 589 (2006). In other words, "standing is not dispensed in gross." *Id.* (quoting *Lewis v. Casey*, 518 U.S. 343, 358 n.6, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996)). Here, Plaintiff contends that Defendants violated the TCPA over 290 times, once for every time Defendants allegedly called her cell phone using an ATDS after Plaintiff had revoked her consent to call her cell phone. The private right of action section of the TCPA provides for a separate statutory $500 damage award for each call that violates its provisions.[1]

---

[1] Defendants argue that Plaintiff lacks Article III standing because she suffered no monetary damage and the TCPA does not allow

47 U.S.C. § 227(b)(3). Each alleged violation is a separate claim, meaning that Plaintiff must establish standing for each violation, which in turn means that Plaintiff must establish an injury in fact caused by each individual call. In other words, for each call Plaintiff must establish an injury in fact as if that was the only TCPA violation alleged in the complaint. The determination of standing to bring a TCPA claim based on a call made using an ATDS does not change whether it is the only call alleged to have violated the TCPA or 1 of 290 calls that allegedly violated the TCPA. Accordingly, [*8] the Court must determine whether Plaintiff has evidence of an injury in fact specific to each individual call, and not in the aggregate based on the total quantity of calls. Plaintiff does not satisfy this burden.

First, Plaintiff argues that she suffered the exact harm that Congress wanted to eliminate with the TCPA, which Plaintiff argues consists of "unwanted calls to Plaintiff's cell phone and violation of privacy." This argument relates to the "particular" component, not the "concrete" component, of an injury in fact and ignores *Spokeo*'s holding that a statutory violation alone does not eliminate the requirement that a plaintiff establish a concrete injury caused by that statutory violation. *Spokeo*, 136 S.Ct. at 1549. That Defendants called Plaintiff's cell phone may satisfy the "particular" component, but it does not automatically satisfy the requirement that the injury be "concrete." Although a defendant violates the TCPA by dialing a cell phone with an ATDS, it is possible that the recipient's phone was not turned on or did not ring, that the recipient did not hear the phone ring, or the recipient for whatever reason was unaware that the call occurred. Indeed, some or all of these circumstances occurred here as the number of calls for which Plaintiff seeks damages at trial exceeds [*10] the number of calls alleged in the complaint, and in any event only two of the alleged TCPA violations

involved calls that Plaintiff answered. A plaintiff cannot have suffered an injury in fact as a result of a phone call she did know was made. Moreover, even for the calls Plaintiff heard ring or actually answered, Plaintiff does not offer any evidence of a concrete injury caused by the use of an ATDS, as opposed to a manually dialed call. Accordingly, Plaintiff has not and cannot demonstrate that any one of Defendants' over 290 alleged violations of the TCPA, considered in isolation, actually caused her a concrete harm.

Plaintiff also argues that Plaintiff suffered "additional" injuries in fact sufficient for standing including "invasion of privacy," "trespass to chattels," and "lost time, aggravation, and distress." Invasion of privacy and trespass to chattels are torts, not injuries in and of themselves. Injury is merely an element of these claims.[2] Moreover, with respect to a claim of trespass to chattels, the injury or damage must be with respect to the plaintiff's interest in the personal property, not to the plaintiff herself. *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1364, 1 Cal. Rptr. 3d 32, 71 P.3d 296 (2003) ("[T]respass to chattels is not actionable if it does not involve [*11] actual or threatened injury to the personal property or to the possessor's legally protected interest in the personal property."). Here, Plaintiff does not allege or offer any evidence that Defendants' calls caused any damage to, or interfered with her interest in, her cell phone. *Cf. id.* at 1347 ("[U]nder California law the tort [of trespass to chattels] does not encompass, and should not be extended to encompass, an electronic communication that neither damages the recipient computer system nor impairs its functioning. Such an electronic communication does not constitute an actionable trespass to personal property, i.e., the computer system, because it does not interfere with the possessor's use or possession of, or any other legally protected interest in, the personal property itself.").

Only the last injury, "lost time, aggravation, and distress," could possibly be an "injury in fact" for the purpose of

---

recovery for non-monetary or intangible injury. This argument conflates the question of whether Plaintiff has statutory standing to pursue a claim for a TCPA violation with the question whether she has Article III standing to pursue such a claim in federal court. "Unlike Article III standing, statutory standing is not jurisdictional." *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 320 (3d. Cir. 2015). Statutory standing concerns, among other things, whether the law invoked was intended to create a private right of action for the plaintiff. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1386-88, 188 L. Ed. 2d 392 (2014). A plaintiff could have suffered an injury in fact and have Article III standing, but not have statutory standing. Here, whether Plaintiff suffered a concrete injury as required for Article III standing does not necessarily mean that such injury qualifies Plaintiff to bring a TCPA claim. The concrete injury needed for Article III standing need not be monetary, so even assuming that Defendants' [*9] contention about a monetary damage requirement in the TCPA were correct, that fact is not relevant to the Article III standing analysis.

[2] *See generally* *Rowland v. JPMorgan Chase Bank, N.A.*, No C 14-00036 LB, 2014 U.S. Dist. LEXIS 32284, 2014 WL 992005, at *11 (N.D. Cal. Mar. 12, 2014) (noting that the third element of an intrusion upon seclusion claim is "the intrusion caused plaintiff to sustain injury, damage, loss or harm"); *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1350-51, 1 Cal. Rptr. 3d 32, 71 P.3d 296 (2003) ("Under California law, trespass to chattels lies where an intentional interference with the possession of personal property *has proximately caused injury*. In cases of interference with possession of personal [*12] property not amounting to conversion, the owner has a cause of action for trespass or case, and *may recover only the actual damages suffered by reason of the impairment of the property or the loss of its use*.") (internal quotation marks and citation omitted; *italics* in original).

standing. However, Plaintiff's failure to connect any of these claimed injuries in fact with any (or each) specific TCPA violation is alone fatal to Plaintiff's standing argument. Nevertheless, the Court evaluates Plaintiff's claims of injury in fact with more specificity by dividing the calls into the following categories: (1) calls of which Plaintiff was not aware either because her phone did not ring or she did not hear it ring; (2) calls that Plaintiff heard ring on her phone but that she did not answer; and (3) calls that Plaintiff answered and spoke with a representative of Defendants.

## A. Calls That Plaintiff Did Not Hear Ring On Her Cell Phone

The complaint alleges that Defendants called Plaintiff's cell phone using an ATDS 276 times in violation of the TCPA. Through discovery, however, [*13] it appears that Plaintiff learned that Defendants had actually placed over 290 calls to her cell phone using an ATDS. The record is unclear as to how many of these 290 calls Plaintiff was aware of when they were made. To the extent Plaintiff was unaware of any of Defendants' calls either because her ringer or phone were turned off, or because she did not have her phone with her when the calls occurred, none of her alleged injuries in fact are plausible or could be traceable to the alleged TCPA violation. That Defendants' placed a call to Plaintiff's cell phone using an ATDS is merely a procedural violation. For Plaintiff to have suffered "lost time, aggravation, and distress," she must, at the very least, have been aware of the call when it occurred. Accordingly, because Plaintiff has not, and likely could not, present evidence of an injury in fact as a result of calls placed by Defendants to Plaintiff's cell phone of which Plaintiff was not aware, Plaintiff lacks standing to assert a claim for a TCPA violation based on any of these calls.

## B. Calls That Plaintiff Heard Ring But Did Not Answer

Plaintiff asserts that for many of Defendants' calls, she heard the phone ring but did not answer [*14] the call. For at least some of these calls, Plaintiff asserts that she called the number that appeared on her phone and when someone answered on behalf of Defendants, she hung up. For each of these calls, to establish a TCPA violation, Plaintiff must demonstrate that she suffered an injury in fact solely as a result of the telephone ringing for that particular call. Plaintiff has not, and cannot, do so. No reasonable juror could find that one unanswered telephone call could cause lost time, aggravation, distress, or any injury sufficient to establish standing. When someone owns a cell phone and leaves the ringer on, they necessarily expect the phone to ring occasionally. Viewing each call in isolation, whether the phone rings as a result of a call from a family member, a call

from an employer, a manually dialed call from a creditor, or an ATDS dialed call from a creditor, any "lost time, aggravation, and distress," are the same. Thus, Defendants' TCPA violation (namely, use of an ATDS to call Plaintiff) could not have caused Plaintiff a concrete injury with respect to any (and each) of the calls that she did not answer. Accordingly, Plaintiff lacks Article III standing for her TCPA [*15] claims based on calls she heard ring but did not answer.

## C. Calls Plaintiff Answered

Just two of Plaintiff's TCPA claims are based on calls she answered. As for these two calls, Plaintiff once again does not, and cannot, connect her claimed "lost time, aggravation, and distress" with Defendants' use of an ATDS to have called her. Put differently, Plaintiff does not offer any evidence demonstrating that Defendants' use of an ATDS to dial her number caused her greater lost time, aggravation, and distress than she would have suffered had the calls been dialed manually, which would not have violated the TCPA. Therefore, Plaintiff did not suffer an injury in fact traceable to Defendants' violation of the TCPA, and lacks standing to make a claim for any violation attributable to the calls she actually answered.

## D. Plaintiff's Arguments

Plaintiff argues throughout her papers that she has suffered the exact injuries that the TCPA was intended to correct. Plaintiff relies heavily on language from *Spokeo* that Congress may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Spokeo*, 136 S.Ct. at 1549 (quoting *Lujan*, 504 U.S. at 578). Thus, Plaintiff cites to various Congressional [*16] findings that the proliferation of telemarketing calls are a nuisance and invade the privacy of consumers. [Doc. No. 79 at 10-11] (citing Pub L. 102-243, § 2, 105 Stat. 2394 (Dec. 20, 1991)). The Court is not persuaded.

The findings Plaintiff cites as demonstrating Congress's intent in passing the TCPA reveal only that the TCPA was meant to protect societal or public harm caused by the increasing number of unwanted telemarketing calls to consumers that the use of an ATDS allowed telemarketers to make.[3] The harm

---

[3] The nuisance noted by Congress as a result of the proliferation of telemarketing calls is analogous a "harm borne by the public at large," that Justice Thomas referenced in his concurrence in *Spokeo*. 136 S.Ct. at 1551. Justice Thomas went on to explain that a "plaintiff seeking to vindicate a public right embodied [*17] in a federal statute, however, must demonstrate that the violation of that public

identified by Congress was based on the quantity of calls consumers were receiving from telemarketers, not based on the use of ATDS.[4] The use of an ATDS may enable telemarketers to make more phone calls, but it is the calls themselves that result in the public harm that caused Congress to enact the TCPA. Thus, as a method of protecting the public from the harm caused by the proliferation of telemarketing calls, the TCPA restricted the use of an ATDS.

It does not follow, however, that an individual who receives one call to her cell phone using an ATDS suffers a concrete harm. Congress did not claim that the receipt of one solitary telephone call that was made using an ATDS, viewed in isolation and without regard to the identity of the caller or reason for the call, causes harm. Yet, that is how the TCPA defined a private right of action for a violation of the TCPA. Instead of basing a violation based on the quantity of calls, or creating a private right of action for someone who has received an excessive number of calls over time from the same offender, the TCPA [*18] treats every single call as a separate, independent violation, regardless of who made the call, the time of the call, the reason for the call, or whether the recipient was even aware the call was made or aware that it was made with an ATDS. This distinction is key. Congress's finding that the proliferation of unwanted calls from telemarketers causes harm does not mean that the receipt of one telephone call that was dialed using an ATDS results in concrete harm. In other words, regardless of Congress's reasons for enacting the TCPA, one singular call, viewed in isolation and without consideration of the purpose of the call, does not cause any injury that is traceable to the conduct for which the TCPA created a private right of action, namely the use of an ATDS to call a cell phone.

The Court is therefore unpersuaded by the reasoning of the various other district court decisions since *Spokeo* that have found that the plaintiffs had suffered a concrete injury and therefore had standing under the TCPA. Most of these cases consider the calls received by the plaintiff as a whole instead evaluating standing separately for each call alleged to violate the TCPA. *See, e.g., Caudill v. Wells Fargo Home Mortg., Inc.*, No. 5:16-066-DCR, 2016 U.S. Dist. LEXIS 89136, 2016 WL 3820195 (E.D. Ky. Jul. 11, 2016); [*19] *Mey v. Got Warranty, Inc.*,    F.Supp. 3d    , No. 5:15-CV-101, 2016 U.S.

Dist. LEXIS 84972, 2016 WL 3645195 (N.D.W.V. Jun. 30, 2016); *Booth v. Appstack, Inc.*, No. C13-1533JLR, 2016 U.S. Dist. LEXIS 68886, 2016 WL 3030256, at *5 (W.D. Wash. May 25, 2016). Meanwhile, in another case, the court appeared to hold that a plaintiff who receives a call on his cell phone that violates the TCPA has suffered a concrete injury simply because the call violated the TCPA. *See Rogers v. Capital One Bank (USA), N.A.*,    F.Supp. 3d    , No. 1:15-CV-4016-TWT, 2016 U.S. Dist. LEXIS 73605, 2016 WL 3162592, at *2 (N.D. Ga. Jun. 6, 2016).* This reasoning is circular. Under *Spokeo*, if the defendant's actions would not have caused a concrete, or *de facto*, injury in the absence of a statute, the existence of the statute does not automatically give a Plaintiff standing. *See Spokeo*, 136 S.Ct. at 1547-48 ("Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.") (quoting *Raines v. Byrd*, 521 U.S. 811, 820 n.3, 117 S. Ct. 2312, 138 L. Ed. 2d 849 (1997). As discussed above, the mere dialing of a cellular telephone number using an ATDS, even if the call is not heard or answered by the recipient, does not cause an injury to the recipient. That the TCPA allows private suits for such calls does not somehow elevate this non-injury into a concrete injury sufficient to create Article III standing.

Moreover, the specific facts of this case reveal that any harm suffered by Plaintiff is unconnected to the alleged TCPA violations. [*20] Defendants here were creditors of Plaintiff and were attempting to collect a debt. They were calling Plaintiff's cell phone because that was the only telephone number she provided them. Although these calls seeking to collect debts may have been stressful, aggravating, and occupied Plaintiff's time, that injury is completely unrelated to Defendants' use of an ATDS to dial her number. Plaintiff would have been no better off had Defendants dialed her telephone number manually. "A plaintiff who would have been no better off had the defendant refrained from the unlawful acts of which the plaintiff is complaining does not have standing under Article III of the Constitution to challenge those acts in a suit in federal court." *McNamara v. City of Chicago*, 138 F.3d 1219, 1221 (7th Cir. 1998). Further, that the use of an ATDS may have allowed Defendants to call a greater number of debtors more efficiently did not cause any harm to Plaintiff. *See Silha v. ACT, Inc.*, 807 F.3d 169, 174-75 (7th Cir. 2015) ("[A] plaintiff's claim of injury in fact cannot be based solely on a defendant's gain; it must be based on a plaintiff's loss."). In other words, to use the language from *Spokeo*, Plaintiff's alleged concrete harm was divorced from the alleged violation of the TCPA. *See Spokeo*, 136 S.Ct. at 1549 (holding that "a bare procedural violation, divorced from any concrete [*21] harm, [does not] satisfy the injury-in-fact requirement of Article III"). Accordingly, Plaintiff has not and cannot satisfy

---

right has caused him a concrete, individual harm distinct from the general population." *Id. at 1553*. Here, Plaintiff does not identify any harm caused by the fact that the calls were made using an ATDS that is distinct from any harm the general population suffers as a result of the proliferation of calls to cell phones using an ATDS.

[4] The findings noted that "over 30,000 businesses actively telemarket goods and services," and that "than 300,000 solicitors call more than 18,000,000 Americans every day." **PL 102-243, 105 Stat 2394**.

the injury-in-fact requirement of Article III.

**IV. Conclusion**

For the foregoing reasons, Plaintiff lacks standing under Article III for her TCPA claims. Accordingly, Defendants' motion is **GRANTED**, and Plaintiff's TCPA claims are **DISMISSED**. Because all of Plaintiff's other claims were dismissed in a previous order, the pending motions in limine [Doc. Nos. 71, 72] are **DENIED** as **MOOT**, and this case is **CLOSED**.

It is **SO ORDERED**.

Dated: August 5, 2016

/s/ Cathy Ann Bencivengo

Hon. Cathy Ann Bencivengo

United States District Judge

---

**End of Document**



# Smith v. Aitima Med. Equip., Inc.

United States District Court for the Central District of California

July 29, 2016, Decided; July 29, 2016, Filed

ED CV 16-00339-AB (DTBx)

**Reporter**

2016 U.S. Dist. LEXIS 113671 *

Quinshawnda Smith v. Aitima Medical Equipment, Inc.

**Prior History:** Smith v. Aitima Med. Equip., Inc., 2016 U.S. Dist. LEXIS 35603 (C.D. Cal., Mar. 18, 2016)

**Counsel:** [*1] For Quinshawnda Smith, on Behalf of Herself and all Others Similarly Situated, Plaintiff: Annick Marie Persinger, LEAD ATTORNEY, Bursor and Fischer PA, Walnut Creek, CA USA; Scott A Bursor, Yeremey O Krivoshey, LEAD ATTORNEYS, Bursor and Fisher PA, Walnut Creek, CA USA; Lawrence Timothy Fisher, Bursor and Fisher PA, Walnut Creek, CA USA.

For Aitima Medical Equipment, Inc., Defendant: Jeffrey A Backman, Lauren Shoemake, Richard W Epstein, Roy Taub, PRO HAC VICE, Greenspoon Marder PA, Ft Lauderdale, FL USA; Babak Lalezari, ATTORNEY TO BE NOTICED, Redefine Law Firm Inc, Los Angeles, CA USA.

**Judges:** ANDRÉ BIROTTE JR., United States District Judge.

**Opinion by:** ANDRÉ BIROTTE JR.

# Opinion

CIVIL MINUTES - GENERAL

**Proceedings: [In Chambers] Order GRANTING Defendant's Motion to Dismiss Without Leave to Amend or, in the Alternative, to Stay the Action [25]**

Before this Court is Defendant Aitima Medical Equipment, Inc.'s Motion to Dismiss or, in the Alternative, to Stay the Action ("Motion"), filed on April 15, 2016. (Dkt. No. 25). Plaintiff Quinshawnda Smith filed an Opposition on May 31, 2016, and Defendant filed its Reply on June 6, 2016. (Dkt. Nos. 31, 32.) The Court heard oral argument on June 20, 2016 and took the matter under [*2] submission. (Dkt. No. 33.) For the reasons discussed below, the Court hereby **GRANTS** the

Motion to Dismiss **WITHOUT LEAVE TO AMEND**.[1]

## I. BACKGROUND

Plaintiff brought suit on February 25, 2016 for causes of action arising out of Defendant's alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq. The following facts were alleged in the Complaint. (Dkt. No. 1.) Plaintiff received one phone call on February 3, 2016 from Defendant "using an autodialer and/or an artificial or prerecorded voice." (Compl. ¶ 1.) The phone call was regarding the sale of medical equipment. (Id.) Plaintiff did not provide prior express consent to Defendant, in writing or otherwise, to make the call. (Id. ¶¶ 1, 12.) After answering the phone, Plaintiff "heard a pause or dead air before anyone [*3] on the line began to speak." (Id. ¶ 14.) Plaintiff concludes that this pause indicated Defendant's use of an automatic telephone dialing system. (Id.) The Complaint also cites nine consumer complaints found online that reference the same phone number Defendant called Plaintiff from. (Id. ¶ 15.) Some of the consumer complaints provided by Plaintiff allege several calls and no voicemails. (Id.) Others mention that the caller was a live person who specifically knew the name of the individual he or she was trying to contact. (Id.) In addition, some of the consumer complaints allege that the live caller mentioned that the person of interest had filled out a form, indicating a possible claim of diabetes. (Id.) Plaintiff alleges harm to herself and members of the proposed class in the form of "multiple involuntary telephone and electrical charges, the aggravation, nuisance, and invasion of privacy

---

[1] In its Motion, Defendant requested that if the Court decided not to dismiss the Complaint, in the alternative, it should stay proceedings pending the Supreme Court's decision in the *Spokeo* case because the issues being decided by the Supreme Court regarding standing could impact this case. (Mot., Dkt. No. 25, p. 16.) This request is now moot because the Supreme Court issued its decision in *Spokeo* on May 16, 2016. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016).

that necessarily accompanies the receipt of unsolicited and harassing telephone calls, and violations of their statutory rights." (*Id.* ¶ 21.)

## II. LEGAL STANDARD

### A. Article III Standing

To bring suit in federal court, a party must meet the standing requirements of Article III of the Constitution. Standing "limits the category of [*4] litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." Spokeo, Inc. v. Robins, 136 S.Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016). The "irreducible constitutional minimum" of standing consists of three elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351. "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S.Ct. at 1547. "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.*

### B. Rule 12(b)(6) Motion to Dismiss

Upon establishing the jurisdictional requirements mandated by Article III, a plaintiff must plead the grounds for which he or she is entitled to relief. Federal Rule of Civil Procedure 8(a)(2) requires a pleading to consist of a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Federal Rule of Civil Procedure 12(b)(6) gives a party grounds to dismiss a pleading that does not meet the pleading requirements of Rule 8(a)(2). Under Rule 12(b)(6), a defendant may move to dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Precedent details what is required to sufficiently state a claim under the federal rules. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than [*5] labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). While this does not require "detailed factual allegations," it still "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

To determine whether the pleading satisfies Rule 8(a)(2), the court should begin by identifying the elements of the claim. *Iqbal*, 556 U.S. at 675. Then, the court should distinguish the pleading's factual allegations from its legal conclusions. *Id.* at 678. When evaluating the pleading, mere conclusory allegations are not entitled to the assumption of truth, whereas a court should take as true all factual allegations in the complaint. *Id.* The court must then decide whether these factual allegations "plausibly give rise to an entitlement to relief." *Id.* at 679.

## III. DISCUSSION

Defendant moves to dismiss Plaintiff's claims [*6] on two grounds. Defendant first asserts that the Court should dismiss Plaintiff's complaint for lack of subject matter jurisdiction because Plaintiff fails to, and cannot, sufficiently allege that she suffered a concrete injury in fact as required for standing. (Reply, p. 14-15.) Defendant argues that Plaintiff has not alleged any damages that she suffered, aside from a statutory violation, which is not enough to meet the concreteness and particularization requirements of standing. (*Id.* at 14.) Plaintiff responds that she sufficiently alleged both tangible and intangible harms — the drainage of cell phone battery, aggravation, and invasion of privacy — to show injury in fact as required by standing. (*Id.* at 9.)

Defendant's second assertion is that dismissal is proper because Plaintiff fails to allege facts to allow the Court to draw a plausible inference that Defendant used an automatic telephone dialing system ("ATDS") to call her, as required by Plaintiff's TCPA claims. (Mot., p. 12.) Defendant asserts that Plaintiff's allegations are insufficient because they consist of only one call with a pause, they lack detail regarding the call, and are conclusory. (*Id.*) Plaintiff responds that to state a claim [*7] under the TCPA, alleging a pause or dead air is sufficient to draw the inference that an ATDS was used. (Opp'n., p. 6-7.)

The Court begins by examining the threshold jurisdictional question of whether Plaintiff has established standing.

### A. Article III Standing

Defendant argues that Plaintiff lacks standing because she alleges no concrete harm and instead alleges only a bare statutory violation. (Mot., p. 14.) To establish standing, a plaintiff must allege facts to show that he or she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S.Ct. at 1547. Based on the arguments set forth in the Motion, the Court focuses on the first element of whether Plaintiff has

sufficiently alleged facts to show that she suffered an injury in fact.

In *Spokeo*, the Supreme Court outlined the framework of the complete standing analysis courts should use to determine whether an injury in fact has been alleged. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is concrete and particularized' and 'actual and imminent, not [*8] conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan, 504 U.S. at 560*). Since Defendant argues that the concreteness requirement is not satisfied, the Court turns to that analysis.

For a Plaintiff to have standing, he or she must allege an injury in fact that is concrete. *Spokeo*, 136 S.Ct. at 1548. A concrete injury is a real injury that actually exists. *Id.* It is not abstract; yet, to be concrete, the injury need not be tangible. *Id.* at 1548-1549. In addition to tangible injuries, intangible injuries can still be considered concrete. *Id.* at 1549. The Supreme Court instructs: "in determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Id.* Further, the Supreme Court notes that while Congress can elevate injuries to be legally recognizable by statute, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right." *Id.* A plaintiff cannot allege a procedural violation absent a concrete harm. "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.*

Defendant's first assertion regarding concreteness is that Plaintiff [*9] did not provide details that show she herself suffered injury. Defendant argues that "plaintiff fails to allege that *she* was actually charged for the call or that she received more than one call." (Reply, p. 14.) Through this reasoning, Defendant attempts to make the point that Plaintiff does not specifically allege injury in which she herself suffered, but instead makes the injury a class allegation, rendering it insufficient under the concreteness requirement. Defendant is mixing particularization with concreteness, two distinct requirements for standing. Particularization requires that an injury "affect the plaintiff in a personal and individualized way." *Spokeo*, 136 S.Ct. at 1548. In Plaintiff's Complaint, she states that "Plaintiff and all members of the proposed class have been harmed," before listing the alleged harms. (Compl., ¶ 21.) Prior to this allegation of harm, Plaintiff alleged that she received a phone call from Defendant without providing prior consent. (*Id.* at ¶ 1.) The Court finds that the statement of harm is sufficiently particularized to show that Plaintiff alleges she herself, in addition to the members of the class, has been harmed by Defendant's unauthorized conduct.

Defendant next [*10] argues that the tangible and intangible harms Plaintiff asserts are conclusory and are only bare statutory violations, which are not sufficient. (Reply, at p. 15.) Plaintiff's allegation of injury consists of one paragraph in the Complaint: "Plaintiff and all members of the proposed Classes have been harmed by the acts of Defendant in the form of multiple involuntary telephone and electrical charges, the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited and harassing telephone calls, and violations of their statutory rights." (Compl., ¶ 21.) While Defendant is correct that a bare statutory violation is not enough, *see* *Spokeo, 136 S.Ct. at 1547-48*, Plaintiff contends that she alleges more than a statutory violation.

Plaintiff argues that her assertion of battery drainage, aggravation, and nuisance are tangible and intangible harms sufficient to satisfy the requirements of concreteness. (Opp'n, p. 9.) Defendant argues that these allegations are conclusory and lack necessary detail to meet the requirements of concreteness for standing. Plaintiff alleged a harm of "multiple involuntary telephone and electrical charges," yet, she has only alleged the receipt of one [*11] phone call from Defendant. (Compl., ¶1, 21.) Additionally, it is unclear what Plaintiff means when she refers to incurring "electrical charges." (*Id.*) Plaintiff stated in oral argument that the charges referred to the drainage of cell phone battery, but the Complaint does not say that. As written, they could also be interpreted to mean the electrical charges to a telephone bill for the call. The Court agrees with Defendant that detail is lacking, but focuses on an additional point to determine whether standing exists: whether Plaintiff's alleged harm resulting from a single phone call is sufficient to confer standing.

The Northern District of California encountered a similar situation where one of a plaintiff's alleged injuries, after downloading an application on his cell phone, was "diminished mobile device resources, such as storage, battery life, and bandwidth." *Hernandez v. Path, Inc.*, 2012 U.S. Dist. LEXIS 151035, 2012 WL 5194120 *2 (N.D. Cal. Oct. 19, 2012). There, the court stated that "the specific harm caused by diminished resources of which Plaintiff complains is de minimis: depletion of 'two to three seconds of battery capacity.'" 2012 U.S. Dist. LEXIS 151035, [WL] at *2. In that case, the allegations were not regarding a phone call, but rather, a single download of an application to a mobile device. 2012 U.S. Dist. LEXIS 151035, [WL] at *1. While [*12] *Hernandez* and the case before the Court both allege a single instance of unauthorized conduct, receiving one phone call, as in the present case, would seem to require less battery than downloading an application, as in *Hernandez*. Further, in *Hernandez*, the plaintiff actually alleged in the complaint the

depletion of a few seconds of battery capacity. 2012 U.S. Dist. LEXIS 151035, [WL] at *2. Here, Plaintiff does not provide any detail as to what the charges refer to or to the amount incurred. The Southern District of California also reviewed a similar case and cited *Hernandez* in its analysis. There, a plaintiff received two text messages and alleged that they consumed battery life and diminished the use and enjoyment of the cellular telephone plans. *Olmos v. Bank of America, N.A.*, 2016 U.S. Dist. LEXIS 72329, 2016 WL 3092194 *4 (S.D. Cal. June 6, 2016). Like *Hernandez*, the court found the fact "that [p]laintiff received two short text messages insufficient to convey standing because the loss of battery life and bandwidth as a result of these two messages was de minimis." 2016 U.S. Dist. LEXIS 72329, [WL] at *4. Turning to the case before the Court, the receipt of one phone call, as alleged by Plaintiff, is comparable to the receipt of a text message and any drainage of battery from a single call is surely minimal.

The Court recognizes the purpose prompting enactment of the [*13] TCPA and the injury multiple phone calls can cause. Courts have found allegations of "systematic rather than episodic" unauthorized conduct to be more than a de minimis injury, and thus sufficient to confer standing. *In re Google, Inc. Privacy Policy Litig.*, 2013 U.S. Dist. LEXIS 171124, 2013 WL 6248499 *7 (N.D. Cal Dec. 3, 2013). Here, like in *Olmos* where plaintiff alleged "episodic discharge of battery power on two short occasions," Plaintiff alleges a single call that surely cannot be considered systematic. At most, the phone call lasted for a few seconds. Any depletion of Plaintiff's battery, or aggravation and nuisance, resulting from only one call, is a de minimis injury. The Court finds that "[t]he injury is too de minimis to satisfy the standing doctrine's core aim of improving judicial decision-making by ensuring that there is a specific controversy before the court and that there is an advocate with sufficient personal concern to effectively litigate the matter." *Caldwell v. Caldwell*, 545 F.3d 1126, 1134 (9th Cir. 2008). Plaintiff's de minimis injury is not sufficient to confer standing. Nor can Plaintiff amend the Complaint to allege more than a de minimis injury given the fact that she received only one call.

Even though the Court finds that Plaintiff does not have standing to bring suit, the Court will still conduct a Rule 12(b)(6) analysis to determine whether [*14] Plaintiff has sufficiently pled a claim for relief.

## B. Rule 12(b)(6) Motion to Dismiss

Defendant contends that because Plaintiff's minimal allegations are wholly conclusory and lack detail, they do not allow the Court to draw a plausible inference that Defendant is liable for the alleged conduct, so the Court should dismiss

the Complaint for failure to state a claim under Rule 12(b)(6). (Mot., p. 11.) Specifically, Defendant focuses on allegations regarding use of an automatic telephone dialing system ("ATDS") to say that the claims are insufficient.

"The three elements of a TCPA claim are: (1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Associates, LLC*, 696 F.3d 943, 945 (9th Cir. 2009). An automatic telephone dialing system "means equipment which has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). Plaintiff alleges that "Defendant called [her] on her cellular telephone using an autodialer and/or artificial or prerecorded voice in order to sell her medical equipment."[2] (Compl., ¶ 1.) The only facts Plaintiff alleges to support this conclusory [*15] allegation are that she received one phone call, the call was to sell medical equipment, and when Plaintiff answered the phone, she heard a pause before anyone began to speak. (Id. at ¶¶ 1, 13-14.) Plaintiff argues that these allegations give rise to a plausible inference that an ATDS was used. Plaintiff relies solely on the fact that upon answering the one phone call, she heard a "pause or dead air," and asserts that case law supports that this is sufficient to infer an ATDS was used. (Compl., Opp'n., ¶ 14., p. 7.) While the cases Plaintiff cites do rely on allegations that the plaintiff heard "dead air" or a "pause" upon answering the call to infer the use of an ATDS, those cases are distinguishable from this case.

In *Loveless* [*16], "dead air" was heard after answering the phone on several occasions and the court found "the allegations regarding the 'dead air' plaintiff experience[d] with respect to several calls sufficient to survive a motion to dismiss." *Loveless v. A1 Solar Power, Inc.*, 2015 U.S. Dist. LEXIS 96429, 2015 WL 4498787 *3 (C.D. Cal. July 23, 2015). Experiencing dead air on several calls raised a reasonable inference that the caller used an ATDS. Plaintiff also cites the *Evans* case to support her claim that hearing a pause is sufficient to infer use of an ATDS. But there, the plaintiff alleged that defendant used an ATDS because he alleged multiple phone calls, that the calls continued after he

---

[2] Plaintiff's original complaint included language about Defendant "using an autodialer **and/or** an artificial or prerecorded voice." (emphasis added) (Dkt. No. 1, Compl., ¶ 1.) This language is ambiguous as to what Plaintiff is claiming, and furthermore, she alleged no facts about the use of an artificial or prerecorded voice. At oral argument, Plaintiff conceded that she is not alleging the use of an artificial or prerecorded voice, only that Defendant used an ATDS. .

specifically asked the defendant to stop calling, he heard a brief silence after answering many of the calls, and the calls were frequent and persistent. *Evans v. National Auto Division, L.L.C.*, 2016 U.S. Dist. LEXIS 29348, 2016 WL 885050 *1-2 (D.N.J. Mar. 8, 2016).

Another case Plaintiff relies on involved two plaintiffs: Oliver, who received four calls, and Tippetts, who received 25 calls. *Oliver v. DirecTV, LLC*, 2015 U.S. Dist. LEXIS 47964, 2015 WL 1727251 *1 (N.D. Ill. Apr; 13, 2015). Oliver was not able to answer any of the calls, but he alleged that when he called the number back, he got a prerecorded voice identifying the caller as the defendant. 2015 U.S. Dist. LEXIS 47964, [WL] at *2. He alleged that that was enough to infer that an ATDS was used. *Id.* The court there stated that while it is possible that an ATDS was used, the facts Oliver do [*17] not take the claim beyond a speculative level to a plausible inference. *Id.* Tippetts, by contrast, alleged that on at least three of the twenty-five calls he received, he heard a pause before a live representative began speaking, that he was always routed to a different account manager, and that he informed defendant that he did not want to receive the calls, yet they continued. 2015 U.S. Dist. LEXIS 47964, [WL] at *1. For this plaintiff, the court found that his claim survived the motion to dismiss because "Tippetts' allegation regarding the 'momentary pause,' along with his other allegations regarding Defendant's phone calls, were sufficient to draw a reasonable inference that Defendant used an ATDS in making its calls to Tippetts. 2015 U.S. Dist. LEXIS 47964, [WL] at *3. In these cases and the others cited by Plaintiff in her Opposition, the plaintiffs alleged hearing dead air or a pause on several phone calls in addition to other allegations of numerous calls, no voicemails, persistency of calls, and callbacks to a prerecorded voice. Turning to the case before the Court, Plaintiff has alleged hearing only one pause on only one phone call. The pause could be an accidental hang up, a mistake from someone realizing they had the wrong number, a bad connection, [*18] or the use of an ATDS. Plaintiff alleges no facts that allow the Court to shift from speculation to a plausible inference that the pause was because Defendant used an ATDS. And because Plaintiff only received one call, an inference of use of an ATDS for the call is just as possible as the call being made by a live person. One call and one pause, standing alone, do not take the claim of the use of an ATDS beyond the speculative level.

Additionally, in regards to the consumer complaints that Plaintiff references to support her claim that an ATDS was used, Defendant argues that these complaints actually undermine Plaintiff's allegations. The Court agrees that these consumer complaints contradict an inference that an ATDS was used. Plaintiff provides nine anonymous consumer complaints retrieved from a website online to support her

contentions. (Compl., ¶ 15.) In these complaints, consumers reference a live caller, who knew the name of the person he or she was calling for. (*Id.*) When referring to a phone call, one consumer wrote that "[h]e knew my name and claimed to be from some medical company following up. Asked about my claim of diabetes." (*Id.*) Another consumer reported that "he [the caller] [*19] called me at work and knew my name." (*Id.*) Other consumer complaints in connection with the phone number stated that the caller named a specific person he or she was trying to contact. (*Id.*) To allege the use of an autodialer, Plaintiff must allege facts that suggest the equipment used has the capacity to store or produce telephone numbers to be called at random. 47 U.S.C. § 227(a)(1). These complaints suggest that the caller was targeting certain individuals. The caller knew the name of the person and asked for a specific individual. Thus, these allegations go against an inference that an ATDS was used because they suggest that the calls were directed at certain individuals and not randomly generated by an automated device. Furthermore, Plaintiff alleges no facts regarding whether the equipment Defendant used has the capacity to store numbers to place calls at random. Receiving only one call and hearing only one pause does not create a plausible inference regarding the capacity of equipment to store phone numbers or to make random calls. And, because Plaintiff alleges the receipt of only one phone call, she cannot allege sufficient facts to state a claim for relief under the TCPA. Without more, one phone [*20] call and one pause do not support a shift from speculation to plausibility, as required under the pleading standard. For these reasons, Plaintiff has failed to meet her burden to allege facts to state a claim under the TCPA.

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendant's Motion to Dismiss **WITH PREJUDICE**.

The Pretrial and Jury Trial dates are hereby vacated.

**IT IS SO ORDERED**.

---

**End of Document**



# Strand v. Corinthian Colleges, Inc.

United States District Court for the Western District of Michigan, Southern Division

April 17, 2014, Decided; April 17, 2014, Filed

File No. 1:13-CV-1235

Reporter
2014 U.S. Dist. LEXIS 52963 *; 2014 WL 1515494

TIFFANY STRAND, Plaintiff, v. CORINTHIAN COLLEGES, INC., Defendant.

**Counsel:** [*1] For Tiffany Strand, plaintiff: Sergei Lemberg, Lemberg & Associates LLC, Stamford, CT.

For Corinthian Colleges, Inc., defendant: Kevin Patrick Jacobs, Homer Bonner Jacobs, Miami, FL.

**Judges:** HON. ROBERT HOLMES BELL, UNITED STATES DISTRICT JUDGE.

**Opinion by:** ROBERT HOLMES BELL

# Opinion

This is a consumer protection matter file pursuant to the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227. The matter is presently before the Court on Defendant's motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 9). Defendant filed this motion after Plaintiff amended her complaint (Dkt. No. 7). Plaintiff has now filed a response (Dkt. No. No. 10) to which Defendant has replied (Dkt. No. 12). Plaintiff has also filed two unpublished district court cases as supplemental authority (Dkt. Nos. 11, 13).

The issue before the Court is whether, under the pleading standards of Rule 8, *Iqbal*, and *Twombly*, a plaintiff in a TCPA action must plead her cellular telephone number to state a plausible claim for relief. The Court holds that such a pleading is required, and therefore will grant Defendant's motion.

## I.

This case arises from Defendant's alleged contacts with Plaintiff over the last four years. [*2] (Am. Compl., Dkt. No.

7 ¶ 7.) Plaintiff alleges that when she would answer the phone she would hear pre-recorded messages or be connected to a live representative after several seconds of silence. (*Id.* ¶¶ 9, 10.) The calls offered Plaintiff the opportunity to enroll in classes at Defendant's school. (*Id.* ¶ 9.) Plaintiff informed a live representative in October 2013 that she was not interested in Defendant's services and that she did not want to receive automated calls anymore. (*Id.* ¶ 11.) Plaintiff alleges that Defendant continued to contact her. (*Id.* ¶¶ 12, 13.) Plaintiff claims all of these calls were made to her cellular telephone, the number to which she does not provide. (*Id.* ¶ 8.)

Plaintiff filed the present lawsuit on November 11, 2013. Defendant filed its first motion to dismiss on December 11, 2013 (Dkt. No. 5). Plaintiff responded (Dkt. No. 8) but also filed an amended complaint (Dkt. No. 7) on January 2, 2014. Defendant then filed the present motion to dismiss, arguing that Plaintiff's amended complaint continues to fail to state a claim upon which relief can be granted because the complaint fails to give Defendant fair notice of "what the claim is and the grounds upon which [*3] it rests." (Def.'s Mot., Dkt. No 9 at 2.)

## II.

In reviewing a Rule 12(b)(6) motion to dismiss, the Court must "'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff,'" but "'need not accept as true legal conclusions or unwarranted factual inferences.'" *Hunter v. Sec'y of U.S. Army,* 565 F.3d 986, 992 (6th Cir. 2009) (quoting *Jones v. City of Cincinnati,* 521 F.3d 555, 559 (6th Cir. 2008)). Under the federal notice pleading standards, a complaint must contain "a short and plain statement of the claim showing how the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this statement is to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

2014 U.S. Dist. LEXIS 52963, *3

The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) [*4] (citing *Twombly*, 550 U.S. at 555). To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts that "state a claim to relief that is plausible on its face," and that, if accepted as true, are sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. 678. "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011), *cert. denied*, 132 S. Ct. 1583, 182 L. Ed. 2d 172 (2012) (quoting *Iqbal*, 556 U.S. at 677). Where a complaint pleads facts that are merely consistent with a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

The present case is brought under the TCPA, specifically 47 U.S.C. § 227(b)(1)(A)(iii), which provides, in the pertinent part:

> It [*5] shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service.

The Sixth Circuit has not specifically crafted elements of a § 227(b)(1) violation involving a cellular telephone. However, in interpreting a statute such as this, the Court must begin with the text of the statute itself, and if the language is plain, the Court must give the language effect and end its analysis. *See Ashland Hosp. Corp. v. Serv. Employees Int'l Union*, 708 F.3d 737, 741 (6th Cir. 2013) (internal citations omitted). Here, given the clear text of the statute, the Court can determine that a defendant is liable for a violation of § 227(b)(1) when it:

(1) makes a call;

(2) using (a) an automatic dialing system, or (b) a prerecorded or artificial voice;

(3) to a telephone number assigned to a cellular

telephone.

## III.

Defendant argues that proper application of the *Iqbal/Twombly* pleading standard requires Plaintiff to plead "a minimum: (1) [*6] the telephone number that serves as the basis for the First Amended Complaint; and (2) the time and date of each purported violation." (Def.'s Br., Dkt. No. No. 9 at 3.) Defendant argues that "[w]hen faced with an alleged violation fo the TCPA, a defendant should be provided with sufficient information to make an internal determination of whether a violation has occurred." (*Id.* at 4.) Defendant argues that if a plaintiff is not required to provide her cellular telephone number and the times and dates the alleged violations occurred, a defendant cannot reasonably determine if a violation occurred. (*Id.* at 5-6.) Defendant asserts that to impose a more lenient pleading standard would allow plaintiffs in TCPA cases to extort settlements from defendants by imposing asymmetric discovery costs on them, contrary to the policy aims of *Iqbal* and *Twombly*. (*Id.* at 3.) Defendant's argument, at its core, is that without the telephone number and the time and date of the calls, it is not on sufficient notice of the grounds on which Plaintiff's claim lies.

Plaintiff counters that Defendant "is on ample notice of [Plaintiff's] claims and is free to deny that 1) it used an ATDS [automatic telephone dialing [*7] system] or deny 2) that it called her cellular phone." (Pl.'s Resp., Dkt. No. 10 at 8.) Plaintiff characterizes Defendant's argument as requiring a "particularity" standard akin to the standard imposed on fraud pleadings under Fed. R. Civ. P. 9(b). (*Id.* at 2-3, 7.) Plaintiff cites some ten unpublished district court cases from around the country (although none from the Sixth Circuit) for the proposition that she need not plead specifically the date and time of each allegedly unlawful telephone call. The Court need not evaluate the persuasiveness of these decisions, as the present motion can be decided on the basis of Plaintiff's failure to plead the cellular telephone number she alleges was called in violation of § 227(b)(1).

Plaintiff cites one case for the proposition that Rule 8 and the cases governing its application do not require her to plead the cellular telephone number Defendant allegedly called, *Manfred v. Bennett Law, PLLC*, No. 12—CV—61548, 2012 U.S. Dist. LEXIS 173935, 2012 WL 6102071 (S.D. Fla. Dec. 7, 2012). (Pl.'s Resp., Dkt. No. 10 at 4.) The relevant statement in *Manfred* occurs in a footnote, where the court states:

> Contrary to Bennett Law's contention, Plaintiff need not allege his specific cellular [*8] telephone number. The statute simply states that the call must be made to "any

telephone number assigned to a ... cellular telephone service." Bennett Law has provided no authority to support its position that Plaintiff's complaint must disclose Plaintiff's cell phone number.

*Manfred,* 2012 U.S. Dist. LEXIS 173935, 2012 WL 6102071, at *2 n.2. Likewise here, Defendant has not cited a *specific* authority on point that *requires* a plaintiff to plead her cellular telephone number. Nonetheless, the Court is convinced that proper application of Fed. R. Civ. P. 8, as applied in light of *Iqbal* and *Twombly,* supports such a requirement in TCPA cases.

Specifically, a plaintiff is required to plead facts that make a defendant's liability plausible. This means going beyond factual allegations that are merely consistent with a defendant's liability. *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 557). Here, Plaintiff's complaint alleges that Defendant made calls to her cellular telephone and that such calls were made, to her knowledge, from an ATDS. Plaintiff also alleges numerous facts to bolster her contention that Defendant utilizes ATDS technology, arguably rasing that contention beyond the speculative level. (*See* Am. Compl., [*9] Dkt. No. 7 ¶¶ 14-23.) However, the bare assertions in the complaint that the calls were placed to Plaintiff's "cellular telephone," (*id.* ¶¶ 7, 8), are merely consistent with Defendant's liability, but do not serve to put Defendant on notice of the grounds on which Plaintiff's claim lies.

The plain language of the statute refers to calls placed to a "telephone *number* assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added). A plain reading of the statute then, shows that to prove her case a plaintiff must prove that a defendant called a specific telephone number and that the telephone number is assigned to a cellular telephone service. Notice pleading, therefore, under *Twombly* and *Iqbal,* necessarily requires that a plaintiff plead the telephone number in question to "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555, 570. Otherwise, as Defendant argues, "[w]ithout the telephone number, TCPA defendants are forced to make educated guesses as to which telephone number belongs to a newly filed plaintiff." (Def.'s Mot., Dkt. No. 9 at 5.)

Plaintiff's "supplemental authority" (Dkt. Nos. 11, 13) does not alter this Court's conclusion. [*10] Plaintiff avers that each of these cases feature the same defendant (who is the defendant in the present case), and that Plaintiff's counsel represents the plaintiffs in these "supplemental" cases. In each of these cases, the defendants moved to dismiss for failure to state a claim based on the fact the plaintiffs had not pled the specific date and time of each allegedly unlawful call. Each

court held that such a pleading was not necessary. Neither court, however, addressed whether pleading the telephone number allegedly called was necessary in a TCPA claim. In fact, in the case from the Eastern District of Michigan (Dkt. No. 13), the plaintiff specifically pled her cellular telephone number. Therefore, the Court's conclusion that a TCPA plaintiff must plead the telephone number assigned to a cellular telephone service that was allegedly called in order to state a claim upon which relief can be granted is unaltered.

Aside from a single reference to *Manfred v. Bennett Law, PLLC,* Plaintiff's only other justification for omitting her telephone number is "privacy reasons." (Am. Compl., Dkt. No. No. 7 at 2 n.1.) However, if Plaintiff is concerned about the privacy of her telephone number, [*11] she can easily file it as an attachment under seal.

Defendant also makes oblique reference to Plaintiff's counsel's duty under Rule 11(b) to make "reasonable inquiry" into the factual basis of Plaintiff's complaint. (Def.'s Mot., Dkt. No. 9 at 6-7.) Defendant argues that Plaintiff's counsel had a duty to make a "minimal factual inquiry" to determine if Plaintiff's claims have merit, and that failure to do so would open counsel to sanctions. (*Id.*) Plaintiff responds that Rule 11 is irrelevant to a Rule 12(b)(6) inquiry and that Defendant can bring a separate motion for sanctions if it feels that doing so is appropriate. (Pl.'s Resp., Dkt. No. 10 at 10-11.) This Court agrees, and will consider Rule 11 when and if a party brings a motion under the same.

**III.**

For [*12] the foregoing reasons, the Court concludes that Plaintiff's First Amended Complaint fails to state a claim upon which relief can be granted. Defendant's motion requests that the Court either dismiss the complaint entirely or order Plaintiff to file a Second Amended Complaint that includes her cellular telephone number. The Court concludes the second course is more equitable and will be a more efficient use of the parties' resources.

The Court will enter an Order consistent with this Opinion

Dated: April 17, 2014

/s/ Robert Holmes Bell

ROBERT HOLMES BELL

UNITED STATES DISTRICT JUDGE

---

End of Document



# Supply Pro Sorbents, LLC v. RingCentral, Inc.

United States District Court for the Northern District of California

October 7, 2016, Decided; October 7, 2016, Filed

No. C 16-02113 JSW

**Reporter**
2016 U.S. Dist. LEXIS 140033 *; 2016 WL 5870111

SUPPLY PRO SORBENTS, LLC, Plaintiff, v. RINGCENTRAL, INC., Defendant.

**Counsel:** [*1] For Supply Pro Sorbents, LLC, Plaintiff: David Max Oppenheim, Bock, Hatch, Lewis & Oppenheim, LLC, Chicago, IL; Phillip Andrew Bock, PRO HAC VICE, Bock and Hatch LLC, Chicago, IL; Tod Allen Lewis, Bock, Hatch, Lewis Oppeneheim, LLC, Chicago, IL; Denise Lissette Diaz, DIAZ LAW, Chula Vista, CA.

For RingCentral, Inc., Defendant: Mary Ann L. Wymore, LEAD ATTORNEY, Greensfelder, Hemker & Gale, P.C., St. Louis, MO.

**Judges:** JEFFREY S. WHITE, UNITED STATES DISTRICT JUDGE.

**Opinion by:** JEFFREY S. WHITE

# Opinion

## ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND AND DENYING AS MOOT MOTION TO STAY

Now before the Court are the motion to dismiss and the motion to dismiss or to stay this action pursuant to the doctrine of primary jurisdiction filed by Defendant RingCentral, Inc. ("Defendant"). Having carefully reviewed the parties' papers and considered their arguments and the relevant legal authority, and good cause appearing, the Court HEREBY GRANTS Defendant's motion to dismiss the complaint with leave to amend and DENIES the motion to dismiss or to stay this action as moot without prejudice to refiling.

## BACKGROUND

Supply Pro Sorbents, LLC ("Plaintiff") brings this action on behalf of itself and purportedly on behalf all others [*2] similarly situated, challenging Defendant's practice of adding unsolicited advertising information to the single line identifier on the bottom of the cover page of documents sent by facsimile. (Complaint ¶ 1.) Defendant operates a cloud-based business communications service. (*Id.* at ¶ 2.) As a part of that service, Defendant provides its users with a system to send and receive faxes and provides form fax cover sheets for the users' selection. (*Id.* at ¶¶ 2, 21.)

On or about April 13, 2016, Plaintiff received a fax ("Subject Fax") which included a cover sheet with an identifier that contains Defendant's logo and a single line of text which states "Send and receive faxes with RingCentral, www.ringcentral.com ." (*Id.* at ¶¶ 14, 16; Ex. A.) Although Defendant provides several cover sheets for its users' selection, Plaintiff alleges each of them includes the same unsolicited one-line identifier at the bottom. Plaintiff claims that the unsolicited message constitutes advertising in violation of the Telephone Consumer Protection Act, 47 U.S.C. Section 227 (the "TCPA") which prohibits a person from sending any advertisement by facsimile without the recipient's prior express invitation or permission. (*Id.* at ¶ 3, [*3] 37-53.) Plaintiff also alleges a second cause of action for conversion, claiming that by sending unsolicited faxes to Plaintiff and other class members, Defendant improperly and unlawfully converted their fax machines, toner and paper, and Plaintiff's employee time to its own use. (*Id.* at ¶ 56.)

Defendant moves to dismiss the TCPA claim based on lack of standing and the conversion claim based on failure to state a claim upon which relief can be granted. In a separate motion, Defendant moves to dismiss or to stay this action pursuant to the doctrine of primary jurisdiction. Defendant has filed a Petition for Expedited Declaratory Ruling with the Federal Communications Commission ("FCC") seeking clarification of the term "sender" under 47 C.F.R. Section 64.1200(f)(10)

and to clarify the precise scope of "non-advertisement communications with incidental or *de minimus* advertising information." (*See* Motion to Stay, Ex. A.)

The Court shall address other specific facts in the remainder of its order.

# ANALYSIS

## A. Legal Standards on a Motion to Dismiss.

The Court evaluates the motion to dismiss for lack of Article III standing pursuant to Rule 12(b)(1). *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may be "facial [*4]  or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Here, Defendant raises a facial challenge to Plaintiff's standing. Therefore, the Court "must accept as true all material allegations in the complaint, and must construe the complaint in" Plaintiff's favor. *Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1121-22 (9th Cir. 2010); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion dismiss, [courts] presume that general allegations embrace those specific facts that are necessary to support the claim.") (internal cite and quotations omitted).

"The jurisdictional question of standing precedes, and does not require, analysis of the merits." *Equity Lifestyle Props., Inc. v. County of San Luis Obispo*, 548 F.3d 1184, 1189 n.10 (9th Cir. 2008). Thus, the fact that a plaintiff may allege facts that, at the pleading stage, satisfy the requirements for Article III standing does not mean these same facts would be sufficient to state a claim. *See Doe v. Chao*, 540 U.S. 614, 624-25, 124 S. Ct. 1204, 157 L. Ed. 2d 1122 (2004); *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 712 n.5 (N.D. Cal. 2011) (quoting *Doe*, 540 U.S. at 624-25).

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. A motion to dismiss should not be granted unless it appears beyond a doubt that a plaintiff can show no set of facts supporting his or her claim. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). Thus, dismissal is proper "only if it is clear that no relief could be granted under any set of facts [*5]  that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984). The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy*, 794 F.2d

478, 481 (9th Cir. 1986). The court, however, is not required to accept legal conclusions cast in the form of factual allegations, if those conclusions cannot reasonably be drawn from the facts alleged. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)).

## B. Article III Standing.

The Court lacks jurisdiction to hear cases that do not present a justiciable case or controversy. Indeed, no principle is more fundamental to the role of the judiciary than the "constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818, 117 S. Ct. 2312, 138 L. Ed. 2d 849 (1997). A party seeking to invoke the federal court's jurisdiction bears the burden of demonstrating that he has standing to sue. *See Lujan*, 504 U.S. at 561. To satisfy the constitutional requirements to establish standing, a plaintiff must demonstrate: (1) that he has "suffered an injury in fact — an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) actual or imminent, not conjectural or hypothetical;" (2) that the injury was caused by, or is "fairly . . . trace[able] to the challenged action of the [*6]  defendant;" and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 560-61 (citations omitted). If the plaintiff fails to satisfy the constitutional requirements to establish standing, the Court lacks jurisdiction to hear the case and must dismiss the complaint. *See Valley Forge Christian Col. v. Americans United for Separation of Church and State*, 454 U.S. 464, 475-76, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982). The plaintiff bears the burden of establishing these elements. *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231, 110 S. Ct. 596, 107 L. Ed. 2d 603 (1990); *see also San Diego County Gun Rights Comm v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996). Where, as here, a case is at the pleading stage, the plaintiff must "clearly . . . allege facts demonstrating" each element. *Warth v. Seldin*, 422 U.S. 490, 518, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975).

Here, Defendant challenges the claims that Plaintiff has suffered an injury-in-fact as is required to demonstrate standing to sue. Defendant also alleges that Plaintiff cannot demonstrate that any alleged injury was fairly traceable to Defendant's conduct and not the result of some independent action from a third party. The Court shall address each argument in turn.

## 1. Injury.

The TCPA prohibits the use of "any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. §

2016 U.S. Dist. LEXIS 140033, *6

227(a)(1)(C). The Act provides a private right of action, permitting plaintiffs to seek (1) to enjoin a violation of the Act; (2) to recover [*7] for actual monetary loss from such a violation or to receive $500, whichever is greater; or (3) both (1) and (2). 47 U.S.C. § 227(b)(3). However, in order to have standing to allege a violation of this provision of the TCPA, a plaintiff must allege more than a mere statutory violation. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549, 194 L. Ed. 2d 635 (2016) ("Article III standing requires a concrete injury even in the context of a statutory violation"). For this reason, Plaintiff may not "allege a bare procedural violation, divorced from any real harm, and satisfy the injury-in-fact requirement of Article III." *Id.* (citing *Summers v. Earth Island Institute*, 555 U.S. 488, 496, 129 S. Ct. 1142, 173 L. Ed. 2d 1 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing.").

Here, the Court finds that Plaintiff has failed to meet the constitutional requirements to establish standing to sue. Plaintiff has not demonstrated that it has actually suffered an injury-in-fact which is concrete and imminent, and not conjectural or hypothetical. In order to establish an injury-in-fact, "the injury plaintiff alleges must be unique to that plaintiff, one in which he has a 'personal stake' in the outcome of a litigation seeking to remedy that harm." *Schmier v. United States Court of Appeals for the Ninth Circuit*, 279 F.3d 817, 821 (9th Cir. 2002). Plaintiff has failed to articulate any unique [*8] and concrete injury — beyond merely alleging a statutory violation — that was caused by the incidental transmission of an identifier at the bottom of a four-page facsimile.

In its complaint, Plaintiff alleges that "[u]nsolicited faxes damage their recipients. A junk fax recipient loses the use of its fax machine, paper, and ink toner. An unsolicited fax wastes the recipient's valuable time that would have been spent on something else, A junk fax interrupts the recipient's privacy. Unsolicited faxes tie up telephone lines, prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipient's fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message." (Complaint at ¶¶ 7, 52.) Although these facts may generally be true of unsolicited fax advertisements, it is not clear how Plaintiff alleges it specifically suffered these particular harms from the single line identifier on the optional cover sheet of a solicited four-page fax it received. In addition, in its opposition to the motion to dismiss, Plaintiff merely identifies its injury as the alleged statutory infraction. [*9] That is insufficient for the purpose of alleging Article III standing. Accordingly, without Plaintiff establishing standing to sue, the Court must GRANT the

motion to dismiss. Although it is not clear how Plaintiff could identify sufficient injury-in-fact to rise to the level of constitutional standing, the Court GRANTS Plaintiff leave to amend to allege facts in support of a specific and cognizable injury-in-fact it alleges to have suffered.

**2. Traceability**.

The second contested element to establish standing to sue is the injury must have been caused by or is fairly traceable to the challenged action of the defendant. *See Lujan*, 504 U.S. at 560-61. Defendant contends that it does not serve as a "sender" of the Subject Fax and cannot therefore have caused the harm (or fall under the statutory provisions of the TCPA). The TCPA and the FCC's regulations implementing the Act provide that a person may not send an unsolicited advertisement. "In 2006, the FCC promulgated in the Code of Federal Regulations a definition describing who can be held liable as the 'sender' of a fax advertisement . . . The codified definition provides that '[t]he term sender . . . means the person or entity [1] on whose behalf a facsimile unsolicited [*10] advertisement is sent or [2] whose goods or services are advertised or promoted in the unsolicited advertisement.'" *Siding and Insulation Co. v. Alco Vending, Inc.*, 822 F.3d 886, 891 (6th Cir. 2016) (citing 47 C.F.R. § 64.1200(f)(10)).

Defendant operates a cloud-based business communications service. (Complaint at ¶ 2.) As part of that service, Defendant "provides form fax cover sheets to be used with outgoing faxes." (*Id.*) Defendant contends that the choice of fax cover sheet and the Subject Fax itself was sent on behalf of one of Defendant's users, not by Defendant directly. Defendant argues that Plaintiff was going to receive the Subject Fax regardless whether the cover sheet was one the user chose or created. (Motion at 5.) In this instance, the preoccupation with the Plaintiff's fax line was not caused by the disputed identifier, but rather by the third party's solicited message that Plaintiff would have received regardless of the one-line identifier. On these alleged facts, Defendant contends that the transmission of the fax was the "result of the independent action of some third party not before the Court." (*Id.* at 6, citing *Native Village of Kivalina v. ExxonMobil Corp.*, 663 F. Supp. 2d 863, 878 (N.D. Cal. 2009)).

However, the Court finds that the definition of "sender" in the operative regulations permits the inclusion of Defendant and its services under the facts as currently [*11] alleged. The regulations provide that the term "sender" may include one "whose goods or services are advertised or promoted in the unsolicited advertisement.'" 47 C.F.R. § 64.1200(f)(10). Because the Court finds that the identifier promotes Defendant's services, the Court finds this allegation sufficient

to permit Defendant to fall with the statutory definition of sender, regardless of the participation of the third party user in the transaction.[1]

Because the Court finds that Plaintiff lacks standing to allege its claims under the FTCA for lack of allegations of suffering an actual injury-in-fact, the Court GRANTS Defendant's motion to dismiss the first claim for relief with leave to amend.

### C. Conversion Claim.

Conversion is the "unauthorized and wrongful assumption and exercise of dominion and control over the personal property or another, to the exclusion of or inconsistent with the owner's rights." *Waisath v. Lack's Stores, Inc., 474 S.W.2d 444, 447 (Tex. 1971).* To state a claim for conversion under either Texas or California law, a plaintiff must allege: (1) plaintiff was entitled to possession of the property; (2) defendant unlawfully or without authorization assumed and exercised dominion over the property to the exclusion of, or inconsistent with, plaintiff's rights; (3) plaintiff made a demand for the property; and (4) defendant refused to return it. *See, e.g., Wise v. SR Dallas, LCC, 436 S.W.3d 402, 412 (Tex. App. 2014); see also Burlesci v. Petersen, 68 Cal. App. 4th 1062, 1066, 80 Cal. Rptr. 2d 704 (1998)* ("The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages.").

Plaintiff alleges that "[b]y sending unsolicited faxes [*13] to Plaintiff and the other Class members, [Defendant] improperly and unlawfully converted their fax machines, toner and paper to [Defendant's] own use. [Defendant] also converted Plaintiff's employees time to its own use." (Complaint at ¶ 56.) Even if the Court accepts the minimal use of Plaintiff's paper and toner and employee time used on the single-line identifier of the cover sheet of a four-page fax qualifies as unauthorized use of the Plaintiff's property, such

property never came into Defendant's possession or was unlawfully held in such a way as to indicate that Defendant "assumed control, dominion or ownership of the property." *Rossario's Fine Jewelry, Inc. v. Paddock Publ'n., Inc., 443 F. Supp. 2d 976, 980 (N.D. Ill. 2006)* (quoting *Cirrincione v. Johnson, 184 Ill.2d 109, 114-15, 703 N.E.2d 67, 234 Ill. Dec. 455 (1998)*). Also, as addressed by the Court in the first cause of action under the TCPA, it is unclear what damage Plaintiff alleges it suffered as a result of Defendant's conduct. Accordingly, the Court GRANTS Defendant's motion to dismiss the second cause of action for conversion with leave to amend.

### CONCLUSION

Based on the foregoing reasons, the Court GRANTS Defendant's motion to dismiss with leave to amend and DENIES Defendant's motion to stay this [*14] action pursuant to the doctrine of primary jurisdiction without prejudice to refiling.

The Court provides Plaintiff with leave to amend. Plaintiff shall file its amended complaint, if any, within twenty days of the date of this Order. If Plaintiff files an amended complaint in accordance with this Order, Defendant shall either file its response within twenty days of service of the amended complaint.

**IT IS SO ORDERED**.

Dated: October 7, 2016

/s/ Jeffrey S. White

JEFFREY S. WHITE

UNITED STATES DISTRICT JUDGE

---

*End of Document*

---

[1] The TCPA defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." *47 U.S.C. § 227(a)(5).* The question whether the small percentage of advertising on an otherwise solicited fax constitutes an unsolicited advertisement is also the subject of Defendant's pending petition to the FCC. Should the find that Plaintiff has standing, the Court would then address the motion to stay in pursuant to the doctrine of primary jurisdiction. However, at this procedural posture, the Court finds the motion to stay moot and it is therefore DENIED with prejudice to refiling should Plaintiff allege sufficient [*12] facts to establish standing under the FTCA claim.



## Susinno v. Work Out World, Inc.

United States District Court for the District of New Jersey

August 1, 2016, Decided; August 1, 2016, Filed

Civil Action No.: 15-cv-5881 (PGS)(TJB)

**Reporter**

2016 U.S. Dist. LEXIS 113664 *

NOREEN SUSINNO, Plaintiff, v. WORK OUT WORLD, INC., Defendant.

**Counsel:** [*1] For Noreen Susinno, individually and of behalf of all others similarly situated, Plaintiff: ARI HILLEL MARCUS, YITZCHAK ZELMAN, LEAD ATTORNEYS, MARCUS ZELMAN LLC, Ocean, NJ USA.

For Work Out World, Inc., Defendant: JOSHUA S. BAUCHNER, LEAD ATTORNEY, ANSELL GRIMM & AARON, Woodland Park, NJ USA.

**Judges:** PETER G. SHERIDAN, UNITED STATES DISTRICT JUDGE.

**Opinion by:** PETER G. SHERIDAN

## Opinion

**ORDER**

THIS MATTER having been presented to the Court upon the motion of Defendant Work Out World, Inc. to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) [ECF No. 19]; and after considering the submissions of the parties, for the reasons stated on the record on August 1, 2016, and for good cause shown:

IT IS on this 1st day of August, 2016, hereby

**ORDERED** that Defendant's motion to dismiss [ECF No. 19] is GRANTED with prejudice; and it is further

**ORDERED** that the Clerk is directed to close this matter.

/s/ Peter G. Sheridan

PETER G. SHERIDAN, U.S.D.J.

**End of Document**



# Thompson v. Rovella

United States District Court for the District of Connecticut

February 14, 2017, Decided; February 14, 2017, Filed

CIVIL ACTION NO. 3:15-CV-01742-VLB

**Reporter**
2017 U.S. Dist. LEXIS 20457 *

HUBERT THOMPSON, Plaintiff, v. JAMES C. ROVELLA, ET AL., Defendant.

**Counsel:** [*1] For Hubert Thompson, Plaintiff: Rachel M. Baird, LEAD ATTORNEY, Mitchell I. Lake, Rachel M. Baird & Associate, Harwinton, CT.

For James C. Rovella, Chief of Police, City of Hartford, In His Official Capacity, Defendant: Nathalie Feola-Guerrieri, LEAD ATTORNEY, City of Hartford, Office of the Corporation Counsel, Hartford, CT.

For Anthony Kozieradzki, Liam Pesce, Sergeant, City of Hartford, In His Individual and Official Capacities, Tuyen Bergenholtz, Officer, City of Hartford, In Her Individual and Official Capacities, Defendants: James J. Szerejko, Halloran & Sage, Hartford, CT.

For City of Hartford, Defendant: Nathalie Feola-Guerrieri, City of Hartford, Office of the Corporation Counsel, Hartford, CT.

**Judges:** Vanessa L. Bryant, United States District Judge.

**Opinion by:** Vanessa L. Bryant

# Opinion

MEMORANDUM OF DECISION GRANTING DEFENDANTS' MOTION TO DISMISS [DKT. 23]

INTRODUCTION

On October 2, 1998, Plaintiff Hubert Thompson ("Thompson" or "Plaintiff") was wrongfully convicted of kidnapping, sexual assault, and attempt to commit sexual assault, and he served four years and three months in prison for these wrongful convictions. Thompson now sues the City of Hartford, Chief of Police for the City of Hartford James C. Rovella, [*2] Sergeant Liam Pesce, Officer Tuyen Bergenholtz, Officer Anthony Kozieradzki, Officers in the Crimes Against Persons ("CAPERS") Unit, and Evidence Officers, for damages of $4.5 million dollars caused by incidents related to his arrest, prosecution, and incarceration. Thompson asserts four counts of civil rights violations under 42 U.S.C. § 1983, one count of intentional infliction of emotional distress ("IIED"), one count of negligent infliction of emotional distress ("NIED"), and one negligence claim. Presently before the Court is Defendants' Motion to Dismiss, filed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to timely file suit.[1] For the following reasons, the Court GRANTS the Motion to Dismiss.

BACKGROUND

I. Facts

On the evening of September 23, 1994, a 34 year old woman was kidnapped and raped in Hartford, Connecticut. [*See* Dkt. 1 (Complaint), ¶¶ 22-30]. Shortly after the incident, the woman was taken to the emergency room and the hospital performed an examination, which included the use of a rape kit. [*See id.*, ¶ 38]. The state laboratory tested the rape kit after receiving it from the Hartford Police Department ("HPD") on October 13, 1994, and the results came back negative. [*Id.* ¶¶ 38-39]. Five months after [*3] the incident on February 23, 2005, the woman examined eight photographs and positively

---

[1] Defense counsel did not enter an appearance or file the Motion to Dismiss on behalf of the unnamed CAPERS Officers and Evidence Officers. Discovery comes to a close on February 1, 2017, and these Defendants remain unnamed. The Court *sua sponte* extends this Motion to unnamed Defendants because all alleged unlawful conduct pertaining to these Defendants occurred within the time period between September 23, 1994, and July 19, 2012. Therefore, the statute of limitations defense is apt for the unnamed individuals as well.

identified Thompson as the perpetrator. [Id. ¶ 34]. Thompson was charged in state court and pleaded not guilty to one count of kidnapping in the first degree, one count of sexual assault in the first degree, and one count of attempt to commit sexual assault in the first degree. [See id. ¶ 20].

Trial commenced on October 1, 1998, and lasted one day. [Id. ¶¶ 20, 44]. The jury delivered a guilty verdict on October 2, 1998. [Id. ¶ 44]. On November 20, 1998, Thompson was sentenced to twelve years of incarceration, which he did not begin to serve until December 12, 2007, on account of his incarceration relating to a ten year federal sentence. [Id. ¶¶ 45-47].

Between the time when the incident occurred and the start of Thompson's sentence, substantial improvements were made to DNA testing. [Id. ¶ 48]. Notably, in 2006 an incarcerated individual named James Tillman was exonerated and released from prison due to DNA testing performed in 2005 and 2006, which excluded Tillman from being the perpetrator. [Id. ¶¶ 53-55]. On March 10, 2008, Thompson filed an appeal to challenge his conviction. [Id. ¶ 57]. The [*4] Connecticut Supreme Court denied his petition for certiorari on January 19, 2010, and Thompson subsequently filed a Petition for a Writ of Habeas Corpus. [Id. ¶¶ 58-59].

Thompson's counsel for the habeas petition, William T. Koch, visited the HPD on January 4, 2011, and he learned the rape kit had been stored with "old evidence" in a trailer behind the headquarters. [See id. ¶¶ 60-62]. Koch filed a Petition for DNA Testing with the Superior Court in Hartford and upon reanalysis of the rape kit, it was determined that the DNA matched a known felon who lived near the woman and the man had a similar build, complexion, and facial features as Thompson. [Id. ¶ 65]. Thompson was released from prison on March 12, 2012, a new trial was ordered, and all charges were dismissed against him on July 19, 2012. [Id. ¶¶ 66-67].

On August 3, 2012, Thompson filed a claim against the State of Connecticut for wrongful incarceration with the Office of the Claim Commissioner, and he received compensation in 2014 pursuant to Conn. Gen. Stat. § 54-102uu. [Id. ¶¶ 68, 70]. With respect to the claim before the Office of the Claim Commissioner, the Office of Attorney General provided notice to Thompson on January 2, 2014, that indicated Connecticut [*5] would not contest his innocence. [Id. ¶ 69].

## II. Positions of the Parties

Plaintiff's claims are against members of the City of Hartford's Police Department. His four § 1983 are generally based on the City of Hartford's failure to adequately identify, maintain, and process an effective DNA testing system. The two emotional distress claims are related to Defendants'

conduct leading to and during Plaintiff's arrest, detention and incarceration. The negligence claim is related to the officers' duty and failure to disclose exculpatory evidence.

Defendants move to dismiss this case in its entirety on the basis that all claims are time-barred by the applicable statute of limitations. Specifically, Defendants argue (1) there is a three year statute of limitations for all 42 U.S.C. § 1983 claims for which the cause of action arose on July 19, 2012, when Defendant was exonerated, that ran on July 19, 2015; (2) there is a two year statute of limitations for both Negligent Infliction of Emotional Distress and Negligence of Municipal Employees for which the cause of action arose on March 12, 2012, when Defendant was released from prison, that ran on March 12, 2014; and (3) there is a three year Intentional Infliction [*6] of Emotional Distress statute of limitations for which the cause of action arose on March 12, 2012, when Defendant was released from prison, that ran on March 12, 2015. [See Dkt. 24 (Def. Mot. Dismiss)]. Given that the statute of limitations would have run for Defendants' posited cause of action dates, Defendants request that the Court dismiss the case in its entirety.

Plaintiff broadly argues that the Motion to Dismiss should be denied because the dates in question are disputed, and as such the dismissal is inappropriate at this stage. [See Dkt. 29-1 (Pl.'s Sur-Reply Brief), at 1-2]. With respect to the § 1983 claims, Plaintiff disputes Defendants' proffered cause of action date and instead posits that it was January 2, 2014, when the Attorney General notified Plaintiff that his innocence would not be contested, when the cause of action arose. [See Dkt. 27 (Pl.'s Opp'n Mot. Dismiss), at 5]. Alternatively, Plaintiff contends that equitable tolling should apply to this case. [Dkt. 29-1, at 3].

## DISCUSSION

### I. Legal Standard

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff [*7] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While Rule 8 does not require detailed factual allegations, "[a] pleading that offers labels and conclusions or formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." Id. (internal quotation marks and citations). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short

of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "At the second step, a court should determine whether the 'wellpleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "The plausibility standard is not akin [*8] to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## II. Affirmative Defense: Statute of Limitations

A statute of limitations defense is typically raised in a responsive pleading, but "[w]here the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss." *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989); *see Velez v. City of New London*, 903 F. Supp. 286, 289 (D. Conn. 1995) ("Although the statute of limitations defense is usually raised in a responsive pleading, the defense may be raised in a motion to dismiss if the running of the statute is apparent from the face of the complaint."); *Maye v. Durkin*, No. 3:10cv194(VLB), 2012 WL 2521101, at *4 (D. Conn. June 28, 2012) (ruling on a statute of limitations affirmative defense in [*9] a § 1983 case because the dates in question were undisputed). "Even where a federal court borrows a state statute of limitations, [f]ederal law governs the question of when a federal claim accrues." *M.D. v. Southington Bd. of Educ.*, 334 F.3d 217, 221 (2d Cir. 2003) (internal quotation marks omitted). A cause of action accrues once the plaintiff "knows or has reason to know of the injury that is the basis of the action." *Id.*; *see Doe*

*v. Mastoloni*, No. 3:14-CV-00718 (CSH), slip op. at 5 (D. Conn. Feb. 12, 2016) ("Under the discovery rule, accrual is delayed until the plaintiff has discovered his cause of action.") (internal quotation marks omitted).

Resolution of the statute of limitations dispute turns on a question of law rather than a question of fact. The parties do not dispute any dates referenced in the complaint. Rather, they dispute which dates constitute the correct "cause of action" for the various claims. Therefore, the Court finds it is appropriate to address the statute of limitations question on this motion to dismiss. *See Ghartey*, 869 F.2d at 162-63 (addressing the parties' dispute as to whether the cause of action arose on the date of the arbitration award or the final day of the arbitration hearing).

## A. 42 U.S.C. § 1983 *Claims*

Federal courts look to state law to determine the appropriate statute of limitations in a § 1983 claim, and it is well-settled [*10] that Connecticut's three year personal injury statute of limitations applies to § 1983 claims originating in Connecticut. *See Walker v. Jastremski*, 430 F.3d 560, 562 (2d Cir. 2005) (applying Conn. Gen. Stat. § 52-577 to a § 1983 claim); *Castillo v. Hogan*, No. 3:14cv1166(VAB), slip op. at 3 (D. Conn. Feb. 22, 2016) (same).

### 1. Malicious Prosecution

The parties have briefed the issue of whether Plaintiff's § 1983 claims for malicious prosecution are time-barred. A malicious prosecution cause of action "does not accrue until the criminal proceedings have terminated in the plaintiff's favor. . . ." *Heck v. Humphrey*, 512 U.S. 477, 489 (1994); *DiBlasio v. City of New York*, 102 F.3d 654, 657-58 (2d Cir. 1996) (opining that it is unlikely the Supreme Court intended *Heck* to link the accrual date to the grant of a writ of habeas corpus). By like measure, "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Heck*, 512 U.S. at 489-90. The Supreme Court later built upon *Heck*, stating that "the *Heck* rule for deferred accrual is called into play only when there exists a conviction or sentence that has *not* been . . . invalidated, that is to say, an outstanding criminal judgment." *Wallace v. Kato*, 549 U.S. 384, 393 (2007) (defining in a false arrest claim "the date on which the statute of limitations beg[ins] to run [as] the date petitioner bec[omes] held pursuant to legal process"); *see Amaker v. Weiner*, 179 F.3d 48, 52 (2d Cir. 1999) ("[W]here the viability of the plaintiff's [*11] claim depends on his conviction being invalidated, the statute of limitations begins to run upon the invalidation, not the time of the alleged

government misconduct.").[2]

After ordering a new trial, the Superior Court dismissed all charges against Plaintiff on July 19, 2012. [Dkt. 1, ¶ 67]. It is true that the Attorney General's letter notified Thompson that the State would not challenge his innocence in the civil proceeding before the Claims Commissioner. However, the Chief State's Attorney has prosecutorial authority over criminal matters in Connecticut, not the Attorney General, and thus the Attorney General's letter related only to the civil and not the criminal proceeding. *See* Conn. Gen. Stat. §§ 3-125 (conferring powers over civil proceedings to Attorney General), 51-277 (conferring powers over criminal proceedings to Chief State's Attorney). The Plaintiff had an immediate right to file a malicious prosecution claim upon dismissal of the criminal charges by the Superior Court. *See* Heck, 512 U.S. at 489-90 (holding a malicious prosecution claim is valid when the case is terminated in the plaintiff's favor); *Pizarro v. Kasperzyk*, 596 F. Supp. 2d 314, 318 (D. Conn. 2009) ("In Connecticut, 'termination in favor of the plaintiff' has been interpreted as termination without consideration.") [*12] (citing *DeLaurentis v. City of New Haven*, 220 Conn. 225, 251 (1991)); *Lopes v. Farmer*, 286 Conn. 384, 390 (2008) ("[T]he prosecution against the plaintiff terminated in his favor when the charges were dismissed. . . .").[3] A person need not wait to see if the prosecutorial authority will choose to file new charges before filing a malicious prosecution claim after he was exonerated. *DeLaurentis*, 220 Conn. at 251 ("[W]e have never required a plaintiff in a vexatious suit action to prove a favorable termination either by pointing to an adjudication on the merits in his favor or by showing affirmatively that the circumstances of the termination indicated his innocence or nonliability, so long as the proceeding has terminated without consideration.").

Plaintiff had a viable cause of action under § 1983; however, Plaintiff "kn[ew] or ha[d] reason to know" of the injury that is the basis of the action prior to this letter when his case was dismissed and he no longer had an "outstanding criminal judgment." *See* M.D., 334 F.3d at 221; *Wallace, 549 U.S. at 393*; *see also* Conn. Gen. Stat. § 54-102uu (requiring a person's conviction to be "vacated or reversed" to prevail under the statute). Therefore, a § 1983 malicious prosecution claim brought after July 19, 2015, is time-barred absent equitable tolling.

### 2. *False Arrest*

Count Four of the complaint alleges that "Thompson was maliciously and without probable cause arrested," [Dkt. [*13] 1, ¶ 91], and to the extent that Plaintiff asserts a false arrest claim, the Court now addresses it as such.[4] "If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more. From that point on, any damages recoverable must be based on malicious prosecution claim and the wrongful use of judicial process rather than detention itself." *Wallace, 549 U.S. at 390* (quoting W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 119, 888 (5th ed. 1984)). A false arrest or false imprisonment claim under § 1983 "where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Id.* at 397; *Turner v. Boyle*, 116 F. Supp. 3d 58, 84 (D. Conn. 2015) (same). This claim is clearly time-barred as Plaintiff was arrested and proceedings began against him at some point after his identification on February 23, 1995, but before his trial on October 1, 1998. [Dkt. 1, ¶¶ 34-35, 38].

### 3. *Deliberate Indifference*

Plaintiff asserts that certain Defendants were "deliberately indifferent" to the existence of potentially exculpatory evidence. A supervisory defendant who is personally involved may be held personally liable if evidence shows "the [*14] defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995).[5] It is not clear whether Plaintiff

---

[2] The Court does not find Plaintiff's reliance on a single Third Circuit case law, *United States v. Gadsen*, 332 F.3d 224 (3d Cir. 2003) to be persuasive, as there is ample Second Circuit case law speaking directly to this issue and *Gadsen* dealt with a parallel case pending before the South Carolina Supreme Court.

[3] The Court refers to state law for reference as "[c]laims for false arrest or malicious prosecution, brought under **§ 1983** to vindicate the **Fourth** and **Fourteenth Amendment** right to be free from unreasonable seizures, as 'substantively the same' as claims for false arrest or malicious prosecution under state law." *Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003).

[4] The parties have not briefed a false arrest claim.

[5] The Court notes that the "deliberate indifference" language is misplaced as to non-supervisory Defendants. Plaintiff does not appear to be asserting any facts that would lead the Court to recognize a viable "deliberate indifference" claim as to non-supervisory Defendants and furthermore Plaintiff did not reference "deliberate indifference" in any briefing on the Motion to Dismiss. *See, e.g.*, Estelle v. Gamble, 429 U.S. 97, 104-06 (1976) (applying "deliberate indifference" of prison guards or prison doctors to a Plaintiff's serious medical need); *Farmer v. Brennan*, 511 U.S. 825, 828-29 (1994) (addressing a prison official's "deliberate

is asserting municipal liability under § 1983 against the City of Hartford for failing to train municipal employees, "where the failure to train amounts to deliberate indifference to the rights of members of the public with whom the employees will interact," *Green v. City of New York*, 465 F.3d 65, 80 (2d Cir. 2006), or "when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983," *Villante v. Dep't of Corr. of City of New York*, 786 F.2d 516, 519 (2d Cir. 1986), as Plaintiff does not reference the City of Hartford in any count in the complaint.

Regardless of the lack of clarity, any "deliberate indifference" allegation is time-barred, because Plaintiff came to know of the injury certainly by the time all charges were dropped against him, if not earlier when he was released from prison.

### B. *Emotional Distress Claims*

Plaintiff does not address the statute of limitations for intentional infliction for emotional distress. Connecticut state law imposes a three year statute of limitations for intentional infliction of emotional distress and a two year statute of [*15] limitations for negligent infliction of emotional distress. *See* Conn. Gen. Stat. §§ 52-577, 52-584.

"The Connecticut Supreme Court has clarified that in cases of intentional infliction of emotional distress, if no offending conduct has occurred within the three-year limitations period set forth in § 52-577, the plaintiff will be barred from recovering for the prior actions of intentional infliction of emotional distress." *Alston v. Daniels*, No. 3:15-cv-669 (CSH), 2015 WL 7257896, at *10 (D. Conn. Nov. 17, 2015) (internal quotation marks omitted); *c.f. Rentas v. Ruffin*, 816 F.3d 214, 226 (2d Cir. 2016) ("Under New York law, the statute of limitations on an IIED claim involving a continuous injury does not begin to run until the conduct ceases."). The conduct causing emotional distress—the fact that Plaintiff was wrongfully incarcerated—ended on March 12, 2012, when he was released from prison. Plaintiff's IIED claim must be dismissed absent equitable tolling because the statute of limitations period for IIED ran on March 12, 2015. As the NIED statute of limitation is shorter, this claim is also time-barred.

### C. *Negligence Claim*

Like the NIED claim, a negligence claim under Conn. Gen. Stat. § 52-557n is governed by a two year statute of limitations. *See Tagliaferi v. Town of Hamden*, No. 3:10 CV 1759(JGM), 2014 WL 129223, at *9 (D. Conn. Jan. 14, 2014)

indifference" to a substantial risk of serious harm).

(imposing the two-year statute of limitations under § 52-584 regarding [*16] negligence of a municipality under § 52-557n); *Spears v. Garcia*, 263 Conn. 22, 24 (2003) (holding that a negligence claim may be brought against a municipality under Conn. Gen. Stat. § 52-557n); *Brusby v. Metro. Dist.*, 160 Conn. App. 638 (Conn. App. Ct. 2015) (applying Conn. Gen. Stat. § 52-584 to a negligence claim under § 52-557n). For the same reasons as above, Plaintiff's negligence claim is time-barred absent equitable tolling.

### III. Equitable Tolling

Federal courts typically "refer[ ] to state law for tolling rules," just like they do for statute of limitations rules. *Wallace*, 549 U.S. at 394; *see Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 2007) ("Although federal law determines when a section 1983 claim accrues, state tolling rules determine whether the limitations period has been tolled, unless state tolling rules would defeat the goals of section 1983") (internal quotation marks omitted). Under Connecticut law, tolling is appropriate "for a continuing course of conduct or fraudulent concealment of the cause of action by the defendants." *Harnage v. Dzurenda*, No. 3:14-cv-885 (SRU), 2014 WL 3360342, at *4 (D. Conn. July 9, 2014) (citing *Macellaio v. Newington Police Dep't*, 145 Conn. App. 426, 430 (Conn. App. Ct. 2013)).

In addition, "[e]quitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." *Wallace*, 549 U.S. at 394. A plaintiff must show "'extraordinary circumstances prevented a party from timely performing a required act,' and 'the party acted with reasonable diligence throughout the period' to be tolled." *Mitchell v. Kugler*, No. 07 CV [*17] 1801 (JG)(LB), 2009 WL 160798, at *6 (E.D.N.Y. Jan. 23, 2009) (quoting *Walker*, 430 F.3d at 642).

Here, Plaintiff has not alleged that statutory or equitable tolling should apply. Instead, Plaintiff alleges that "the exculpatory information was wrongfully withheld from the Plaintiff in violation of said duties through the pendency of all the Plaintiff's appeals and the court should consider this withholding of evidence as an extraordinary act which stood in the Plaintiff's way to preventing the Plaintiff from filing timely." [Dkt. 27, at 6]. This claim is unavailing as the statute of limitations did not begin to run while information was being withheld. Rather, Plaintiff was exonerated and the statute of limitations began to run after this information was withheld.

Moreover, the record shows that on August 3, 2012, the Plaintiff knew he had a civil cause of action against the State of Connecticut arising out of his prosecution as evidenced by the fact that he filed a claim for compensation for a civil

wrong with the Claims Commissioner on that date. The State of Connecticut is immune from suit under the Eleventh Amendment to the United States Constitution unless it waives that immunity. *Kentucky v. Graham,* 473 U.S. 159 (1985) ("[A]bent waiver by the State or a valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court."); *Turner,* 116 F. Supp. 3d at 73 (finding [*18] the court lacked subject matter jurisdiction "[b]ecause Connecticut has not waived its sovereign immunity with respect to claims brought under sections 1983 or 1985. . . ."). The State of Connecticut's process for determining whether to waive immunity is to allow individuals to bring claims for civil damages before the Claims Commissioner. *See* Conn. Gen. Stat. § 4-142. The Plaintiff was prosecuted by the State on the basis of the criminal charge lodged by and the investigation conducted by members of the City of Hartford Police Department. Plaintiff fails to explain how he could have known that he had a civil cause of action against the State of Connecticut but did not know that he had a civil cause of action against the City of Hartford or its police officers. Given that Plaintiff, by and through counsel, filed a claim for compensation on August 3, 2012, the Court finds that Plaintiff could have also currently filed the instant case at that time. The complaint fails to plead facts indicating an extraordinary circumstance prevented Plaintiff from timely filing this case, as he was capable of filing another case within the requisite statute of limitations period. The Court recognizes the grave injustice suffered by the Plaintiff; however, [*19] two wrongs do not make a right and the injustice does not justify equitable tolling of a statute of limitations. The Court holds that equitable tolling is not applicable in this limited circumstance.

CONCLUSION

For the aforementioned reasons, Plaintiff's complaint is DISMISSED because all claims are time-barred under the requisite statute of limitations. The Clerk's Office is directed to close this case.

IT IS SO ORDERED.

/s/ Vanessa L. Bryant

United States District Judge

Order dated in Hartford, Connecticut on February 14, 2017.